**GOLDBERG, MILLER & RUBIN P.C.**
**BY:** Matthew Moroney, Esquire
Harlan Schreiber, Esquire
1501 Broadway, Suite 715
New York, NY 10036
(215) 735-3994

*Counsel for Plaintiffs, State Farm Mutual Automobile Insurance*
*Company, State Farm Indemnity Company*
*State Farm Guaranty Insurance Company and State Farm Fire*
*and Casualty Company*

**IN THE UNITED STATES DISTRICT COURT**
**FOR EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INDEMNITY COMPANY, STATE FARM GUARANTY INSURANCE COMPANY AND STATE FARM FIRE AND CASUALTY COMPANY<br><br>Plaintiffs,<br><br>-against-<br><br>ECLIPSE MEDICAL IMAGING, P.C.<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT** |

Plaintiffs, State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company, and State Farm Fire and Casualty Company (collectively, "State Farm Companies" or "Plaintiffs"), by and through their counsel, Goldberg, Miller & Rubin, P.C., hereby allege as follows:

**NATURE OF THE ACTION**

1. This is an action for a declaratory judgment in which the State Farm Companies seek a determination that they are not legally obligated to pay certain bills/claims submitted by the Defendant, Eclipse Medical Imaging, P.C. ("Eclipse") for highly questionable diagnostic testing services that allegedly were rendered to individuals who were involved in automobile accidents

and eligible for coverage under insurance policies issued by the State Farm Companies in New York. Because Eclipse failed to provide necessary information to properly verify the claims it submitted, Eclipse failed to meet a condition precedent to coverage under the insurance contracts and violated its obligations under the No-Fault Laws, and therefore, the claims are not compensable. The claims at issue in this declaratory judgment action are identified on **Exhibit "A"**.

## PARTIES

2. The State Farm Companies are corporations organized under the laws of Illinois with a principal place of business in Illinois. The State Farm Companies are duly authorized to issue automobile insurance policies in the State of New York.

3. Eclipse is a New York professional service corporation. According to its bills, Eclipse claims that its owner is Jack Baldassare, M.D. ("Baldassare"). Eclipse's principal place of business is located at 651 Coney Island Avenue, Brooklyn, New York. At all relevant times, Eclipse submitted claims and bills to the State Farm Companies for highly questionable magnetic resonance imaging test ("MRIs"), computerized tomography tests ("CTs"), X-rays, and other testing services that were purportedly administered to individuals who were involved in motor vehicle accidents. According to Eclipse's bills, Baldassare interprets the diagnostic studies that are billed by Eclipse. According to Baldassare, he performs these services from his residence in Fort Lee, New Jersey.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over this claim because the matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

5. Pursuant to 28 U.S.C. §1391(b), venue is proper in this district because a substantial part of the events giving rise to the claims occurred here.

## I. An Overview of the No-Fault Laws

6. The State Farm Companies underwrite automobile insurance in the State of New York.

7. Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101, et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65, et seq.) (collectively referred to as the "No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") to insureds.

8. No-Fault Benefits include up to fifty thousand dollars ($50,000.00) per insured for necessary expenses that are incurred for healthcare goods and services. New York's No-Fault Laws are designed to ensure that individuals who are injured in motor vehicle accidents have an efficient mechanism to receive and pay for necessary health care services.

9. Under the No-Fault Laws, insureds can assign their right to No-Fault benefits to professional health service providers, as long as the providers meet applicable New York State and local licensing requirements to perform such services in New York. With a duly executed assignment, a healthcare provider may submit claims directly to an insurance company and receive payment for necessary medical services rendered, using the claim form approved by the New York State Department of Insurance (known as the "Verification of Treatment by Attending Physician or Other Provider of Health Service" or, more commonly, as an "NF-3"). Once the healthcare provider takes an assignment of an insured's rights, the provider cannot seek to recover payment from the insured. Instantly, the Defendants received assignments for the claims and bills at issue in this lawsuit.

10. Pursuant to the No-Fault Laws, health care providers that seek to collect No-Fault benefits from New York automobile insurers must be in compliance with all applicable New York licensing laws and must be owned and controlled by licensed health care providers.

