**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------X
STATE FARM MUTUAL AUTOMOBILE INSURANCE : Civil Action No:
COMPANY, STATE FARM INDEMNITY COMPANY, : 1:23-cv-3124-ENV-RMI
STATE FARM GUARANTY INSURANCE COMPANY, :
and STATE FARM FIRE AND CASUALTY :
COMPANY :
:
:
:
:
                  Plaintiffs, : **MEMORANDUM OF LAW**
: **IN SUPPORT OF PLAINTIFF'S**
  -against- : **MOTION FOR PRELIMINARY**
: **INJUNCTION AND STAY**
ECLIPSE MEDICAL IMAGING, P.C. :
:
               Defendants. :
_____

**TABLE OF CONTENTS**

INTRODUCTION …...………..………………………………………………… 1

BACKGROUND ………………………………………………………………... 2

   A. New York's No-Fault Insurance Laws ……………………………………… 2

   B. New York's No-Fault Regulations Pertaining to Verification of Claims ………………. 4

   C. Eclipse's Bills Are Not Compensable ……………………………………… 5

   D. Eclipse's Use of Arbitrations ………………………………………………....… 11

ARGUMENT …………………………………………………………………... 11

   A. Standard of Review ………………………………………………………….. 11

      i. Federal Arbitration Act Does Not Apply to No-Fault Insurance Policies ……... 12

      ii. The Anti-Injunction Act Is Not Applicable ……………………………… 14

   B. All of the Requirements for a Preliminary Injunction Are Met ………………………... 15

i.   The State Farm Companies Will Suffer Irreparable Harm if the Requested

Relief is not Granted ……………………………………………………… 15

ii.   The State Farm Companies have Shown a Likelihood of Success

on the Merits or Sufficiently Serious Questions Going to the

Merits to Make Them Fair Grounds for Litigation …………………………….. 18

iii.  The Balance of Hardships, and the Public Interest,

Support Enjoining Eclipse ……………………………………………………... 21

C.  Security for an Injunction is Not Necessary or Required Here ………………………... 23

CONCLUSION …………………………………………………………………………………... 23

## **TABLE OF AUTHORTIES**

**Cases**

*Allstate Ins. Co. v. Elzanaty*,

    929 F. Supp. 2d 199 (E.D.N.Y. 2013) ...................................................... 2, 16, 18, 21

*Allstate Ins. Co. v. Lyons*,

    843 F. Supp. 2d 358 (E.D.N.Y. 2012)........................................................................ 13

*Allstate Ins. Co. v. Mun*,

    751 F.3d 94 (2d Cir. 2014)................................................................................... 2, 17

*Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*,

    2019 N.Y. Slip Op. 04643.................................................................................... 3, 19

*Arthur Ave. Med. Servs., P.C. v. GEICO Ins. Co.*,

    148 N.Y.S.3d 356 (Civ. Ct. 2021) ............................................................................. 19

*Benisek v. Lamone*,

    138 S. Ct. 1942 (2018)............................................................................................. 11

*Bensadoun v. Jobe-Riat*

    316 F.3d 171 (2d Cir. 2003) .................................................................................... 12

*Central Suffolk Hosp. v. New York Cent. Mut. Fire Ins. Co.*,

    24 A.D.3d 492 [2d Dept 2005]................................................................................ 20

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,

    598 F.3d 30 (2d Cir. 2010)................................................................................. 12, 18

*Doctor's Assocs., LLC v. Tripathi*,

    794 F. App'x 91 (2d Cir. 2019) ............................................................................... 14

*Doctor's Assocs. v. Stuart*,

85 F.3d 975 (2d Cir. 1996) ................................................................................................ 23

*Dombrowski v. Pfister*,

    380 U.S. 479 (1965) ...................................................................................................... 14

*Engelman v. Cahn*,

    425 F.2d 954 (2d Cir. 1969) .......................................................................................... 14

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,

    559 F.3d 110 (2d Cir. 2009) ..................................................................................... 15, 16

*Golden Krust Patties, Inc., v. Bullock*,

    957 F. Supp. 186 (E.D.N.Y. 2013) ................................................................................ 23

*Gov't Emples. Ins. Co. v. Advanced Comprehensive Lab'y, LLC*,

    No. 20-CV-2391, 2020 WL 7042648 (E.D.N.Y. Dec. 1, 2020) ........................... 18, 19

*Gov't Emples. Ins. Co. v. Badia*,

    No. 13-CV-1720, 2015 WL 1258218 (E.D.N.Y. 2015) ............................................... 19

*Gov't Emples. Ins. Co. v. Beynin*,

    No. 19-CV-06118, 2021 WL 1146051 (E.D.N.Y. Mar. 25, 2021) ................... 11, 13, 18, 21, 22

*Gov't Emples. Ins. Co. v. Cean*,

    No. 19-CV-2363, 2019 U.S. Dist. LEXIS 203298 (E.D.N.Y. Nov. 22, 2019) ............... 17, 21

*Gov't Emples. Ins. Co. v. Jacques*,

    No. 14 Civ. 5299, 2017 U.S. Dist. LEXIS 20915 (E.D.N.Y. Feb. 13, 2017) ............................ 19

*Gov't Emples. Ins. Co. v. Landow*,

    No. 21-CV-1440, WL 939717 (E.D.N.Y. Mar. 29, 2022) ............................................ 18

*Gov't Emples. Ins. Co. v. Mayzenberg*,

    No. 17-CV-2802, 2018 WL 6031156 (E.D.N.Y. Nov. 16, 2018) .................. 13, 14, 19, 20, 22

*Gov't Emples. Ins. Co. v. Moshe,*

    No. 1:20-cv-1098, 2020 WL 3503176 (E.D.N.Y. June 29, 2020) .................................... 16, 20

*Gov't Emples. Ins. Co. v. Relief Med., P.C.,*

    554 F. Supp. 3d 482 (E.D.N.Y. 2021) ................................................. 13, 16, 18, 20, 21, 22, 23

*Gov't Emples. Ins. Co. v. Strut,*

    No. 19-cv-728V, 2019 U.S. Dist. LEXIS 205801 (W.D.N.Y. Nov. 26, 2019) …………….... 22

*Gov't Emples. Ins. Co. v. Strut,*

    No. 19-cv-728, 2020 WL 1820500 (W.D.N.Y. Apr. 9, 2020) ………………………………. 22

*Gov't Emples. Ins. Co. v. Strutsovskiy,*

    No. 12-CV-330, 2017 U.S. Dist. LEXIS 178514 (W.D.N.Y. Dec. 2, 2016).................. 16, 22

