# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM INDEMNITY COMPANY, STATE FARM GUARANTY INSURANCE COMPANY, and STATE FARM FIRE AND CASUALTY COMPANY | Civil Action No: 1:23-cv-3124-ENV-RMI |
| Plaintiffs, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |
| -against- | |
| ECLIPSE MEDICAL IMAGING, P.C. | |
| Defendants. | |

---

Goldberg, Miller and Rubin P.C.

Matthew Moroney, Esq.
Goldberg, Miller and Rubin P.C.
1501 Broadway, Suite 715
New York, NY 10036

*Attorney for Plaintiff State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company, and State Farm Fire and Casualty Company*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT....……………………………………………………………… 1

RELEVANT FACTS…..………………………………………………………………………... 2

    I.   Pertinent Procedural History………..………………………………………………….. 2

    II. The State Farm Companies' Allegations against Eclipse ………………..…………….. 2

ARGUMENT ………………………………………………………………………………......8

    I.   Standard of Review …………………………………………………………………….8

    II.  Eclipse Violated the No-Fault Regulations in Refusing to Provide Verification……........9

    III. The State Farm Companies are Entitled to a Declaratory Judgment…………………... 12

CONCLUSION ……………………………………………………………………………..... 13

# **TABLE OF AUTHORTIES**

**Cases**

*Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*,
 128 N.E.3d 153 (2019)……………………………………………………………….11

*Bravado Int'l Grp. Merch. Servs.,Inc. v. Ninna, Inc.*,
 655 F. Supp. 2d 177 (E.D.N.Y. 2009)……….…………………………..………….. 8

*Cardinal Chem. Co. v. Morton Int'l,Inc.*,
 508 U.S. 83, 95 (1993)……………………………..………………………….12

*City of New York v. Mickalis Pawn Shop, LLC*,
 645 F.3d 114, 137 (2d Cir. 2011)…………………………………………………….9

*Cont'l Ins. Co. v. Huff Enters*.
 2009 U.S. Dist. LEXIS 104126 (E.D.N.Y. 2011)…………..……………………………..9

*E.R. Squibb & Sons, Inc. v. Lloyd's & Co.*,
 241 F.3d 154, 177 (2d Cir. 2001)………….....................……………………………12

*Finkel v. Romanowicz*,
 577 F.3d 79 (2d Cir. 2009)…..……………………………………………………..9

*Gov't Emp. Ins. Co. v. Active Care Med. Supply Corp.*,
 No. 12 CV 5632, 2015 WL 7281630 (E.D.N.Y. Nov. 16, 2015)………………...……….13

*Greyhound Exhibit Group, Inc. v. E.L. U.L. Realty Corp.*,
 973 F.2d 155 (2d Cir. 1992)……………...…………………………………………….8

*Md. Cas. Co. v. Rosen*,

    445 F.2d 1012 (2d Cir. 1971)……………………….…………………………………………….12

*NAP, Inc. v. Shuttletex, Inc.*,

    112 F. Supp.2d 369 (S.D.N.Y. 2000)………………………………….…………….12, 13

*Olin Corp. v. Consol. Aluminum Corp.*,

    5 F.3d 10, 17 (2d Cir. 1993) …………………………………………………………………….12

*Orion Pictures Corp. v. Showtime Networks, Inc.*,

    4 F.3d 1095(2d Cir. 1993)……………………………………………………………………….12

*Trs. Of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*,

    2007 WL 3124612 (E.D.N.Y. 2007)………………………………………...…………9

*S&S Mach. Corp. v. Wuhan Heavy Duty Mach. Tool Group Co.*,

    2012 U.S. Dist. LEXIS 38608 (E.D.N.Y. 2012)……………………………… …………….9

*State Farm Mut. Auto. Ins. Co. v. Jamaica Wellness Med., P.C.*,

    16 CV 4948, 2019 WL 3330240,  (E.D.N.Y. May 31, 2019)………………………...……..13


*State Farm Mut. Auto. Ins. Co. v. Mallela*,

    4 N.Y.3d 313 (2005)………………………………….……………………………………….11

*Universal Acupuncture Pain Services v. State Farm Mut. Auto Ins. Co.*,

    196 F. Supp. 2d 378, 385 (S.D.N.Y. 2002)……………………………………………….13

**Statutes & Regulations**

28 U.S.C. § 2201………………………………………..………………………………….12

F.R.C.P. 55 ................................................................................................................ 8, 9