11. In State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 320 (2005), the New York Court of Appeals made clear that healthcare providers that fail to comply with licensing requirements are ineligible to collect No-Fault Benefits, and that insurers may look beyond a facially-valid license to determine whether there was a failure to abide by state and local law.

12. In Andrew Carothers, M.D., P.C. v. Progressive Ins. Co., 2019 N.Y. Slip Op. 04643 (June 11, 2019) the New York Court of Appeals reiterated that only licensed physicians may practice medicine in New York because of the concern that unlicensed physicians are "not bound by ethical rules that govern the quality of case delivered by a physician to a patient."

13. In New York, only a licensed healthcare professional may: (i) practice the pertinent healthcare profession; (ii) own and control a professional corporation authorized to operate a professional healthcare practice; (iii) employ and supervise other healthcare professionals; and (iv) absent statutory exceptions not applicable in this case, derive economic benefit from healthcare professional services.

14. Unlicensed individuals may not: (i) practice the pertinent healthcare profession; (ii) own or control a professional corporation authorized to operate a professional healthcare practice; (iii) employ or supervise healthcare professionals; or (iv) absent statutory exceptions not applicable in this case, derive economic benefit from professional healthcare services.

15. In addition, healthcare service providers are not eligible to receive No-Fault Benefits if they engage in self-referrals, kickbacks, or other illegal payments in violation of New York's Public Health Law.

## II. An Overview of New York's No-Fault Regulations Pertaining to Verification of Claims

16. The No-Fault Laws obligate healthcare providers, which seek payment of No-Fault Benefits, to provide insurers with additional verification in order to establish proof of their claims.

17. The prescribed No-Fault policy endorsement set forth in 11 N.Y.C.R.R. § 65-1.1 includes a specific section entitled "Conditions", which states in part, that "upon request by the Company, the eligible injured person or that person's assignee . . . shall (b) as may reasonably be required, submit to an examination under oath by any person named by the Company, and shall subscribe to same . . . , and (d) provide any other pertinent information that may assist the Company in determining the amount that is payable."

18. The prescribed No-Fault policy endorsement set forth in 11 N.Y.C.R.R. § 65-1.1 also states that "No action shall lie against the Company, unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage."

19. The proof of claim requirement in the No-Fault policy endorsement, 11 N.Y.C.R.R. § 65-3.5(b) states in relevant part:

> Subsequent to the receipt of one or more of the completed verification forms, any additional verification required by the insurer to establish proof of claim shall be requested within 15 business days of receipt of the prescribed verification forms. Any requests by an insurer for additional verification need not be made on any prescribed or particular form . . .

20. Additionally, 11 N.Y.C.R.R. § 65-3.5(c) states in relevant part:

> The insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested.

Moreover, 11 N.Y.C.R.R. § 65-3.5(o) states in relevant part:

> An applicant from whom verification is requested shall, within 120 calendar days from the date of the initial request for verification, submit all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply. The insurer

shall advise the applicant in the verification request that the insurer may deny the claim if the applicant does not provide within 120 calendar days from the date of the initial request either all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply.

21. Because an EUO is a condition of coverage, an insurer may deny a healthcare provider's or individual's claim for No-Fault Benefits if the healthcare provider or individual claimant refuses to submit to an EUO, which constitutes a material breach of the insurance policy and violation of the regulations. The New York State Department of Insurance has confirmed this conclusion by opinion letter, dated December 22, 2006 which states:

> As referenced above in Section 65-1.1(d), the prescribed No-Fault endorsement requires that, as a condition to coverage, an eligible injured person or that person's assignee shall "…as may be reasonably required, submit to examinations under oath by any person named by the Company…"
>
> ***
>
> When an EUO is required and the party required to appear fails to attend a scheduled EUO, the insurer must meet its obligations under N.Y. Comp Codes R. & Regs. tit 11, §65-3.6(b) and within 10 calendar days, contact the party from whom verification (the EUO) has been requested and not provided, i.e., non-attendance at the scheduled EUO, in order to afford the party a second opportunity to attend an EUO. If the party fails to appear at the rescheduled EUO, an insurer may issue a denial of pending claims based upon the failure to meet the condition for coverage in not submitting to the requested EUO, as required under the prescribed endorsement. There is no requirement in the regulation that the denial must state the specific reason(s) why the insurer required the EUO.