*Gov't Emples. Ins. Co. v. Wellmart RX, Inc.,*

    435 F. Supp. 3d 443 (E.D.N.Y. 2020) ............................................................. 11, 13, 15, 18, 22

*Gov't Emples. Ins. Co. v. Zaitsev,*

    No. 20-C-3495, 2021 WL 3173171 (E.D.N.Y. July 27, 2021)............................................ 16, 18

*Gov't Emples. Ins. Co. v. Zilberman,*

    No. 20-CV-209, 2021 WL 1146086 (E.D.N.Y. Mar. 25, 2021) ......................................... 13, 18

*Grand River Enter. Six Nations, Ltd. v. Pryor,*

    481 F.3d 60 (2d Cir. 2007) ..................................................................................................... 16

*Gutman v. Klein,*

    2010 U.S. Dist. LEXIS 162912, 2010 WL 11601992 (E.D.N.Y. July 21, 2010).................... 14

*In re Baldwin-United Corp.,*

    770 F.2d 328............................................................................................................................ 14

*Liberty Mut. Ins. Co. v. Excel Imaging, P.C.,*

879 F. Supp. 2d 243 (E.D.N.Y. 2012) ..................................................................... 13

*Long Island Radiology v. Allstate Ins. Co.*,

830 N.Y.S.2d 192 (App. Div. 2007) ....................................................................... 20

*Oneida Nation of N.Y. v. Cuomo*,

645 F.3d 154 (2d Cir. 2011) ................................................................................... 21

*Pathways, Inc. v. Dunne*,

329 F.3d 108 (2d Cir. 2003) ................................................................................... 14

*Really Good Stuff LLC v. BAP Invs., L.C.*,

813 F. App'x 39 (2d Cir. 2020) .............................................................................. 21

*Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*,

386 F.3d 419 (2d Cir. 2004) ................................................................................... 14

*SAM Party of N.Y. v. Kosinski*,

987 F.3d 267 (2d Cir. 2021) ................................................................................... 12

*SEC v. Citigroup Glob. Mkts. Inc.*,

673 F.3d 158 (2d Cir. 2012) ................................................................................... 22

*Spanski Enters., Inc. v. Telewizja Polska S.A.*,

832 F. App'x 723 (2d Cir. 2020) ............................................................................ 18

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*,

445 F. Supp. 2d 356 (S.D.N.Y. 2006) .................................................................... 14

*St. Vincent's Hosp. of Richmond v. American Tr. Ins. Co.*,

299 A.D.2d 338 [2d Dept 2002] ............................................................................. 20

*State Farm Mut. Auto. Ins. Co. v. Mallela*,

4 N.Y.3d 313 (2005) ........................................................................................... 3, 19

*State Farm Mut. Auto. Ins. Co., v. Metro Pain Specialists, P.C*,

   No. 21-CV-5523, 2022 U.S. Dist. LEXIS 91241 (E.D.N.Y. May 19, 2022) .................. 17, 20

*State Farm Mut. Auto. Ins. Co. v. Parisien*,

   352 F. Supp. 3d 215 (E.D.N.Y. 2018) .............................................................. 16, 18

*Sun Life Assur. Co. of Canada v. Diaz*,

   No. 2015 U.S. Dist. LEXIS 52654, 2015 WL 1826088 (D. Conn. 2015) .............................. 14

*UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*,

   660 F.3d 643 (2d Cir. 2011) .......................................................................... 12, 13

*United States v. Zemlyansky*,

   908 F.3d 1 (2d Cir. 2018) ................................................................................ 2

*Univ. of Tex. v. Camenisch*,

   451 U.S. 390 (1981) ...................................................................................... 11

*Ventura de Paulino v. N.Y.C. Dep't of Educ.*,

   959 F.3d 519 (2d Cir. 2020) ............................................................................ 12

*Volt Info. Scis., Inc. v. Bd. of Trs.*,

   489 U.S 468 (1989). ...................................................................................... 12

*Winter v. NRDC, Inc.*,

   555 U.S. 7 (2008) .................................................................................... 21, 22

*Wisoff v. City of Schenectady*,

   No. 1:07-CV-34, 2009 U.S. Dist. LEXIS 17604, 2009 WL 606139 (N.D.N.Y. Mar. 9, 2009) 15

*Yang v. Kosinski*,

   960 F.3d 119 (2d Cir. 2020) ...................................................................... 15, 21, 22

**Statutes**

8 N.Y. Comp. Codes R. & Regs. § 29.1(B)(4).................................................................... 19

9 U.S.C. § 1 ......................................................................................................................... 12

11 N.Y. Comp. Codes R. & Regs. § 65-1.1 …………………………..……………….2, 3, 4

11 N.Y. Comp. Codes R. & Regs. § 65-3.11 ................................................................... 2

11 N.Y. Comp. Codes R. & Regs. § 65-3.16…………………………………………………19

11 N.Y. Comp. Codes R. & Regs. § 65-3.5 ……………………………………………………4

11 N.Y. Comp. Codes R. & Regs. § 65-4.5 …………………………………………..……13

N.Y. Ins. Law § 5102 ..................................................................................................... 2, 3

N.Y. Ins. Law § 5103 ......................................................................................................... 2

N.Y. Ins. Law § 5106 .............................................................................. 2, 3, 12, 17

## I.     __INTRODUCTION__

In this action for declaratory judgment, Plaintiffs, State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company, and State Farm Fire and Casualty Company ("the State Farm Companies") seek a determination that they are legally obligated to pay bills submitted by Defendant, Eclipse Medical Imaging, P.C. ("Eclipse") for highly questionable diagnostic testing services allegedly rendered to their insureds. The State Farm Companies, like other insurers who brought lawsuits against Eclipse, have serious concerns that Eclipse is owned or controlled by a non-physician in violation of New York law. In order to combat and detect potential fraud, New York, through its No-Fault Laws, set up the verification process to permit insurers to obtain documents and other information from medical providers to confirm whether or not the medical provider is properly incorporated and owned and controlled by a physician. Eclipse's failure and/or refusal to provide verification responses constitutes a material breach of the State Farm Companies' insurance policies and the No-Fault Laws under which the claims have been made and, as such, relieves the State Farm Companies from any obligation to pay Defendant on any of the claims at issue in this action.

This action was filed on April 25, 2023. Eclipse was served on May 8, 2023. To date, Eclipse has not answered the Complaint and the time to answer has expired, nor has an attorney entered his/her appearance on behalf of Eclipse. The Court entered a Certificate of Default on June 15, 2023. Rather than litigating these claims in this action, Eclipse is utilizing arbitration actions to attempt to collect insurance benefits to which it is not entitled.