11 N.Y. Comp. Codes R. & Regs. § 65-1.1 ……………………...………...……………..1, 9, 10

11 N.Y. Comp. Codes R. & Regs. § 65-3.11 ................................................................................ 2

11 N.Y. Comp. Codes R. & Regs. § 65-3.16……………………………………………………..10

11 N.Y. Comp. Codes R. & Regs. § 65-3.5 ……………………………………………….………10

**PRELIMINARY STATEMENT**

Plaintiffs, State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company, and State Farm Fire and Casualty Company ("the State Farm Companies") submit this memorandum of law in support of their entry of a default judgment against Defendant, Eclipse Medical Imaging, P.C. ("Eclipse"). In this action, the State Farm Companies seek a declaration that they are not legally obligated to pay bills submitted by Eclipse for highly questionable diagnostic testing services allegedly rendered to their insureds under New York's No-Fault Laws and accompanying regulation 11 N.Y.C.R.R 65-1.1, et seq. Eclipse's refusal to provide verification responses constitutes a material breach of the No-Fault Laws and accompanying regulations under which the claims have been made and, as such, relieves the State Farm Companies from any obligation to pay Defendant on any of the claims at issue in this action.

This action was filed on April 25, 2023. Eclipse was served on May 8, 2023. To date, Eclipse has not answered the Complaint and the time to answer has expired, nor has an attorney entered his/her appearance on behalf of Eclipse. The Court entered a Certificate of Default on June 15, 2023. As is set forth more fully below, Eclipse has willfully refused to provide pertinent information requested by the State Farm Companies in order to assess whether Eclipse was controlled by a layperson, which breaches a condition of coverage. Accordingly, this Court should grant a default judgment in favor of the State Farm Companies declaring that they are not obligated to pay the claims submitted by Eclipse that are referenced in the complaint.

## RELEVANT FACTS

I.    **Pertinent Procedural History**

True and correct copies of the Summons and Complaint (the "Complaint") were served on Eclipse and the proofs of service were subsequently filed with the Court via ECF on June 7, 2023. See Complaint annexed as **Exhibit "A"** and proof of service annexed as **Exhibit "B"**. See also accompanying Declaration of Gwendolyn Harrison ("Harrison Decl.") and Declaration of Matthew Moroney ("Moroney Decl.") annexed as **Exhibit "G" and Exhibit "I"**. Due to Eclipse's failure to appear in this action, the Clerk of the Court, on the State Farm Companies' application, entered a certificate of default on June 15, 2023. See **Exhibit "C".**

II.    **The State Farm Companies' Allegations against Eclipse**

The facts relating to the claims asserted and relief sought by the State Farm Companies in this action are set forth more fully in the Complaint, as well as the Harrison Decl., the Moroney Decl., the Expert Report of Ms. Flanagan, and the transcript of Baldassare that accompany this memorandum of law. The State Farm Companies respectfully refer the Court to those materials for the full details of Eclipse's non-compensable claims and the State Farm Companies' claim handling.

Briefly, the State Farm Companies seek a declaration that they are not required to reimburse Eclipse for the No-Fault medical claims submitted by Eclipse that are referenced in the Complaint on the grounds that Eclipse willfully refused to provide verification as required by New York law that was necessary to evaluate its claims. See Complaint at ¶ 1.