See N.Y. State Dep't of Ins., Opinions of General Counsel, Op. Letter dated December 22, 2006.

22. An insurer is entitled to any information that is necessary for the insurer to determine whether the claim submitted by the healthcare provider is payable. The issues for which additional verification can be properly sought are not limited to, and can include, for example:

    (i)    whether the healthcare provider is in compliance with licensing requirements;

(ii) whether the healthcare provider is truly owned and controlled by a licensed physician and;

(iii) whether the services provided by the healthcare provider were medically necessary, and/or the billed amounts are excessive and/or whether the services were the product of self-referrals, kickbacks, or other inappropriate financial considerations.

**III.   The State Farm Companies' Reasonable Basis for Requesting Verification**

23.   Prior to seeking additional verification from Eclipse, the State Farm Companies conducted an investigation into the claims submitted by Eclipse. This review included a survey of the records of numerous patients and investigating the appropriateness and legitimacy of the billed for services.

24.   Based on this investigation, serious questions as to the appropriateness, necessity, and legitimacy of the services were identified, which justified the need for additional verification. These serious questions include a concern whether Baldassare truly owns and controls Eclipse or if Eclipse is/was owned or controlled by laypersons in violation of New York law.

25.   Eclipse and Baldassare have also been sued by other insurance companies. In 2021, GEICO filed a lawsuit in the United States District Court, Eastern District, under Docket Number 1:21-cv-01074 ("GEICO lawsuit"). In that action, it is alleged that Eclipse was submitting bills for unnecessary radiological services. The Complaint further alleged that Baldassare sold or lent the use of his name and professional license to a non-medical layperson, Robert Maksumov ("Robert Maks"). It was further alleged that Robert Maks maintained control over Eclipse through a series of financial and kickback arrangements.

26.   Also in 2021, Allstate Insurance Company filed a lawsuit in the United States District Court, Eastern District, under Docket Number 1:21-cv-00420-LDH-VMS ("Allstate lawsuit"). In that action, it is alleged that although Baldassare was the listed owner of Eclipse,

Eclipse was actually owned, operated, and controlled by laypersons, such as Robert Maks and his spouse Yelena Maks who benefited from a substantial volume of medically unnecessary healthcare tests and services.

27. In addition to these concerns of whether Eclipse is truly owned and controlled by a licensed physician, there are also serious questions regarding whether all the testing billed by Eclipse was actually ordered by a physician and whether the testing was medical necessary. To illustrate, although Eclipse produced records indicating that an Arkam Rehman, M.D. ("Dr. Rehman") ordered diagnostic testing conducted by Eclipse, Dr. Rehman executed an affidavit in which he averred that he did not prescribe nor authorize the prescription of testing reportedly provided by Eclipse. Dr. Rehman further averred that his name and credentials were utilized by unknown individuals as part of scheme to prescribe testing and other services. (See **Exhibit "B"** for the affidavit of Arkam Rehman, M.D.) Dr. Rehman is the listed physician on many claims that have been submitted by Eclipse to the State Farm Companies. In the Allstate lawsuit, it is alleged that other medical providers also conspired to order medically unnecessary testing to be conducted by Eclipse as well.

28. Because of these troubling issues, the State Farm Companies requested that Eclipse appear for an EUO as part of the verification process. Baldassare appeared for an EUO on behalf of Eclipse.

29. As to the start-up of Eclipse, Baldassare testified that a stranger by the name of Robert Maks informed him there was an empty radiology business with MRI, CT, and X-ray equipment and that the "people who ran it had left". The former radiology business was Kensington Radiology Group, P.C. ("Kensington Radiology"). As alleged in the GEICO lawsuit, Eclipse is a mere continuation of Kensington Radiology. As alleged in the GEICO lawsuit, toward

the end of 2016, the lay owners became concerned that their unlawful ownership and control of Kensington Radiology was being exposed and saw the "writing on the wall". In an attempt to continue the fraudulent scheme, Kensington Radiology was replaced by Eclipse. As alleged in the GEICO lawsuit, the paper owners of Kensington Radiology were replaced by Baldassare, who had acted as a reading radiologist for Kensington Radiology. As alleged in the GEICO lawsuit, in exchange for compensation, Baldassare agreed to falsely represent that he was the owner of Eclipse.