This Court should grant a preliminary injunction to preserve the relative positions of the parties until a determination in this action is made. A preliminary injunction should be granted because: (i) the State Farm Companies will suffer irreparable harm absent an injunction; (ii) there

are sufficiently serious questions going to the merits of this action to make it a fair ground for litigation; and (iii) the balance of hardships, as well as the public interest, favor the grant of a preliminary injunction.  Further, this Court has authority to grant such relief as the Federal Arbitration Act does not restrict this Court's ability to grant the requested injunction.  Accordingly, a preliminary injunction barring Eclipse from prosecuting pending arbitrations and commencing new arbitrations and lawsuits while this action is pending should be granted.

## II.    BACKGROUND

### A.    New York's No-Fault Insurance Laws

Under New York's No-Fault law, automobile insurers provide mandatory coverage for certain no-fault benefits, including necessary expenses for medical treatment up to $50,000.[1] N.Y. Ins. Law §§ 5102(a)(1), 5102(b), 5103. "[I]ndividuals injured in car accidents assign their statutory benefits to licensed medical professionals, who submit claims for medically 'necessary' treatment the injured party's insurance carriers." *United States v. Zemlyansky*, 908 F.3d 1, 7 (2d Cir. 2018) (first quoting N.Y. Ins. Law § 5102; and then citing 11 N.Y. Comp. Codes R. & Regs. § 65-3.11). Once the healthcare provider takes an assignment of an insured's rights, the provider cannot seek to recover payment from the insured.  Instantly, Eclipse received assignments for the claims and bills at issue in this lawsuit.  A regulation implementing section 5106(b) of the New York Insurance Law states that "[i]n the event any person making a claim for first-party benefits and the [insurance] [c]ompany do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to arbitration." 11 N.Y. Comp. Codes R. & Regs. § 65-1.1(d); *see also Allstate Ins. Co. v. Mun*, 751 F.3d 94, 97-98 (2d Cir. 2014) (quoting 11 N.Y.

---

[1] *See Allstate Ins. Co. v Elzanaty*, 916 F. Supp. 2d 273, 281-83 (E.D.N.Y 2013) (providing detailed overview of New York's no-fault scheme).

Comp. Codes R. & Regs. § 65-1.1(a), (d)). Such arbitrations are held pursuant to "simplified procedures." § 5106(b).

A provider of health services is not eligible for reimbursement under § 5102(a)(1) under a number of circumstances.  Pursuant to the No-Fault Laws, healthcare providers that seek to collect No-Fault benefits from New York automobile insurers must be in compliance with all applicable New York licensing laws and must be owned and controlled by licensed healthcare providers.  In *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 320 (2005), the New York Court of Appeals made clear that healthcare providers that fail to comply with licensing requirements are ineligible to collect No-Fault Benefits, and that insurers may look beyond a facially-valid license to determine whether there was a failure to abide by state and local law. In *Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 2019 N.Y. Slip Op. 04643, the New York Court of Appeals reiterated that only licensed physicians may practice medicine in New York because of the concern that unlicensed physicians are "not bound by ethical rules that govern the quality of ca se delivered by a physician to a patient."

In New York, only a licensed healthcare professional may: (i) practice the pertinent healthcare profession; (ii) own and control a professional corporation authorized to operate a professional healthcare practice; (iii) employ and supervise other healthcare professionals; and (iv) absent statutory exceptions not applicable in this case, derive economic benefit from healthcare professional services.  Unlicensed individuals, i.e. laypersons, may <u>not</u>: (i) practice medicine; (ii) own or control a professional corporation authorized to operate a professional healthcare practice; (iii) employ or supervise healthcare professionals; or (iv) absent statutory exceptions not applicable in this case, derive economic benefit from professional healthcare services.  In addition, healthcare service providers are not eligible to receive No-Fault benefits if they engage in self-

referrals, kickbacks, or other illegal payments in violation of New York's Public Health Law or if the services billed for are not medically necessary.

### B.      New York's No-Fault Regulations Pertaining to Verification of Claims

The No-Fault Laws obligate healthcare providers, which seek payment of No-Fault Benefits, to provide insurers with additional verification in order to establish proof of their claims. The prescribed No-Fault policy endorsement set forth in 11 N.Y.C.R.R. § 65-1.1 includes a specific section entitled "Conditions," which states in part, that "upon request by the Company, the eligible injured person or that person's assignee . . . shall (d) provide any other pertinent information that may assist the Company in determining the amount that is payable."

The prescribed No-Fault policy endorsement set forth in 11 N.Y.C.R.R. § 65-1.1 also states that "[n]o action shall lie against the Company, unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage." The proof of claim requirement in the No-Fault policy endorsement, 11 N.Y.C.R.R. § 65-3.5(b) states in relevant part:

> Subsequent to the receipt of one or more of the completed verification forms, any additional verification required by the insurer to establish proof of claim shall be requested within 15 business days of receipt of the prescribed verification forms. Any requests by an insurer for additional verification need not be made on any prescribed or particular form.

Additionally, 11 N.Y.C.R.R. § 65-3.5(c) states in relevant part:

> The insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested.

Moreover, 11 N.Y.C.R.R. § 65-3.5(o) states in relevant part:

> An applicant from whom verification is requested shall, within 120 calendar days from the date of the initial request for verification, submit all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply. The insurer shall advise the applicant in the verification request that the insurer may deny the claim if the applicant does not provide within 120 calendar days from the date of the initial request either all such

verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply.

**C.      Eclipse's Bills Are Not Compensable**

Eclipse's failure and/or refusal to provide the information requested by the State Farm Companies pursuant to the verification process constitutes a material breach of the State Farm Companies' insurance policies and the No-Fault Laws under which the claims have been made and, as such, relieves the State Farm Companies from any obligation to pay Eclipse on any of the claims at issue in this action.

Prior to seeking information from Eclipse in the verification process, the State Farm Companies conducted an investigation into the claims submitted by Eclipse, which included a survey of the records of numerous patients and investigating the appropriateness and legitimacy of the billed-for services.  Based on this investigation, serious questions as to the legitimacy of the services were identified, which justified the need for additional verification.  These serious questions include concerns as to whether Jack Baldassare, M.D. ("Baldassare") truly owns and controls Eclipse or if Eclipse is/was owned or controlled by laypersons in violation of New York law.[2]  (See paragraphs 23-24 of the Complaint). The practice of fraudulently placing the names of physician straw owners on the corporate documents of medical corporations has been a major problem in the New York Metropolitan area.   Laypersons, who secretly own and control these medical practices, engage in this practice to bill for unnecessary and fraudulent services and place a licensed physician on the corporate records in order to conceal their involvement.  Under New York law, it is well-established that if a medical practice is owned or controlled by laypersons, then it is not eligible to recover on any bills.  The New York No-Fault Laws set up the verification

---

[2] Eclipse's bills identify Dr. Baldassare as its owner.

process to permit insurers to obtain documents and information from medical providers who submit bills to confirm whether or not the medical provider is properly incorporated.