Eclipse is a New York professional service corporation. According to its bills, Eclipse claims that its owner is Jack Baldassare, M.D. ("Baldassare"). *Id.* at ¶ 3. Eclipse's principal place of business is located at 651 Coney Island Avenue, Brooklyn, New York. *Id.* At all

relevant times, Eclipse submitted claims and bills to the State Farm Companies for highly questionable magnetic resonance imaging test ("MRIs"), computerized tomography tests ("CTs"), X-rays, and other testing services that were purportedly administered to individuals who were involved in motor vehicle accidents. *Id.* According to Eclipse's bills, Baldassare interprets the diagnostic studies that are billed by Eclipse and that Baldassare performs these services from his residence in Fort Lee, New Jersey. *Id.*

The State Farm Companies conducted an investigation into the claims submitted by Eclipse. This review included a survey of the records of numerous patients and investigating the appropriateness and legitimacy of the billed for services. *Id.* at ¶ 23. Based on this investigation, serious questions as to the appropriateness, necessity, and legitimacy of the services were identified, which justified the need for additional verification. *Id.* at ¶ 24. These serious questions include a concern whether Baldassare truly owns and controls Eclipse or if Eclipse is/was owned or controlled by laypersons in violation of New York law. *Id.*

Independent of the State Farm Companies' findings, they learned that Eclipse and Baldassare have also been sued by other insurance companies. *Id.* at ¶ 25. In 2021, GEICO filed a lawsuit in the United States District Court, Eastern District, under Docket Number 1:21-cv-01074 ("GEICO lawsuit"). *Id.* In that action, it is alleged that Eclipse was submitting bills for unnecessary radiological services. *Id.* The Complaint further alleged that Baldassare sold or lent the use of his name and professional license to a non-medical layperson, Robert Maksumov ("Robert Maks"). *Id.* It was further alleged that Robert Maks maintained control over Eclipse through a series of financial and kickback arrangements. *Id.*

Also in 2021, Allstate Insurance Company filed a lawsuit in the United States District Court, Eastern District, under Docket Number 1:21-cv-00420-LDH-VMS ("Allstate lawsuit"). *Id.*

at ¶ 26.  In that action, it is alleged that although Baldassare was the listed owner of Eclipse, Eclipse was actually owned, operated, and controlled by laypersons, such as Robert Maks and his spouse Yelena Maks who benefited from a substantial volume of medically unnecessary healthcare tests and services.  *Id.*

In addition to these concerns of whether Eclipse is truly owned and controlled by a licensed physician, there are also serious questions regarding whether all the testing billed by Eclipse was actually ordered by a physician and whether the testing was medical necessary. *Id.*  at ¶ 27.  To illustrate, although Eclipse produced records indicating that an Arkam Rehman, M.D. ("Dr. Rehman") ordered diagnostic testing conducted by Eclipse, Dr. Rehman executed an affidavit in which he averred that he did not prescribe nor authorize the prescription of testing reportedly provided by Eclipse.  *Id.*  Dr. Rehman further averred that his name and credentials were utilized by unknown individuals as part of scheme to prescribe testing and other services.  See **Exhibit "D"** for the affidavit of Arkam Rehman, M.D. *Id.*  Notably, Dr. Rehman is the listed physician on many claims that have been submitted by Eclipse to the State Farm Companies.  *Id.*  In the Allstate lawsuit, it is alleged that other medical providers also conspired to order medically unnecessary testing to be conducted by Eclipse as well.  *Id.*

Because of these troubling issues, the State Farm Companies requested that Eclipse appear for an examination under oath ("EUO") as part of the verification process.  *Id.* at ¶ 28.  Baldassare appeared for an EUO on behalf of Eclipse.  *Id.* at ¶ 28.  As to the start-up of Eclipse, Baldassare testified that a stranger by the name of Robert Maks informed him there was an vacant radiology business with MRI, CT, and X-ray equipment and that the "people who ran it had left". *Id.* at ¶ 29.  The former radiology business was Kensington Radiology Group, P.C. ("Kensington Radiology").  *Id.*  As alleged in the GEICO lawsuit, toward the end of 2016, the lay owners became

concerned that their unlawful ownership and control of Kensington Radiology was being exposed and saw the "writing on the wall." *Id.* In an attempt to continue the fraudulent scheme, Kensington Radiology was replaced by Eclipse. *Id.* As alleged in the GEICO lawsuit, the paper owners of Kensington Radiology were replaced by Baldassare, who had acted as a reading radiologist for Kensington Radiology. *Id.* As alleged in the GEICO lawsuit, in exchange for compensation, Baldassare agreed to falsely represent that he was the owner of Eclipse. *Id.*