30. During the EUO, although he admitted he worked for Kensington Radiology, Baldassare claimed that he somehow did not know who owned the business he worked for. Additionally, when Robert Maks presented him with the opportunity of the empty radiology practice, Baldassare claimed that he did not know that Kensington Radiology was the entity that vacated the location.

31. During the EUO, Baldassare testified that Robert Maks presented him with a turnkey operation with equipment and staff (e.g., management, technicians, and billing staff). Baldassare continued to serve as the reading radiologist, doing so from his residence in New Jersey. Baldassare did not pay any of the start-up costs for Eclipse.

32. Baldassare does not have any involvement in generating business, and at best, has had limited involvement in operating the business. Baldassare does not appear involved in supervising employees, dealing with day-to-day operations of the business, dealing with marketing and referral sources, billing, revenue, accounts receivable, collections, or hiring collections counsel. These activities are controlled by Robert Maks. Rather, Baldassare's involvement appears limited to purportedly interpreting radiology studies from his residence in New Jersey. Additionally, during the EUO, Baldassare testified that he was the only person that signed checks

for Eclipse's bank account. In spite of this, it appears that a rubberstamp with Baldassare's signature was used to sign/endorse most of the checks produced to date.

33. After the EUO, Baldassare submitted an affidavit where he changed the answers to numerous questions. For example, during the EUO, Baldassare testified that Eclipse signed a lease. In the affidavit, which was submitted at a later date, Baldassare changed this response to read, "I never signed any written agreement." Considering Baldassare provided an incorrect answer at the EUO to a question an owner should know about his/her business, the later affidavit only reinforces the concern that Baldassare may not own and operate Eclipse.

34. Because Baldassare's testimony provided during the EUO failed to resolve the objective concerns noted above and only raised additional concerns, it was necessary for Eclipse to provide documents and information, which were necessary for the State Farm Companies to properly verify the submitted bills and claims. Eclipse objected to many of these requests and refused to provide these documents.

35. As an illustrative example of how these documents are relevant and necessary, at the EUO, Baldassare testified that Eclipse possessed documentation demonstrating that it owned the radiological equipment, including MRI, CT, and X-ray equipment/machines utilized by Eclipse. As noted above, Eclipse replaced Kensington Radiology at the location using the same radiology equipment. The concern is that Eclipse does not actually own the equipment. If Eclipse and/or Baldassare do not own the equipment, then there is nothing preventing Robert Maks from simply replacing Eclipse and Baldassare at the location like Kensington Radiology was previously replaced. Accordingly, the State Farm Companies sought documents that Baldassare and Eclipse claimed existed on the ownership of the equipment. However, in response to the State Farm

Companies' requests, Eclipse responded that there are no written records evidencing Eclipse's ownership of this equipment.

36. Additionally, in order to assess these concerns regarding whether Baldassare truly owns and controls Eclipse, the State Farm Companies requested Eclipse to provide its bank records, along with bookkeeping records and financial statements, as well as copies of all payments to Robert and Yelena Maks from January 1, 2019, to present. In spite of this, Eclipse has failed to provide these records.

37. Among the other documents that Eclipse failed to produce are (i) copies of lease agreements, in their entirety, from January 2017 to present; (ii) copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through present; (iii) copies of all payments to Robert and Yelena Maks from January 1, 2019 to present; (iv) tax returns for tax years 2018 and 2021, and (v) copies of all recordings reflecting compensation, including salary and bonuses, paid to Baldassare.

38. The State Farm Companies verification requests, including the sought documents and information are reasonable and necessary to determine whether the bills/claims submitted by Eclipse are compensable especially considering the red flags indicating a lack of ownership and control by Baldassare.