Eclipse and Baldassare have also been sued by other insurance companies. In 2021, GEICO filed a lawsuit in the United States District Court, Eastern District, under Docket Number 1:21-cv-01074 ("GEICO lawsuit"). In that action, it was alleged that Eclipse was submitting bills for unnecessary radiological services. The GEICO lawsuit Complaint further alleged that Baldassare "sold" or "lent" the use of his name and professional license to a non-medical layperson, Robert Maksumov ("Robert Maks"). It was further alleged that Robert Maks maintained control over Eclipse through a series of financial and kickback arrangements. (See Exhibit "A" for the Complaint in the GEICO lawsuit).

Also in 2021, Allstate Insurance Company filed a lawsuit in the United States District Court, Eastern District, under Docket Number 1:21-cv-00420-LDH-VMS ("Allstate lawsuit"). In that action, it is alleged that although Baldassare is the listed owner on the corporate records of Eclipse, Eclipse was actually owned, operated, and controlled by laypersons, such as Robert Maks and his spouse Yelena Maks who benefited from a substantial volume of medically unnecessary healthcare tests and services. (See Exhibit "B" for the Complaint in the Allstate lawsuit).

In addition to these concerns of whether Eclipse is truly owned and controlled by a licensed physician, there are also serious questions regarding whether the testing billed by Eclipse was actually ordered by a physician and whether the testing was medically necessary. To illustrate, although Eclipse produced records indicating that an Arkam Rehman, M.D. ordered diagnostic testing conducted by Eclipse, Dr. Rehman executed an affidavit in which he averred that he did not prescribe nor authorize the prescription of testing reportedly provided by Eclipse. Dr. Rehman further averred that his name and credentials were utilized by unknown individuals as part a

scheme to prescribe testing and other services. (See Exhibit "C" for the affidavit of Arkam Rehman, M.D.). Dr. Rehman is the listed physician on many claims that have been submitted by Eclipse to the State Farm Companies. (See paragraph 27 of the Complaint) In the Allstate lawsuit, it is alleged that other medical providers also conspired to order medically unnecessary testing to be conducted by Eclipse as well.

Because of these troubling issues, the State Farm Companies requested that Eclipse appear for an Examination Under Oath ("EUO") as part of the verification process. Baldassare appeared on behalf of Eclipse. When he was asked questions as to the start-up of Eclipse as a business, Baldassare testified that a stranger by the name of Robert Maks informed him there was an empty radiology business with MRI, CT, and X-ray equipment sitting there and that the "people who ran it had left." (See Exhibit "D" for pages 19-21 of testimony of Baldassare). This former radiology business was called Kensington Radiology Group, P.C. ("Kensington Radiology"). As alleged in the GEICO lawsuit, Eclipse is a mere continuation of Kensington Radiology. As alleged in the GEICO lawsuit, toward the end of 2016, the lay owners became concerned that their unlawful ownership and control of Kensington Radiology was being exposed and saw the "writing on the wall." In an attempt to continue the fraudulent scheme, Kensington Radiology was replaced by Eclipse. As alleged in the GEICO lawsuit, the paper owners of Kensington Radiology were replaced by Baldassare, who had acted as a reading radiologist for Kensington Radiology. As alleged in the GEICO lawsuit, in exchange for compensation, Baldassare agreed to falsely represent that he was the owner of Eclipse. (See Exhibit "A" for the Complaint in the GEICO lawsuit).

Although he admitted he worked for Kensington Radiology, Baldassare claimed that he somehow did not know who owned the business he worked for. (See Exhibit "D" for pages 14-15

of testimony of Baldassare). Additionally, when Robert Maks presented him with the opportunity of a radiology practice, Baldassare claimed that he did not know that Kensington Radiology was the entity that vacated the location. (See Exhibit "D" for pages 19-21 of testimony of Baldassare). Baldassare further testified that Robert Maks presented him with a turnkey operation with equipment and staff (e.g., management, technicians, and billing staff). Baldassare continued to serve as the reading radiologist, doing so from his residence in New Jersey. Baldassare did not pay any of the start-up costs for Eclipse. (See Exhibit "D" for pages 21-26 of testimony of Baldassare).

It should also be noted that Kirsten Flanagan, who is a certified public accountant, a certified fraud examiner, and practices as a forensic accountant for Marcum LLP, issued an expert report. As per Ms. Flanagan, "[b]ased on my review of the documents provided to State Farm and made available to me to date, as well as the examination under oath and the affidavit of Dr. Baldassare, I have identified various indications to suggest that Dr. Baldassare may not, in fact, own and control Eclipse." As outlined in Ms. Flanagan's report, Baldassare does not have any involvement in generating business for Eclipse. Baldassare does not appear involved in supervising employees, dealing with day-to-day operations of the business, dealing with marketing and referral sources, billing, revenue, accounts receivable, collections, or hiring collections counsel. These activities are controlled by Robert Maks. Rather, Baldassare's involvement appears limited to purportedly interpreting radiology studies from his residence in New Jersey. (See Exhibit "E" for the expert report of Ms. Flanagan).

Additionally, during the EUO, Baldassare testified that he was the only person that signed checks for Eclipse's bank account. (See Exhibit "D" for pages 70-71 of testimony of Baldassare). In spite of this, it appears that a rubberstamp with Baldassare's signature was used

to sign/endorse most of the checks produced to date.  After the EUO, Baldassare submitted an affidavit where he changed the answers to numerous questions.  For example, during the EUO, Baldassare testified that Eclipse signed a lease.  In the affidavit, which was submitted at a later date, Baldassare changed this response to read, "I never signed any written agreement."  Considering Baldassare provided an incorrect answer at the EUO to a question an owner should know about his/her business, the later affidavit only reinforces the concern that Baldassare may not own and operate Eclipse.  (See paragraphs 32-33 of the Complaint).