During the EUO, although he admitted he worked for Kensington Radiology, Baldassare claimed that he somehow did not know who owned the business for which he worked. *Id.* at ¶ 30. Additionally, when Robert Maks presented him with the opportunity of the empty radiology practice, Baldassare claimed that he did not know that Kensington Radiology was the entity that vacated the location. *Id.;* See **Exhibit "E"** for pages 19-21 of testimony of Baldassare. Baldassare further testified that Robert Maks presented him with a turnkey operation with equipment and staff (e.g., management, technicians, and billing staff). *Id.* Baldassare continued to serve as the reading radiologist, doing so from his residence in New Jersey. *Id.* at ¶ 31. Baldassare did not pay any of the start-up costs for Eclipse. *Id.;* See **Exhibit "E"** for pages 21-26 of testimony of Baldassare.

Baldassare does not have any involvement in generating business, and at best, has had limited involvement in operating the business. *Id.* at ¶ 32. Baldassare does not appear involved in supervising employees, dealing with day-to-day operations of the business, dealing with marketing and referral sources, billing, revenue, accounts receivable, collections, or hiring collections counsel and these activities are controlled by Robert Maks. *Id.* Rather, Baldassare's involvement appears limited to purportedly interpreting radiology studies from his residence in New Jersey. *Id.* Additionally, during the EUO, Baldassare testified that he was the only person that signed checks for Eclipse's bank account but it appears that a rubberstamp with Baldassare's

signature was used to sign/endorse most of the checks produced to date. *Id.;* See **Exhibit "E"** for pages 70-71 of testimony of Baldassare.

After the EUO, Baldassare submitted an affidavit where he changed the answers to numerous questions. *Id.* at ¶ 33. For example, during the EUO, Baldassare testified that Eclipse signed a lease but, in the affidavit, which was submitted at a later date, Baldassare changed this response to read, "I never signed any written agreement." *Id.* Considering Baldassare provided an incorrect answer at the EUO to a question an owner should know about his/her business, the later affidavit only reinforces the concern that Baldassare may not own and operate Eclipse. *Id.*

Because Baldassare's testimony provided during the EUO failed to resolve the objective concerns noted above and only raised additional concerns, it was necessary for Eclipse to provide documents and information, which were needed for the State Farm Companies to properly verify the submitted bills and claims. *Id.* at ¶ 34. Eclipse objected to many of these requests and refused to provide these documents. *Id.*

As an illustrative example of how these documents are relevant and necessary, at the EUO, Baldassare testified that Eclipse possessed documentation demonstrating that it owned the radiological equipment, including MRI, CT, and X-ray equipment/machines utilized by Eclipse. *Id.* at ¶ 35; See **Exhibit "E"** for page 31 of testimony of Baldassare. The concern is that Eclipse does not actually own the equipment, which is quite expensive such as MRI machines and computers. As noted above, Eclipse replaced Kensington Radiology at the location using the same radiology equipment and, if Eclipse and/or Baldassare do not own the equipment, then there is nothing preventing Robert Maks simply replacing Eclipse and Baldassare at the location like Kensington Radiology was previously replaced. *Id.* It appears that Robert Maks may own the equipment, along with controlling the staff. Robert Maks also obtains Eclipse's work, e.g.,

purported referrals from physicians for diagnostic testing, which would mean that Baldassare does not really own anything as Robert Maks can freely replace him like any other employee and continue the business (just like the switch from Kensington Radiology to Eclipse).