**IV. Defendant's Failure to Comply with the State Farm Companies' Requests for Additional Verification**

39. The State Farm Companies made formal requests for additional verification to Defendant in connection with the claims listed on **Exhibit "A"**. These requests were made in accordance with the insurance policies under which the claims were submitted, and pursuant to the No-Fault Laws.

40. Each request was timely made and based upon the application of objective standards justifying the information sought by the State Farm Companies that would address the concerns summarized above and would allow the State Farm Companies to properly evaluate the claims.

41. In spite of this, Eclipse failed to provide these documents.

42. The failure and/or refusal to provide additional verification constitutes a material breach of the State Farm Companies' insurance policies and the No-Fault Laws under which the claims have been made and, as such, relieves the State Farm Companies from any obligation to pay Defendant on any of the claims.

43. In each instance where Eclipse refused to provide proper verification, the State Farm Companies issued a timely denial on the prescribed NF-10 form stating in relevant part that the Defendant failed to comply with its obligation to present a proper proof of claim, and that the Defendant's claim was denied because it failed to satisfy a condition of coverage.

44. All of the State Farm Companies' denials of Defendant's bills/claims and charges were timely, proper, and consistent with the No-Fault Laws. The chart annexed hereto as **Exhibit "A"** identifies each claim where verification was requested by the State Farm Companies.

## FIRST CAUSE OF ACTION
### Against Eclipse
### (Declaratory Relief Under 28 U.S.C. §§ 2201 and 2202)

45. Plaintiffs incorporate each and every allegation contained in Paragraphs 1 through 44 of this Complaint as if fully set forth at length herein.

46. There is an actual case in controversy between the State Farm Companies and Defendant regarding more than $298,000.00 in billing for healthcare services that has been submitted to the State Farm Companies. The claims in dispute are listed on **Exhibit "A".**

47. Defendant has no right to receive payment for any of the claims listed on **Exhibit "A"** because it failed and/or refused to verify its claims, and therefore, breached a condition of coverage and violated its obligations under the No-Fault Laws.

48. Accordingly, the State Farm Companies request a judgment declaring that Eclipse has no right to receive payment for the claims submitted to the State Farm Companies and listed on **Exhibit "A"** because it failed and/or refused to verify its claims, and thus breached a condition of coverage and violated its obligations under the No-Fault Laws.

**WHEREFORE**, the State Farm Companies respectfully request that this Court enter a declaratory judgment in their favor and against Eclipse, as follows:

- On the First Cause of Action, a declaration that Eclipse Medical Imaging, PC has no right to receive payment for the claims submitted to the State Farm Companies and listed on **Exhibit "A."**

### SECOND CAUSE OF ACTION
### Against Eclipse
### (Declaratory Relief Under CPLR § 3001)

49. Plaintiffs incorporate each and every allegation contained in Paragraphs 1 through 48 of this Complaint as if fully set forth at length herein.

50. There is an actual case in controversy between the State Farm Companies and Defendant regarding more than $298,000.00 in billing for healthcare services that has been submitted to the State Farm Companies. The claims in dispute are listed on **Exhibit "A"**.

51. Defendant has no right to receive payment for any of the claims listed on **Exhibit "A"** because it failed and/or refused to verify its claims, and therefore, breached a condition of coverage and violated its obligations under the No-Fault Laws.

52. Accordingly, the State Farm Companies request a judgment declaring that Eclipse has no right to receive payment for the claims submitted to the State Farm Companies and listed on **Exhibit "A"** because it failed and/or refused to verify its claims, and thus breached a condition of coverage and violated its obligations under the No-Fault Laws.

**WHEREFORE**, the State Farm Companies respectfully request that this Court enter a declaratory judgment in their favor and against Eclipse, as follows:

- On the Second Cause of Action, a declaration that Eclipse Medical Imaging, PC has no right to receive payment for the claims submitted to the State Farm Companies and listed on **Exhibit "A."**

Dated: New York, New York
April 25, 2023

Respectfully submitted,

GOLDBERG, MILLER & RUBIN, P.C.

By: _____
Matthew Moroney, Esq.
Harlan Schreiber, Esq.
*Counsel for Plaintiffs, State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company and State Farm Fire and Casualty Company*