Because Baldassare's testimony provided during the EUO failed to resolve the troubling concerns noted above and only raised additional concerns, it was necessary for Eclipse to provide documents and information, which were necessary for the State Farm Companies to properly verify the submitted bills and claims.  Instead of complying with these requests as required by both the No-Fault laws and the insurance policies at issue, Eclipse objected to many of these requests and refused to provide the requested documents.  As an illustrative example of how these documents are relevant and necessary, at the EUO, Baldassare testified that Eclipse possessed documentation demonstrating that it owned the radiological equipment, including MRI, CT, and X-ray equipment/machines utilized by Eclipse.  As noted previously, Eclipse replaced Kensington Radiology at the location using the same radiology equipment that was allegedly "abandoned" by Kensington Radiology.  The concern is that Eclipse does not actually own the equipment, which is quite expensive such as MRI machines and computers.  If Eclipse and/or Baldassare do not own the equipment and it is owned by Robert Maks, then there is nothing preventing Robert Maks from simply replacing Eclipse and Baldassare at the location like Kensington Radiology was previously replaced. It appears that Robert Maks may own the equipment, along with controlling the staff. Robert Maks also obtains Eclipse's work, e.g., purported referrals from physicians for diagnostic

testing, which would mean that Baldassare does not really own anything as Robert Maks can freely replace him like any other employee and continue the business (just like the switch from Kensington Radiology to Eclipse).  Accordingly, the State Farm Companies sought documents proving that Baldassare and Eclipse owned the equipment.  Although Baldassare claimed under oath that these documents existed, in response to the State Farm Companies' requests, Eclipse responded that there are no written records evidencing Eclipse's ownership of this equipment.  Additionally, in order to assess these concerns regarding whether Baldassare truly owns and controls Eclipse, the State Farm Companies requested Eclipse to provide its bank records, along with bookkeeping records and financial statements, as well as copies of all payments to Robert and Yelena Maks.  In spite of these requests, Eclipse has failed to provide these records.  (See paragraphs 34 -36 of the Complaint).

Among the other documents that Eclipse failed to produce are (i) copies of lease agreements, in their entirety, from January 2017 to present; (ii) copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through present; (iii) copies of all payments to Robert and Yelena Maks from January 1, 2019 to present; (iv) tax returns for tax years 2018 and 2021; and (v) copies of all recordings reflecting compensation, including salary and bonuses, paid to Baldassare.  (See paragraph 37 of the Complaint).  As per Ms. Flanagan, "[b]ased on my experience, including 22 years as a forensic accountant and 28 years as a CPA, considering the red flags indicating a lack of ownership and control by Dr. Baldassare, it is my opinion that all documents and information requested by State Farm are reasonable and necessary to make a proper and objective assessment regarding whether Dr. Baldassre, in fact, owns and financially ad operationally controls Eclipse."  (See Exhibit "E" for the expert report of Ms. Flanagan).

### D.    Eclipse's Use of Arbitrations

Rather than defending this lawsuit, Eclipse has filed arbitration actions before the American Arbitration Association.  To date, Eclipse has filed 96 arbitrations brought against the State Farm Companies seeking payment of bills, which are at issue in this declaratory judgment action.  Eclipse is also likely to file many new arbitrations during this action concerning the same denied bills that are at issue in the declaratory judgment action, which amounts to approximately $300,000.  (See Exhibit "F" for the Declaration/Affidavit of Valerie Williams).  At the same time, Eclipse is ignoring this action. To date, Eclipse has not answered the Complaint and the time to answer has expired, nor has an attorney entered his/her appearance on behalf of Eclipse. The Court entered a Certificate of Default on June 15, 2023.

## III.   ARGUMENT

A preliminary injunction should be issued to stay pending arbitrations and to enjoin Eclipse from commencing arbitrations and state court lawsuits during the pendency of this action.

### A.   Standard of Review

"The preliminary injunction standard applies where … a party seeks to stay pending no-fault insurance claims and to enjoin the filing of further claims during the pendency of a lawsuit seeking to invalidate those claims."  *Gov't Emples. Ins.* Co. *v. Beynin*, No. 19-CV-06118, 2021 WL 1146051, at *4 (E.D.N.Y. Mar. 25, 2021) (collecting cases); *see also Gov't Emples. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 449 (E.D.N.Y. 2020) (analyzing a motion to stay and enjoin no-fault collection proceedings under the preliminary injunction standard).

The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). A party seeking a preliminary injunction "must establish (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable

harm if the injunction is not granted, (3) that the balance of the equities tips in its favor, and (4) that the injunction serves the public interest." *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 273-74 (2d Cir. 2021); *see also Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020) (noting that to obtain a preliminary injunction, "the movant has to 'show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010), *cert. denied*, 141 S. Ct. 1075 (2021)).

Instantly, the relief requested here satisfies the standards for a preliminary injunction in that the State Farm Companies will suffer irreparable harm in the absence of an injunction, there are, at a minimum, sufficiently serious questions going to the merits as to make them fair grounds for litigation, the balance of hardships tip decidedly in the State Farm Companies' favor, and the public interest weighs in favor granting the injunction.

### i.  Federal Arbitration Act does not apply to no-fault insurance policies

The Federal Arbitration Act "requires courts to enforce privately *negotiated* agreements to arbitrate." *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 649 (2d Cir. 2011) (emphasis added) (first citing 9 U.S.C. § 1, *et seq.;* then quoting *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989); and then citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 176 (2d Cir. 2003)). Although the Federal Arbitration Act "prevents federal district courts from enjoining private arbitrations where an arbitration clause is present in the governing contract," a "mandatory arbitration clause . . . prescribed by [s]ection 5106(b) of New York Insurance Law, does not result in arbitrations that are 'truly voluntary' because it is mandated by statute and not

by voluntary agreement of the parties." *Gov't Emples. Ins. Co. v. Mayzenberg*, No. 17-CV-2802, 2018 WL 6031156, at \*3 (E.D.N.Y. Nov. 16 2018). "[U]nlike a bargained-for arbitration clause, the parties . . . [we]re not permitted to choose where the arbitrations [will] take place, who will serve as the arbitrators, or any other procedural components of the arbitration." *Id.* (citing 11 N.Y. Comp. Codes R. & Regs. § 65-4.5); *see also Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 263 (E.D.N.Y. 2012) (concluding that the "right to arbitrate is a creation of state no-fault law" and the defendants "presented no evidence that the . . . insurance contracts bargained for the right to arbitrate affirmative fraud claims through their private agreements."); *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 380 (E.D.N.Y. 2012) (noting that "the parties cannot be said to have evinced an intention or bargained for the right to arbitrate affirmative fraud claims through their private agreements" where "local law mandates that disputes be arbitrable" and the plaintiff's contracts "merely adhere[d] to this mandate, parroting the words of the statute or silently adopting its provisions.").

Because the Federal Arbitration Act "requires courts to enforce privately *negotiated* agreements to arbitrate," *UBS Fin. Servs., Inc.*, 660 F.3d at 649 (emphasis added), and the arbitration clauses in the contracts at issue were mandated under New York No-Fault statutes rather than bargained for, "the Federal Arbitration Act is inapplicable and [the Court] has the authority to enjoin No-Fault arbitration proceedings." *Gov't Emples. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 493 (E.D.N.Y. 2021); *see Beynin*, 2021 WL 1146051, at \*9 (noting that the court was "persuaded by the rationale in *Mayzenberg*" that "it has the authority to stay pending no-fault proceedings"); *Gov't Emples. Ins. Co. v. Zilberman*, No. 20-CV-209, 2021 WL 1146086, at \*1 (E.D.N.Y. Mar. 25, 2021) (granting motion to stay no-fault insurance arbitrations and civil court collection actions); *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456 ("[T]he court does not consider

. . . the Federal Arbitration Act . . . as barring its authority to enjoin pending and future arbitrations, or future state law collection suits.").