It should also be noted that Kirsten Flanagan, who is a certified public accountant, a certified fraud examiner, and practices as a forensic accountant for Marcum LLP, issued an expert report. As per Ms. Flanagan, "[b]ased on my review of the documents provided to State Farm and made available to me to date, as well as the examination under oath and the affidavit of Dr. Baldassare, I have identified various indications to suggest that Dr. Baldassare may not, in fact, own and control Eclipse." As outlined in Ms. Flanagan's report, Baldassare does not have any involvement in generating business for Eclipse. Baldassare does not appear involved in supervising employees, dealing with day-to-day operations of the business, dealing with marketing and referral sources, billing, revenue, accounts receivable, collections, or hiring collections counsel. These activities are controlled by Robert Maks. Rather, Baldassare's involvement appears limited to purportedly interpreting radiology studies from his residence in New Jersey. See expert report of Ms. Flanagan annexed as **Exhibit "F".**

Accordingly, the State Farm Companies sought documents that Baldassare and Eclipse claimed existed on the ownership of the equipment. See Complaint at ¶ 35. However, in response to the State Farm Companies' request for written records to document same, Eclipse responded that there are no written records evidencing Eclipse's ownership of this equipment. *Id.*

Additionally, in order to assess these concerns regarding whether Baldassare truly owns and controls Eclipse, the State Farm Companies requested Eclipse to provide its bank records, along with bookkeeping records and financial statements, as well as copies of all payments to

Robert and Yelena Maks from January 1, 2019, to present. *Id.* at ¶ 36. In spite of this, Eclipse has refused to provide these records. *Id.*

Among the other documents that Eclipse failed to produce are (i) copies of lease agreements, in their entirety, from January 2017 to present; (ii) copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through present; (iii) copies of all payments to Robert and Yelena Maks from January 1, 2019 to present; (iv) tax returns for tax years 2018 and 2021, and (v) copies of all recordings reflecting compensation, including salary and bonuses, paid to Baldassare. *Id.* at ¶ 37.

Absent the production of these documents, the State Farm Companies were unable to determine if Eclipse was properly incorporated and eligible to receive No-Fault benefits and duly denied the claims for failure to provide the requested documentary verification. *Id.* at ¶ 38. Faced with Eclipse likely filing of scores of small arbitrations or small Civil Court actions on these claims, the State Farm Companies initiated the instant action seeking to efficiently adjudicate this proper claim handling. *Id.* at ¶¶ 45-52.

## ARGUMENT

**I.     Standard of Review**

Rule 55(a) of the Federal Rules of Civil Procedure provides that the Clerk of the Court "must" enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Where, as here, the plaintiff's claim is not for a sum certain, the party seeking the default judgment must apply to the Court. *See* Fed. R. Civ. P. 55(b). Once default is established, "a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability." *Bravado Int'l Grp.*

*Merch. Servs.,Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing *Greyhound Exhibit Group, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

However, an entry of default alone is not sufficient to establish liability, "since a party in default does not admit mere conclusions of law." *Trs. Of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, 2007 WL 3124612 at *3 (E.D.N.Y. 2007). The court must determine whether the allegations in the complaint establish liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79 (2d Cir. 2009). The movant bears the burden of demonstrating that the unchallenged facts and all reasonable inferences drawn from the evidence establish each defendant's liability on each asserted cause of action. See *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).

The Court may also consider matters outside of the complaint in determining a defaulting defendant's liability and whether default is appropriate See Fed. R. Civ. P. 55(b)(2); *S&S Mach. Corp. v. Wuhan Heavy Duty Mach. Tool Group Co.*, 2012 U.S. Dist. LEXIS 38608 at *20-22 (E.D.N.Y. 2012), adopted by 2012 U.S. Dist. LEXIS 38605; *Cont'l Ins. Co. v. Huff Enters.*, 2009 U.S. Dist. LEXIS 104126 at *13-16 (E.D.N.Y. 2011). Accordingly, in evaluating this application for default, the Court may consider, among other things, the Harrison Decl., the Moroney Decl., the Expert Report of Ms. Flanagan, and the transcript of Baldassare, submitted herewith.