### ii.  <u>The Anti-Injunction Act is not applicable</u>

The Anti-Injunction Act "bars a federal court from enjoining a proceeding in state court unless that action is 'expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *Doctor's Assocs., LLC v. Tripathi*, 794 F. App'x 91, 93 (2d Cir. 2019) (quoting *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425 (2d Cir. 2004)). While "the Anti-Injunction Act limits the authority of federal district courts to enjoin pending, previously filed state court proceedings," *Mayzenberg*, 2018 U.S. Dist. LEXIS 195890, 2018 WL 6031156, at *7 (E.D.N.Y. Nov 16, 2018) (citing 28 U.S.C. § 2283), the "Act does not prevent a federal court from restraining a party from instituting future state proceedings," *Pathways, Inc. v. Dunne*, 329 F.3d 108, 114 (2d Cir. 2003); *Sun Life Assur. Co. of Canada v. Diaz*, No. 2015 U.S. Dist. LEXIS 52654, 2015 WL 1826088, at *5 (D. Conn. 2015) ("The Anti-Injunction Act only bars stays of suits currently pending in state court, not injunctions against future actions." (first citing *Dombrowski v. Pfister*, 380 U.S. 479, 484 n.2 (1965); then citing *Engelman v. Cahn*, 425 F.2d 954, 958 (2d Cir. 1969); *Gutman v. Klein*, 2010 U.S. Dist. LEXIS 162912, 2010 WL 11601992, at *4 (E.D.N.Y. July 21, 2010) ("Although the Anti-Injunction Act bars the [c]ourt from enjoining the pending state actions, the [c]ourt is not so constrained with respect to defendants' future claims."); *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props.*, LLC, 445 F. Supp. 2d 356, 362 n.7 (S.D.N.Y. 2006) ("The Anti-Injunction Act applies only to state proceedings that have already been initiated." (citing *In re Baldwin-United Corp.*, 770 F.2d 328, 335)).

Although Eclipse is currently prosecuting one civil court lawsuit, the State Farm Companies are only seeking to enjoin Eclipse from commencing future No-Fault insurance collection lawsuits against them pending the disposition of the declaratory judgment claim, which renders the Anti-Injunction Act inapplicable. *See Wisoff v. City of Schenectady*, No. 1:07-CV-34, 2009 U.S. Dist. LEXIS 17604, 2009 WL 606139, at *7 (N.D.N.Y. Mar. 9, 2009) ("[e]ven assuming the existence of pending state court actions, [the] plaintiff does not seek to enjoin any actions 'commenced before the filing of . . . this action' but rather, seeks to enjoin [the] defendant from 'commencing any prosecution (not yet commenced),'" which renders the Anti-Injunction Act inapplicable). Because the Anti-Injunction Act does not bar the stay of future state court actions, this Court should exercise jurisdiction over the request to enjoin Eclipse from commencing no-fault insurance state court collection actions, in addition to exercising jurisdiction over the request to staying all pending and future arbitration actions. *See Wellmart RX, Inc.*, 435 F. Supp. 3d at 456 ("[T]he court does not consider . . . the Anti-Injunction Act as barring its authority to enjoin . . . future state law collection suits.").

**B. All of the Requirements for a Preliminary Injunction Are Met**

This Court should issue a preliminary injunction because the State Farm Companies will suffer irreparable harm in the absence of an injunction, there are, at a minimum, sufficiently serious questions going to the merits of this action, the balance of hardships tip decidedly in the State Farm Companies' favor, and the public interest weighs in favor granting the injunction.

### i. The State Farm Companies Will Suffer Irreparable Harm if the Requested Relief is Not Granted

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Yang v. Kosinski*, 960 F.3d 119, 128 (2d Cir. 2020) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). To establish irreparable harm, the

"[p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB*, 559 F.3d at 118 (alteration in original) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).

"Courts have readily held that irreparable harm occurs where . . . an insurer is required to waste time defending numerous No-Fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action." *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 233 (E.D.N.Y. 2018) (first citing *Gov't Emples. Ins. Co. v. Strutsovskiy,* No. 12-CV-330, 2017 WL 4837584, at *6 (W.D.N.Y. 2017); and then citing *Allstate Ins. Co. v. Elzanaty,* 929 F. Supp. 2d 199, 222); *see also Gov't Emples. Ins. Co. v. Zaitsev*, No. 20-CV-3495, 2021 WL 3173171, at *1 (E.D.N.Y. July 27, 2021), at *2 ("Courts in this Circuit have found . . . that '[i]rreparable harm occur[ed] where "an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action."' (quoting *Gov't Emples. Ins. Co. v. Moshe*, 2020 WL 3503176 (E.D.N.Y) and then collecting cases)).

In *GEICO v. Relief Med., P.C.*, 554 F. Supp. 3d 482 (E.D.N.Y. 2021), the court held that the defendants' prosecution of 39 arbitrations and two civil court lawsuits "prevents a risk of inconsistent judgments and irreparable harm." There, the court noted that "'the likely inconsistencies amongst the prospective arbitral rulings themselves, and between the prospective arbitral rulings and this Court's ultimate disposition of the declaratory judgment and fraud-based claims threaten Plaintiffs with irreparable harm absent the requested relief,' *which is sufficient*." (emphasis added). *See also Elzanaty*, 929 F. Supp. 2d at 222 (finding that

"allowing a large number of proceedings to be heard by a mix of arbitrators, each of whom will likely come to their own independent and potentially contradictory conclusions, will result in harm [to plaintiff] from which it cannot recover"); *Gov't Emples. Ins. Co. v. Cean*, No. 19-CV-2363, 2019 U.S. Dist. LEXIS 203298, at *12 (E.D.N.Y. Nov. 22, 2019) (concluding "that wasting time and resources in arbitrations with awards that might eventually be, at best, inconsistent with judicial rulings and, at worst, essentially ineffective, constitutes irreparable harm"); *State Farm Mut. Auto. Ins. Co., v. Metro Pain Specialists, P.C*, No. 21-CV-5523, 2022 U.S. Dist. LEXIS 91241 (E.D.N.Y. May 19, 2022) (same).