**II.      Eclipse Violated the No-Fault Regulations in Refusing to Provide Verification**

The State Farm Companies assert two causes of action seeking declaration that they is not required to pay certain No-Fault claims submitted by Eclipse because Eclipse failed to provide verification as required by the No-Fault regulations. The No-Fault regulations obligate healthcare providers, which seek payment of No-Fault Benefits, to provide insurers with additional verification in order to establish proof of their claims. The prescribed No-Fault policy endorsement

set forth in 11 N.Y.C.R.R. § 65-1.1 includes a specific section entitled "Conditions," which states in part, that "upon request by the Company, the eligible injured person or that person's assignee . . . shall (d) provide any other pertinent information that may assist the Company in determining the amount that is payable."

The prescribed No-Fault policy endorsement set forth in 11 N.Y.C.R.R. § 65-1.1 also states that "[n]o action shall lie against the Company, unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage." The proof of claim requirement in the No-Fault regulation, 11 N.Y.C.R.R. § 65-3.5(c) states that, provided the request for verification is made within 15 business days of receipt of claim under 11 N.Y.C.R.R. § 65-3.5(b), an "insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested." Partial responses to verification by a medical provider are insufficient to satisfy this obligation. *St. Barnabas v. Government Ins.*, 55 Misc.3d 785 (Sup. Ct. Nassau Co. 2017).

Moreover, effective April 2013, 11 N.Y.C.R.R. § 65-3.5(o) states in relevant part that "[a]n applicant from whom verification is requested shall, within 120 calendar days from the date of the initial request for verification, submit all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply. The insurer shall advise the applicant in the verification request that the insurer may deny the claim if the applicant does not provide within 120 calendar days from the date of the initial request either all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply."

In this case, the State Farm Companies required documentary verification to determine whether Eclipse was properly incorporated. Pursuant to the No-Fault regulation 11 N.Y.C.R.R.

65-3.16(a)(12), healthcare providers that seek to collect No-Fault benefits from New York automobile insurers must be in compliance with all applicable New York licensing laws and must be owned and controlled by licensed healthcare providers. In *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 320 (2005), the New York Court of Appeals made clear that healthcare providers that fail to comply with licensing requirements are ineligible to collect No-Fault Benefits, and that insurers may look beyond a facially-valid license to determine whether there was a failure to abide by state and local law. In *Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 128 N.E.3d 153 (2019), the New York Court of Appeals reiterated that only licensed physicians may practice medicine in New York because of the concern that unlicensed physicians are "not bound by ethical rules that govern the quality of case delivered by a physician to a patient."

In determining control, an insurer must determine that laypersons "exhibited the attributes of ownership, particularly that they exercised dominion and control over the corporation and its assets, and that they shared risks, expenses[,] and interest in the profits and los[s]es of the corporation." *Id.* (Affirming this trial court jury instruction). Insurers have made this assessment using a forensic accountant to determine if the financial documents such as general ledgers, tax returns, and expense allocations are consistent with layperson control of the professional corporation. *Id.*

In this case, the State Farm Companies reasonably sought this same information to make the same assessment of Eclipse. Indeed, prior to seeking information from Eclipse in the verification process, the State Farm Companies conducted an investigation into the claims submitted by Eclipse, which included a survey of the records of numerous patients and investigating the appropriateness and legitimacy of the billed-for services. These concerns, coupled with prior actions in which other insurers found Eclipse to be fraudulently incorporated,

and Baldassare's EUO testimony that indicated that he exercised little control over Eclipse and had little-to-no financial stake in starting Eclipse, justified the need for the additional verification sought. Because the State Farm Companies have demonstrated a reasonable basis for their requests and Eclipse does not contest failing to provide the verification, the State Farm Companies are entitled to a default judgment on their complaint.