Here, the same concerns are present where there are 96 arbitrations and one civil court lawsuit, along with future arbitrations and suits that will be filed by Eclipse.  Absent an injunction, the State Farm Companies will be saddled with expensive, time-consuming, piecemeal litigation of claims that will likely lead to inconsistent results, when those problems could be avoided by addressing the issues in this unitary forum.  The arbitrations are held pursuant to "simplified procedures." N.Y. Ins. Law § 5106.  Each arbitration could get assigned to a different arbitrator and each arbitrator handles many arbitrations filed by different providers per day, each of which typically only last around fifteen minutes.  There is typically no ability to conduct discovery or to issue subpoenas. *See Mun*, 751 F.3d at 99 ("New York's arbitration process for no-fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible. Discovery is limited or non-existent.").  The arbitration hearings are typically conducted without witnesses and with a brief argument from each side. There will be inconsistent arbitral rulings, along with inconsistent rulings with this Court's ultimate decision, and therefore the State Farm Companies will be threatened with irreparable harm absent the requested relief.

  **ii. The State Farm Companies Have Shown a Likelihood of Success on the Merits or Sufficiently Serious Questions Going to the Merits to Make Them Fair Grounds for Litigation**

  "The 'serious questions' standard permits a district court to grant a preliminary injunction … where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Spanski Enters., Inc. v. Telewizja Polska S.A.*, 832 F. App'x 723, 724 (2d Cir. 2020) (quoting *Citigroup Glob. Mkts., Inc.*, 598 F.3d at 35). "The value of an approach encompassing the serious questions standard 'lies in its flexibility in the face of varying factual scenarios and the greater uncertainties inherent at the outset of particularly complex litigation.'" *Beynin*, 2021 WL 1146051, at *6 (quoting *Citigroup Glob. Mkts., Inc.*, 598 F.3d at 35). District courts in this Circuit have generally found that "[l]ikelihood of success is not the focus at the early stages of a case [involving an alleged scheme to defraud an insurer of assigned no-fault benefits] because any likelihood of success inquiry would be premature." *Relief Med., P.C.*, 554 F. Supp. 3d at 498 (alterations in original) (quoting *Gov't Emples. Ins. Co. v. Zaitsev,* 2021 WL 3173171, at *1 (E.D.N.Y. July 27, 2021)); *see Gov't Emples. Ins. Co. v. Landow*, No. CV-1440, WL 939717, at *12 (E.D.N.Y. Mar. 29 2022) (same); *Gov't Emples. Ins. Co. v. Advanced Comprehensive Lab'y, LLC*, 2020 WL 7042648, at *5 (E.D.N.Y. Dec. 1, 2020) (same); *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013) (same). "Instead, [district courts] look to whether there is a serious question going to the merits to make them a fair ground for trial." *Relief Med., P.C.*, 554 F. Supp. 3d at 498; *see also Zilberman*, 2021 WL 1146086, at *2 (applying the "serious question" standard in no-fault proceeding); *Advanced Comprehensive Lab'y, LLC*, 2020 WL 7042648, at *5 (E.D.N.Y. Dec. 1, 2020) (same); *Wellmart RX, Inc.*, 435 F. Supp. 3d at 453-55 (same); *Parisien*, 352 F. Supp. 3d at 234 (same).

Pursuant to the No-Fault laws, healthcare providers that seek to collect No-Fault benefits from New York automobile insurers must be in compliance with all applicable New York licensing laws and must be owned and controlled by licensed health care providers. *Mayzenberg*, 2018 WL 6031156, at *7 (quoting *Gov't Emples. Ins. Co. v. Badia*, No. 13-CV-1720, 2015 WL 1258218, at *9 (E.D.N.Y. 2015)); *see also Gov't Emples. Ins. Co v. Jacques*, No. 14 Civ. 5299, 2017 U.S. Dist. LEXIS 20915, at *5 (E.D.N.Y. Feb. 13, 2017) ("To be eligible for reimbursement payments under the no-fault law, a provider of healthcare services must comply with applicable licensing requirements." (citing 11 N.Y. Comp. Codes R. & Regs. § 65-3.16(a)(12)).

Additionally, in *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 320 (2005), the New York Court of Appeals made clear that healthcare providers that fail to comply with licensing requirements are ineligible to collect No-Fault Benefits, and that insurers *may look beyond a facially-valid license to determine whether there was a failure to abide by state and local law*. (emphasis added). In *Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 2019 N.Y. Slip Op. 04643 (2019) the New York Court of Appeals reiterated that only licensed physicians may practice medicine in New York because of the concern that unlicensed physicians are "not bound by ethical rules that govern the quality of case delivered by a physician to a patient." *See also Arthur Ave. Med. Servs., P.C. v. GEICO Ins. Co.*, 148 N.Y.S.3d 356, 361 (Civ. Ct. 2021) ("[A medical] corporation may not share professional service fees with third parties, such as referral fees." (citing 8 N.Y. Comp. Codes R. & Regs. § 29.1(B)(4))). "If a medical professional corporation engages in . . . unprofessional conduct, it is rendered ineligible for a requested no-fault reimbursement by virtue of 11 [N.Y. Comp. Codes R. & Regs.] § 65-3.16(a)(12)." "New York law [also] provides that defendants may be held liable for medically unnecessary services under New York's [no-fault] insurance laws." *Advanced Comprehensive Lab 'y, LLC*, 2020 WL 7042648, at *7 (E.D.N.Y. Dec.

1, 2020) (citing *Long Island Radiology v. Allstate Ins. Co.*, 830 N.Y.S.2d 192, 194 (App. Div. 2007)). "[A] complaint alone can be sufficient to grant an injunction, [and] [t]his is particularly true where . . . the complaint comprehensively details regulatory violations, unnecessary medical services, and unlawful referrals." *Moshe*, 2020 WL 3503176, at *2 (collecting cases).

Because of the troubling concerns described above, including the compelling evidence that indicates that Eclipse is not truly owned and controlled by Baldassare, the State Farm Companies requested that Eclipse provide documents and information as required by the No-Fault law and the insurance policies at issue.  Instead of providing the requested information as required by the insurance policies and the New York No-Fault laws, Eclipse objected and refused to comply. Because Eclipse failed to comply with these verification requests, its bills are not compensable. *See St. Vincent's Hosp. of Richmond v. American Tr. Ins. Co.*, 299 A.D.2d 338, 340 [2002] ["(a)n insurer is not obligated to pay or deny a claim until it has received verification of all relevant information requested"]; *see also Central Suffolk Hosp. v. New York Cent. Mut. Fire Ins. Co.*, 24 A.D.3d 492, 493 [2d Dept 2005].