### III.  The State Farm Companies are Entitled to a Declaratory Judgment

Having determined that Eclipse violated the No-Fault regulations in failing to provide verification, the State Farm Companies request a declaratory judgment relieving them from any obligation to pay Eclipse's claims referenced in the complaint. A party seeking a declaratory judgment from a district court must show the existence of an "actual case or controversy." *Cardinal Chem. Co. v. Morton Int'l,Inc.*, 508 U.S. 83, 95 (1993); 28 U.S.C. § 2201(a). An "actual controversy" is "real and substantial . . . admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (internal citations omitted).

Declaratory relief is appropriate where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings. *See Md. Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971); *E.R. Squibb & Sons, Inc. v. Lloyd's & Co.*, 241 F.3d 154, 177 (2d Cir. 2001). A court has broad discretion to decide whether to render a declaratory judgment. *See Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095, 1100 (2d Cir. 1993).

In deciding whether a plaintiff has stated a claim for declaratory relief, a federal court applies the state substantive law of the forum in which it sits. *See NAP, Inc. v. Shuttletex, Inc.*, 112 F. Supp.2d 369, 372 (S.D.N.Y. 2000); *see also Universal Acupuncture Pain Services v. State Farm Mut. Auto Ins. Co.*, 196 F. Supp. 2d 378, 385 (S.D.N.Y. 2002).

Here, the Complaint clearly establishes the existence of an actual case in controversy, as Eclipse has asserted over $300,000 in claims from the State Farm Companies and a declaratory judgment would resolve this dispute and avoid scores of piecemeal arbitrations and Civil Court actions that would require repetitive costly litigation on a small scale. Courts in this district have granted declaratory relief in numerous cases where insurers have sought to resolve larger coverage issues in a single action. See, e.g., *State Farm Mut. Auto. Ins. Co. v. Jamaica Wellness Med., P.C.*, 16 CV 4948, 2019 WL 3330240, at *7 (E.D.N.Y. May 31, 2019), report and recommendation adopted, 2019 WL 2723548 (E.D.N.Y. July 1, 2019); *Gov't Emp. Ins. Co. v. Active Care Med. Supply Corp.*, No. 12 CV 5632, 2015 WL 7281630 (E.D.N.Y. Nov. 16, 2015).

## CONCLUSION

The State Farm Companies have demonstrated that they reasonably requested verification of Eclipse and that Eclipse failed to provide the requested documents, as required by the No-Fault regulations. Additionally, the State Farm Companies have demonstrated, as a matter of law, that their requests were reasonable and necessary and that Eclipse's refusal to provide these documents prevent the State Farm Companies from assessing its claims. For the foregoing reasons, the State Farm Companies respectfully request that this Court issue an order:

1. Granting a default judgment default against Eclipse on the Complaint.

2. Issuing a declaration that Eclipse has no right to receive payment for the claims submitted to the State Farm Companies and listed in the Complaint in accordance with the proposed judgment annexed as **Exhibit "H"**.

Dated: August 2, 2023

                                              GOLDBERG, MILLER & RUBIN P.C.

By: _____
                                              Matthew Moroney
                                              GOLDBERG, MILLER & RUBIN P.C.
                                              1501 Broadway, Suite 715
                                              New York, NY 10036
                                              Telephone: (267) 514-3494
                                              mmoroney@gmrlawfirm.com

                                              *Attorneys for Plaintiffs State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company, and State Farm Fire and Casualty Company*

**CERTIFICATE OF SERVICE**

      I hereby attest that, for any Defendant who has not appeared or been personally served with a summons and complaint, I have caused a copy of Plaintiffs' Memorandum of Law in Support of Motion for Default Judgment, and all accompanying motion papers, to be placed in the custody of a process server, who will attempt service on those Defendants. Furthermore, I have caused copies of Plaintiffs' Memorandum of Law in Support of Motion for Default Judgment, and all accompanying motion papers, to be placed in the United States Mail addressed to the last known address of any Defendant who has not appeared in this action, but who has been personally served with a summons and complaint.

By: _____
Matthew Moroney
Attorneys for Plaintiffs