Here, as in *GEICO v. Relief Med., P.C.*, 554 F. Supp. 3d 482, *State Farm Mut. Auto. Ins. Co., v. Metro Pain Specialists, P.C.*, No. 21-CV-5523, 2022 U.S. Dist. LEXIS 91241 (E.D.N.Y May 19, 2022), and the other cases that have addressed this issue, the State Farm Companies have shown a serious question as to whether Eclipse is eligible to receive reimbursement for no-fault benefits. *Id.* ("the Court finds that Plaintiffs have shown a serious question as to whether the Mayzenberg Defendants are eligible to receive reimbursement for no-fault benefits.").

### iii. The Balance of Hardships, and the Public Interest, Support Enjoining Eclipse

Under the third prong, a court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Yang*, 960 F.3d at 135 (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7 at 24). If there are "sufficiently serious questions going to the merits of its claims to make them fair ground for litigation," courts inquire into whether there is "a balance of the hardships tipping decidedly in favor of the moving party." *Really Good Stuff LLC v. BAP Invs., L.C.*, 813 F. App'x 39, 43 (2d Cir. 2020) (quoting *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)).

In *GEICO v. Relief Med., P.C.*, 554 F. Supp. 3d 482, the Court determined that a "stay of thirty-nine AAA arbitrations seeking to collect more than $74,000 and future arbitrations and lawsuits addressing similar claims, will save the parties time and resources and promote judicial efficiency." *Id.* at 503-540 (citing *Beynin*, 2021 WL 1146051 (agreeing "with prior decisions in this [d]istrict … that consolidation promotes efficiency in cases like this"; *Gov't Emples. Ins. Co. v. Cean*, No. 19-CV-2363, 2019 U.S. Dist LEXIS 203298, at *14 (E.D.N.Y. Nov. 22, 2019) ("[G]ranting the stay and injunction will actually save all parties time and resources.  Rather than adjudicating hundreds of individual claims in a piecemeal fashion, all claims can be efficiently and effectively dealt with in a single declaratory judgment action.").

It should be noted that Eclipse is entitled to interest if it prevails in this action.  *See Elzanaty*, 929 F. Supp. 2d at 222 (noting that the defendant will "benefit from the stay if it ultimately prevails in this matter, because it will be entitled to the collection of interest").  Accordingly, Eclipse would not suffer any hardships as it would recover on all balances owed with interest should it win this lawsuit.

Here, a stay of the pending AAA arbitrations and future arbitrations and lawsuits addressing the same claims will save the parties time and resources and promote judicial efficiency. *See Gov't Emples. Ins. Co. v. Strut*, No. 19-CV-728V, 2019 U.S. Dist. LEXIS 205801, at *34-5 (stating that "[j]udicial economy tips the balance of those equities decidedly in [the plaintiff's] favor" where the plaintiff would otherwise "have to make payments on claims with serious questions about consistency" (citing *Strutsovskiy*, 2017 WL 4837584, at *7)); *Mayzenberg*, 2018 WL 6031156, at *7 ("[I]t is obviously more efficient and beneficial for [the defendants] if all of their claims are resolved in one action, rather than in hundreds of different proceedings.").  Like *GEICO v. Relief Med., P.C.* and the numerous recent similar cases, this Court should find that the balance of hardships tips decidedly in Plaintiffs' favor. *GEICO v. Relief Med., P.C.*, 554 F. Supp., 3d at 504 ("the Court finds that the balance of hardships tips decidedly in Plaintiffs' favor.").

In analyzing the public interest prong, a court must consider "the public consequences in employing the extraordinary remedy of injunction," *Yang*, 960 F.3d at 135-36 (quoting *Winter*, 555 U.S. at 24), and ensure that the proposed injunction "does not cause harm to the public interest," *SEC v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012) (per curiam). There is no indication that granting an injunction would harm the public interest. *See Beynin*, 2021 WL 1146051, at *10 (noting that "preventing fraud of the sort alleged [in violation of New York's no-fault laws] is in the public interest" (citing *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456)); *Gov't Emples. Ins. Co. v. Strut*, No. 19-cv-728, 2020 WL 1820500, at *3 n.8 (W.D.N.Y. Apr. 9, 2020) (finding that the public interest factor in a preliminary injunction and stay as to no-fault proceedings was neutral).

Here, a stay will not harm the public interest. Because there are serious questions going to the merits of the case, Plaintiffs would suffer irreparable harm absent a stay, the balance of hardships tip decidedly in Plaintiffs' favor, and there is no indication of public harm as a result of a stay, this Court should the motion to stay all pending arbitrations and to enjoin all future arbitrations and state court proceedings.

**C. Security for an Injunction is Not Necessary or Required Here**

"[I]t has been held proper for the court to require no bond where there has been no proof of likelihood of harm." *GEICO v. Relief Med., P.C.*, 554 F. Supp. 3d at 505 (quoting *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996). "A district court in its discretion may deny a bond altogether if there is 'no proof of likelihood of harm' to the non-movant." *Golden Krust Patties, Inc., v. Bullock*, 957 F. Supp. 186, 202 (E.D.N.Y. 2013).

Here, no bond should be required because there is no likelihood of harm to Eclipse in the event the injunction was wrongly issued. The State Farm Companies have the ability to pay Eclipse's claims, plus any interest owed, should Eclipse ultimately prevail. In similar circumstances, courts in this district have not required insurers to post bond before enjoining arbitrations and future actions. *See GEICO v. Relief Med., P.C.*, 554 F. Supp. 3d at 505-506. Accordingly, no security should be required.

**IV.   CONCLUSION**

For the forgoing reasons, the State Farm Companies respectfully request that this Court issue an order:

1. Staying until resolution of the instant litigation all arbitrations pending before the American Arbitration Association between Eclipse and the State Farm Companies; and

2.  Enjoining Eclipse until the resolution of this instant litigation from commencing any new arbitrations or state court lawsuits against the State Farm Companies.

Dated: August 2, 2023

GOLDBERG, MILLER & RUBIN P.C.

By: _____

Matthew Moroney
GOLDBERG, MILLER & RUBIN P.C.
1501 Broadway, Suite 715
New York, NY 10036
Telephone: (267) 514-3494
mmoroney@gmrlawfirm.com

*Attorneys for Plaintiffs State Farm Mutual
Automobile Insurance Company, State Farm
Indemnity Company, State Farm Guaranty
Insurance Company, and State Farm Fire
and Casualty Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby attest that, for any Defendant who has not appeared or been personally served with a summons and complaint, I have caused a copy of Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Injunction and Stay, and all accompanying motion papers, to be placed in the custody of a process server, who will attempt service on those Defendants. Furthermore, I have caused copies of Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Injunction and Stay, and all accompanying motion papers, to be placed in the United States Mail addressed to the last known address of any Defendant who has not appeared in this action, but who has been personally served with a summons and complaint.

By: _____
          Matthew Moroney
          Attorneys for Plaintiffs