UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, STATE FARM INDEMNITY COMPANY,
STATE FARM GUARANTY INSURANCE COMPANY,
and STATE FARM FIRE AND CASUALTY COMPANY

                Plaintiffs,

          -against-

ECLIPSE MEDICAL IMAGING, P.C.

                Defendant.
------------------------------------------------------------------------x

**MEMORANDUM & ORDER**
1:23-CV-3124 (OEM) (RML)

**ORELIA E. MERCHANT, United States District Judge:**

Plaintiffs State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company, State Farm Guaranty, Insurance Company, and State Farm Fire and Casualty Company (collectively, "Plaintiffs" or "State Farm") seek a declaratory judgment that defendant Eclipse Medical Imaging, P.C. ("Defendant "or "Eclipse") has no right to receive payment for any of the claims submitted to State Farm for services billed  pursuant to N.Y. Ins. Law § 5101 *et seq.* (hereinafter New York's "No Fault" insurance laws). *See* Complaint ("Compl."), ECF 1, ¶¶ 51-52.

Now before the Court is State Farm's motion to stay all pending arbitrations—of which there are least 211 before the American Arbitration Association ("AAA")—brought against them by Eclipse for payment.  State Farm also seeks a preliminary injunction prospectively barring Eclipse from commencing any new arbitrations before the AAA as well as any new lawsuits against them in state court.  Eclipse opposes this motion.  For the reasons that follow, State Farm's motion for preliminary injunction and to stay all pending arbitrations is **GRANTED.**

1

# BACKGROUND[1]

This type of No Fault insurance case, and the relief sought at this procedural posture, has become familiar to courts in this District.[2]   As several courts in this District have already provided fulsome reviews of New York's statutory No Fault insurance scheme, [3] the Court will recite only those relevant parts required to resolve the instant motion.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 221-22 (E.D.N.Y. 2018); *Gov't Emps. Ins. Co. v. Tolmasov*, 602 F. Supp. 3d 380, 383-84 (E.D.N.Y. 2022).

## A.  New York's No Fault Insurance Scheme

State Farm is an insurance carrier that underwrites and issues automobile insurance coverage in New York.  Compl. ¶¶ 1-2, 6.  To have the privilege of conducting such business, New York's statutory No Fault Scheme requires State Farm to provide coverage directly to its insureds for "basic economic loss" of up to $50,000 arising out of motor vehicle injuries, including, *inter alia*, "necessary" medical expenses.  *See* N.Y. Ins. Law § 5102; *State Farm Mut. Auto. Ins. Co. v. Herschel Kotkes, M.D., P.C.*, No. 22-CV-03611-NRM-RER, 2023 WL 4532460, at *1 (E.D.N.Y. July 13, 2023); Compl.  ¶¶ 6-8.  The animating policy behind the No Fault scheme was to "create a simple, efficient system that would provide prompt compensation to accident victims without

---

[1] The following background is taken from State Farm's complaint, and other submissions made in connection with the instant motion and are taken as true for the purposes of this motion only.

[2] *See, e.g., Gov't Emples. Ins. Co. v. Relief Med.*, P.C., 554 F. Supp. 3d 482*; State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*, No. 21-CV-5523 (MKB), 2022 WL 1606523 (E.D.N.Y. May 20, 2022); *Gov't Employees Ins. Co. v. Tolmasov*, 602 F. Supp. 3d 380; *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802, 2018 WL 6031156, at *7 (E.D.N.Y. Nov. 16, 2018).

[3] The full name of the statutory scheme as enacted is the "Comprehensive Motor Vehicle Insurance Reparations Act." N.Y. Ins. Law § 5101.  *See* N.Y. Ins. Law §§ 5101 *et seq*  The statutes are also enforced through a comprehensive regulatory scheme.  *See* 11 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") §§ 65, *et seq.*  However, keeping in parlance with its sister courts in this District, the Court shall refer to the laws and regulation promulgated pursuant to the scheme, collectively as the "No Fault Scheme."

regard to fault, and in that way reduce costs for both courts and insureds." *State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 502 (2d Cir.) (subsequent procedural history omitted).

By default, any payment of No Fault benefits goes to the "first party," *i.e.*, the insured. However, "an insured may also assign his or her benefits 'directly to providers of health care services' so that the provider may receive direct payment from the insurer" so long as certain preconditions are met. *Tolmasov*, 602 F. Supp. 3d at 383 (quoting 11 N.Y.C.R.R. § 65-3.11(b)). Such is the case here. *See* Compl. ¶ 9 ("[State Farm] received assignments for the claims and bills at issue in this lawsuit."). Once a claim for benefits is received, State Farm must verify the claim and then pay or deny the claim within 30 days of verification using the proper form.[4]  *See* N.Y. Ins. Law § 5106(a); 11 N.Y.C.R.R. § 65-3.8(a), (c) (the "30 day rule"); *id.* at § 65-3.5 (outlining claims procedure); *State Farm Mut. Auto. Ins. Co. v. Robert Mallela*, 4 N.Y.3d 313, 319 (N.Y. 2005) (citation omitted) ("Regulations require the carriers to make prompt decisions on claims once the provider has furnished adequate factual support"). Here, State Farm denied all of Eclipse's claims that are the subject of this motion. Compl. ¶ 43.

The No Fault scheme contains various provisions that balance both the insurer's interest in avoiding payment on fraudulent or unnecessary claims and the insured's "basic" interest in "prompt and fair payment." 11 N.Y.C.R.R. § 65-3.2. The No Fault Scheme provides State Farm (and all other automobile insurers in New York) with certain procedural safeguards to assist it in verifying claims for reimbursement. Among other things, State Farm "is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was

---

[4] Additionally, "[a]ll overdue mandatory and additional personal injury protection benefits due an applicant or assignee shall bear interest at a rate of two percent per month, calculated on a pro-rata basis using a 30-day month. When payment is made on an overdue claim, any interest calculated to be due in an amount exceeding $5 shall be paid to the applicant or the applicant's assignee without demand therefor." 11 NYCRR § 65-3.9(a).

requested," 11 N.Y.C.R.R. § 65-3.5(c), and may conduct an examination under oath ("EOU") of "any person named" by State Farm.  *Id.* at (e); *see id.* § 65-1.1(a), (d) (setting out mandatory personal injury protection endorsement containing EOU for all insurance policies issued in New York).

The No Fault Scheme also provides medical providers standing in the shoes of the insureds with certain mechanisms to promote prompt payment from insurers like State Farm for necessary services rendered.  This includes the choice to "bring a civil collection action in state court to recover overdue No-Fault benefits" or "to seek arbitration [before the AAA] of their claims for No-Fault benefits."[5]  *Tolmasov*, 602 F. Supp. 3d at 383-84.  *See* N.Y. Ins. L. § 5106(b); 11 N.Y.C.R.R. § 65-1.1(a), (d).  *See also* 11 N.Y.C.R.R. § 65-4.5 (outlining arbitration procedure). Eclipse has taken advantage of these mechanisms.  At the time of filing of this action Eclipse had filed 96 arbitrations and one state court lawsuit against State Farm seeking payment of bills amounting to over $298,000.00.  Affidavit of Valerie Williams ("Williams Aff."), ECF 12, ¶ 4; Compl. ¶ 50.  *See* Ex. 1 to Williams Aff., ECF 12-1 (spreadsheet of all pending arbitrations); Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Injunction and Stay, ECF 13 ("Plaintiffs' Memo"), at 15 ("Eclipse is currently prosecuting one civil court lawsuit[.]"). However, as of the date of this opinion the Court is aware that Eclipse has filed another 115 arbitrations.  *See* Ex. A to Plaintiffs' Reply Memorandum of Law ("Plaintiffs' Reply"), ECF 23-1, ¶ 4 ("Eclipse has filed approximately 115 more arbitrations against" State Farm since August 3, 2023).  It is these pending arbitration proceedings that State Farm wishes to stay as well as to shield itself from litigating in the future.

---

[5] "By statute, the New York Department of Financial Services Superintendent has designated AAA as the body responsible for administering the No-Fault arbitration process."  *Tolmasov*, 602 F. Supp. 3d at 384 (citing 11 N.Y.C.R.R. § 65-4.2(a)(2).

**B.  State Farm's Allegations Against Eclipse**

In this action, State Farm seeks a declaration that it does not have to pay Eclipse the outstanding $298,000.00 on the grounds that Eclipse failed to satisfactorily verify to State Farm the claims submitted to State Farm pursuant to Eclipse's obligations under the No Fault Scheme. Compl. ¶¶ 1, 46-48; 50-52.  State Farm alleges and seeks a court ruling that "[b]ecause Eclipse failed to provide necessary information to properly verify the claims it submitted, Eclipse failed to meet a condition precedent to coverage under the insurance contracts and violated its obligations under the No-Fault Laws, and therefore, the claims are not compensable." *Id.* ¶ 1.

State Farm's underlying basis for seeking further verification and the gravamen of its complaint is that Eclipse's owner, Jack Baldassare, M.D. ("Baldassare"), is only nominally the owner of Eclipse.  *See* Compl. ¶¶ 10-15, 24.  Instead, State Farm alleges that it is actually Robert Maksumov ("Maks"), an unlicensed layperson and former office manager, who controls and operates Eclipse.  *See* Compl. ¶¶ 25, 29-32, 35.   State Farm asserts that Baldassare is merely a "physician straw owner" and Eclipse is actually "secretly own[ed] and controlled" by Maks to "engage in th[e] practice [of] bill[ing] for unnecessary and fraudulent services[.]"  Plaintiffs' Memo at 5.

In support of these allegations, State Farm alleges further that: (1) State Farm—prior to seeking additional verification from Eclipse—conducted it own "investigation into the claims submitted by Eclipse" which included "a survey of the records of numerous patients and investigating the appropriateness and legitimacy of the billed for service";[6] (2) Baldassare and Eclipse have been sued previously by both GEICO and Allstate insurers and the complaints in

---

[6] Compl. ¶¶ 23-24.

those actions reference Maks as an alleged fraudulent "straw owner" of radiological operations;[7]

(3) Baldassare has only "limited involvement in operating" the business, which amounts to reading

radiographical studies from home in New Jersey;[8] (4) Eclipse is itself a "mere continuation" of a

prior radiological practice, Kensington Radiology Group, P.C. ("Kensington"), which itself was

alleged to be a front operated by Maks, who is also as a named defendant alleged the GEICO

Action;[9]  (5) Baldassare's testified at his EOU in the present action that Maks "informed him there

was an empty radiology business" (which was in fact Kensington) and Maks presented Kensington

to him as "a turnkey operation with equipment and staff";[10] (6) that Baldassare further feigned

ignorance at the EUO that Eclipse was taking over the Kensington practice as he had admitted to

previously working for Kensington;[11] (7) Baldassare paid no start-up costs to begin Eclipse;[12] (8)

Baldassare gave inconsistent answers between the EUO and later representations as to whether he

signed a lease on behalf of Eclipse.[13]

    Additionally, State Farm alleges that Eclipse submitted claims and bills to the State Farm

"for highly questionable magnetic resonance imaging test ('MRIs'), computerized tomography

tests ('CTs'), X-rays, and other testing services that were purportedly administered to individuals

who were involved in motor vehicle accidents."  Compl. ¶ 3.  *See id.* ¶ 27 ("[T]here are also serious

---

[7] Compl. ¶¶ 25-26; Plaintiffs' Memo at 6. *See Government Employees Insurance Company, et al. v. Eclipse Medical Imaging, P.C. et al.*, 1:21-cv-1074 (BMC) (E.D.N.Y. March 1, 2021) (the "*GEICO Action*"), ECF 1 ¶¶ 86-106; *Allstate Insurance Company, et al. v. Salehin, et al.*, 1:21-cv-1074 (LDH) (VMS) (E.D.N.Y. Jan. 26, 2021) (the "*Allstate Action*"), ECF 1 ¶¶ 3, 442-48, 564-77.  These complaints were also appended to State Farm's motion.  *See also Toiny LLC v. Gill*, No. 18-CV-40 (NGG) (VMS), 2022 WL 4118520, at *4 n.1 (E.D.N.Y. Sept. 9, 2022) ("A court may take judicial notice of the status of other lawsuits in other courts and the substance of court filings.").
[8] State Farm alleges that while Baldassare is indeed, on paper, the owner of Eclipse and interprets radiology studies from his home in New Jersey, he in fact "does not have any involvement in generating business, and at best, has had limited involvement in operating the business." Compl ¶¶ 3, 31-32; Plaintiffs' Memo at 8.  Further, "Baldassare does not appear involved in supervising employees, dealing with day-to-day operations of the business, dealing with marketing and referral sources, billing, revenue, accounts receivable, collections, or hiring collections counsel."  *Id.*
[9] Compl. ¶ 29.  *See GEICO Action*, ECF 1 ¶¶ 86-106.
[10] Compl. ¶ 31.
[11] Compl. ¶¶ 29-30.
[12] Compl. ¶ 31.
[13] Compl. ¶ 33.

questions regarding whether all the testing billed by Eclipse was actually ordered by a physician and whether the testing was medical necessary.").  In support of these allegations, State Farm alleges that:

> [A]lthough Eclipse produced records indicating that an Arkam Rehman, M.D. ("Dr. Rehman") ordered diagnostic testing conducted by Eclipse, Dr. Rehman executed an affidavit in which he averred that he did not prescribe nor authorize the prescription of testing reportedly provided by Eclipse. Dr. Rehman further averred that his name and credentials were utilized by unknown individuals as part of scheme to prescribe testing and other services.  Dr. Rehman is the listed physician on many claims that have been submitted by Eclipse to the State Farm Companies.

Compl. ¶ 27 (internal citation omitted).  *See* Affidavit of Arkam Rehman, M.D.,("Rehman Aff."), ECF 1-5, ¶¶ 68-70 (providing examples of allegedly fraudulent prescriptions provided by Eclipse).

State Farm explains that the foregoing information raised enough "red flags" to justify State Farm's further requests for verification, namely the production of a variety of documentary evidence that is "relevant and necessary" to determine whether Eclipse is actually owned and controlled by a licensed physician, to wit Baldassare.[14]  Compl.  ¶¶ 34-38.  Further, State Farm alleges that it timely requested additional documentation, which Eclipse failed to produce.  Thus, State Farm denied all the claims that are subject to this litigation.  Compl. ¶¶ 39-44.  *See* Ex. A to Compl., ECF 1-4 (listing all claims submitted that State Farm believes should not be paid); Ex. 1 to Williams Aff. (spreadsheet of all pending arbitrations).  These denials spurred Eclipse to initiate arbitrations as permitted under the No Fault Scheme as well as a single state court collection action to recoup their reimbursements.  Now, hoping to stop these actions on a preliminary basis and vindicate their belief that they should not have to pay Eclipse, State Farm brought this declaratory

---

[14] Specifically, State Farm sought five categories of documents from Eclipse: (i) copies of lease agreements, in their entirety, from January 2017 to present; (ii) copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through present; (iii) copies of all payments to Robert and Yelena Maks from January 1, 2019 to present; (iv) tax returns for tax years 2018 and 2021, and (v) copies of all recordings reflecting compensation, including salary and bonuses, paid to Baldassare.  Compl.  ¶ 37.

action on April 25, 2023, *see* Compl., and filed their motion for a stay and preliminary injunction on August 3, 2023.  ECF 10.  On September 9, 2023, Eclipse filed and opposition, ECF 22, and on September 21, 2023, State Farm submitted it's reply.  ECF 23.  The motion is now ripe for adjudication.[15]

## STANDARD OF REVIEW

State Farm's request to stay the pending arbitrations and stay prospective arbitrations and state court lawsuits are both analyzed under the preliminary injunction standard.  *See Tolmasov,* 602 F. Supp. 3d at 386 (collecting cases).

To justify a preliminary injunction, "a movant must demonstrate (1) irreparable harm absent injunctive relief; [and] (2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.'"  *Metro. Taxicab Bd. of Trade v. City of New York,* 615 F.3d 152, 156 (2d Cir. 2010) (quoting *Almontaser v. New York City Dep't of Educ.,* 519 F.3d 505, 508 (2d Cir. 2008)).  Additionally, the Supreme Court and the Second Circuit have instructed courts to assess the extent that "the injunction serves the public interest."  *SAM Party of New York v. Kosinski*, 987 F.3d 267, 273–74 (2d Cir. 2021) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

## DISCUSSION

Upon reviewing State Farm's submission, this Court joins the substantial number of courts in this District that have awarded preliminary injunctions to insurers under similar circumstances to those alleged here.  *See Kotkes*, 2023 WL 4532460, at *8.

---

[15] Initially, State Farm moved for a default judgment against Eclipse.  Motion for Default Judgment, ECF 17. However, Eclipse has since made an appearance and the default motion has been withdrawn. Letter dated Oct. 10, 2024, ECF 24.

### A.  Irreparable Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered."  *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 221 (E.D.N.Y. 2013) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)) (cleaned up).  "To establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Id.* (quoting *New York Pathological & X–Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir.1975)).  "And, irreparable harm must be shown to be actual and imminent, not remote or speculative." *Id.*

"Courts have readily held that irreparable harm occurs where, as here, an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action."  *Parisien*, 352 F. Supp. 3d at 233. Additionally, Courts also recognize that the "risk of inconsistent rulings" in underlying proceedings may also suffice a showing of "irreparable harm." *Kotkes*, 2023 WL 4532460, at *8 (citing *Elzanaty*, 929 F. Supp. 2d at 22); *see Allstate Ins. Co. v. Metro Pain Specialists Pro. Corp.*, No. 21-CV-5586 (DG) (RER), 2022 WL 2467571, at *5 (E.D.N.Y. June 2, 2022) ("Numerous courts in this district . . . have found irreparable harm based on the risk of inconsistent judgments and uncoverable costs detailed by" the insurer.) (collecting further cases finding the same).

Like the insurers in many of these cases, State Farm also argues here that "irreparable harm is present" because "there are [211] arbitrations and one civil court lawsuit, along with future arbitrations and suits that will be filed by Eclipse."  Plaintiffs' Memo at 17.  "Absent an injunction,"

State Farm asserts, it "will be saddled with expensive, time-consuming, piecemeal litigation of claims that will likely lead to inconsistent results, when those problems could be avoided by addressing the issues in this unitary forum." *Id.* Moreover, State Farm cites several analogous cases in this District in which the Court granted injunctive relief and concluded that the insurer had established irreparable harm where it faced, *e.g.*, the "prosecution of 39 arbitrations and two civil court lawsuit." *Id.* at 16 (citing *GEICO v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 502-03 (E.D.N.Y. 2021).

Eclipse proffers that such allegations are not specific enough as to which judgments may be inconsistent and are mere "innuendo." ECF 22-5 ("Eclipse MoL") at 6. In its reply, State Farm avers that Eclipse "has filed approximately 115 more arbitrations" since the commencement of this action. Plaintiffs' Reply Memorandum of Law, ECF 23 ("Plaintiffs' Reply"), at 3; *see id.* at Ex. A (ECF 13-1) (declaration listing the arbitrations). According to State Farm, a greater number of pending separate actions generally "increase[s] the risk" of inconsistent rulings and forces State Farm to expend litigation resources to defend each individual action. *Id.* at 3-4.

While the number of ongoing actions brought against an insurer is not in itself dispositive of whether the irreparable harm prong is satisfied, "the Court agrees that State Farm has demonstrated irreparable harm." *Parisien*, 352 F. Supp. 3d at 233; *accord Relief Med., P.C.*, 554 F. Supp. 3d at 503. State Farm faces at least the possibility of an inconsistent judgment in the one pending state court action (which cannot be stayed), *see* Plaintiffs' Memo at 15, which would be *res judicata* in this matter. *Kotkes*, 2023 WL 4532460, at *13 (E.D.N.Y. July 13, 2023) ("Any judgment in the state no-fault proceedings will be *res judicata* for purposes of [a federal] action. Therefore, if State Farm suffers an adverse judgment in state court, this court will be bound to adhere to that decision, even though the state court may not have been able to consider what seems to be the heart of plaintiff's case.") (quoting *Parisien*, 352 F. Supp. 3d at 229)). Further, State Farm's underlying claim for declaratory judgement here is also faced with the probability that,

among the 211 ongoing No Fault arbitrations it must now defend, it could face at least one inconsistent award or ruling which "may have a similarly problematic impact on a future declaratory judgment." *Kotkes*, 2023 WL 4532460, at *9 (citation omitted).  Additionally, like Judge Morrison and other courts, this Court recognizes this risk may be heightened given the "expedited" and limited availability of ordinary discovery in both No Fault arbitrations and state proceedings which may sacrifice the opportunity for fully litigating issues at the altar of expediency and efficiency.  *See, e.g.*, 11 N.Y.C.R.R. 65-45(b) (accepting only a single written submission from each party in special expedited arbitration and a written decision within 10 business days).  *See also Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014) ("New York's arbitration process for no-fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible.").

In sum, the likelihood of irreparable harm posited here by State Farm is entirely analogous to that faced by State Farm in *Kotkes* in which at least 200 parallel proceedings were ongoing.  *See Kotkes*, 2023 WL 4532460, at *9.  Accordingly, and compelled by the wisdom of its sister Courts, this Court does not decide today whether this combination and number of actions alone is sufficient in itself "to demonstrate irreparable harm[,]" rather, "[t]he risk of inconsistent judgments that could effectively render unavailable a significant portion of the relief State Farm seeks is sufficient to demonstrate irreparable harm."[16]

---

[16] Similarly, the Court also disposes of the only two other written points of authority Eclipse believes should sway this Court: (1) the non-precedential summary order in *Allstate Ins. Co. v. Harvey Fam. Chiropractic*, 677 F. App'x 716, 717 (2d Cir. 2017) (summary order), and (2) *Allstate Ins. Co. v. Avetisyan*, 17-CV-04275 (LDH) (RML), 2018 WL 6344249, at*1 (E.D.N.Y. Oct. 30, 2018) (addressing and rejecting the argument Judge Donnelly solely relied on *Harvey* when initially denying insurers a preliminary injunction).  *See* Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction and Stay, ECF 22-5 (Defendant's Opp.) at 6-8.  Like Judge Morrison, who most recently addressed the same arguments, as well as other courts, this Court agrees that neither case "counsel[s] a different result" here.  *Kotkes*, 2023 WL 4532460, at *9-10 (collecting cases finding the same).  As to *Harvey*, the Court also finds the *Harvey*'s paucity of factual background and discussion as to "inconsistent judgments, or of the risk that money damages would not be available if plaintiff ultimately obtained a declaratory judgment" renders it inapt to control in the present case.  *Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 451 (E.D.N.Y. 2020) (rejecting *Harvey*); *accord Kotkes*, 2023 WL 4532460, at *9.  Here, State Farm attempts to shore up *Harvey's* lack of analysis

### B. "Serious Questions" Going to the Merits[17]

"The 'serious questions' standard permits a district court to grant a preliminary injunction . . . where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Spanski Enters., Inc. v. Telewizja Polska S.A.*, 832 F. App'x 723, 724 (2d Cir. 2020) (quoting *Citigroup Glob. Mkt., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) ("*Citigroup*")). The value of the "serious questions" standard "to assessing the merits of a claim at the preliminary injunction stage lies in its flexibility in the

---

or inquiry into the effect of potential inconsistent judgments by providing excerpts the appellant's appellate briefing showing that appellants made a similar argument that was then rejected. However, this does not change the fact that the Circuit panel itself did not provide its explicit *ratio decidendi* for the bare conclusion that "the declaratory relief sought by the plaintiffs [is not] threatened by the other proceedings." *Harvey*, 677 F. App'x at 718. It is a court's reasoning—not conclusory power—that is relevant to measuring a judicial decision's persuasiveness. Lastly, like the court in *Wellmart*, this Court also finds the two summary oral orders cited by Eclipse and issued by Judge Bianco also unavailing. *See* Defendant's Opp. at 7-8 (citing *Allstate Ins. Co. v. Zelefsky*, 13 CV 5830 (JFB)(AKT) (Apr. 2, 2014) (ECF No. 66) and *Allstate Ins. Co. v. E. Island Med. Care, P.C.*, 16 CV 2802 (JFB)(AKT) (June 5, 2017)(ECF No. 106). "Judge Bianco's decisions were summary oral rulings. The court is unable to discern the specific basis for Judge Bianco's conclusion that [the insurer] was not at risk of irreparable harm, and thus, the *Zelefsky* and *Eastern Island* decisions do not color this court's analysis." *Wellmart*, 435 F. Supp. 3d at 452.

[17] The Second Circuit's preliminary injunction standard allows a movant to demonstrate "*either* [1] 'a likelihood of success on the merits,' *or* [2] 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly' in the movant's favor.'" *Parisien*, 352 F. Supp. 3d at 234 (quoting *Jackson Dairy v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)) (italics added). In *Citigroup*, the Second Circuit affirmed the "serious questions" standard's continuing viability in preliminary injunction proceedings. *See* 598 F.3d 35-38. In so doing, it opined that the "serious questions" standard was not a dilution of the "likelihood of success" standard nor a less burdensome alternative because "the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips *decidedly*' in its favor, its overall burden is no lighter than the one it bears under the "likelihood of success" standard. *Id.* at 35 (quoting *Jackson Dairy*, 596 F.2d at 72) (emphasis added). This Court thus joins its sister courts and finds that the "[l]ikelihood of success is not the focus at the early stages of a case such as this"—*i.e.*, an automobile insurance case seeking a declaratory judgment regarding the obligation of No Fault benefits to a medical provider predicated on dubious control and ownership by a licensed physician—"because any likelihood of success inquiry would be premature." *Parisien*, 352 F. Supp. 3d at 234 (quoting *Elzanaty*, 929 F.Supp.2d at 217). "Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial." *Id.* (quoting same). *See Metro Pain Specialists Pro. Corp.*, 2022 WL 2467571, at \*5 (applying the same standard in a No Fault case).

face of varying factual scenarios and the greater uncertainties inherent at the outset of particularly complex litigation." *Citigroup*, 598 F.3d at 35.

As an initial matter, Eclipse maintains that the doctrine of collateral estoppel (issue preclusion) applies here and, as such, eight prior arbitration awards issued in favor of Eclipse should have preclusive effect as to State Farm's ability to demonstrate serious questions going to the merits here. *See* Defendant's Opp. at 9-11; *see id.* at Ex. A. State Farm notes that these eight decisions and awards are only a small amount of the total 211 matters currently in arbitration. Plaintiffs' Reply at 4-5.

"[T]he Court finds that it is premature at this time" to substantively address the issue of collateral estoppel which would be better served at either motion to dismiss or motion for summary judgment. *See Elzanaty,* 916 F. Supp. 2d at 299 (E.D.N.Y. 2013); *State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*, No. CV2007-0051 (ENV) (MDG), 2007 WL 2908205, at *2 (E.D.N.Y. Oct. 4, 2007). At this juncture, the Court's task is to determine whether there is a sufficient showing of potential merit to the underlying legal claims along with irreparable that warrants an injunction to maintain the status quo while litigation progresses. Moreover, Eclipse has failed to show how on the "face of the complaint or . . . the public record" there is sufficient information to determine if collateral estoppel applies.[18] *Accurate Med., P.C.*, 2007 WL 2908205, at *2.

Turning to the merits, New York law and the No Fault regulations prohibit non-physicians from reimbursement of No Fault benefits. *See* 11 N.Y.C.R.R. 65-3.16(a)(12) ("A provider of

---

[18] While Eclipse attaches to its opposition brief copies of eight arbitration awards, *see* Arbitration Awards, Ex. 1 to Defendant's Opp., ECF 22-1, this "does not alleviate the Court's concerns over the suitability of this question at this juncture in the case, which other courts have similarly expressed. Therefore, this portion of the [Defendant's] motion is denied, with leave to reassert this contention when the time is proper and the Court has sufficient information for a substantive determination." *Elzanaty*, 916 F. Supp. 2d at 299 (defendants' attachments of "additional samplings in their reply affidavit of specific arbitration awards where the Defendants were successful" not warranting a review of collateral estoppel even at the motion to dismiss stage).

health care services is not eligible for reimbursement under section 5102(a) (1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement ...");  *accord Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802, 2018 WL 6031156, at *7 (E.D.N.Y. Nov. 16, 2018) ("To be eligible for [No Fault] benefits, a medical services corporation (1) must be *owned by a physician who actually engages in the practice of medicine* through that corporation, N.Y. Bus. Corp. Law § 1508, [and] (2) may not bill for services provided by physicians who are not employees of the corporation, such as independent contractors[.]") (emphasis added).  Further, the New York Court of Appeals has affirmed that fraudulently licensed and fraudulently incorporated medical corporations are "not entitled to reimbursement" under the No Fault laws.  *State Farm Mut. Auto. Ins. Co. v. Robert Mallela*, 4 N.Y.3d 313, 320-22 (N.Y. 2005).  Crucially, in *Mallela*, the Court of Appeals also explicitly held that the No Fault "regulation allowing carriers to withhold reimbursement from fraudulently licensed medical corporations" also permits "carriers [to] look beyond the face of licensing documents to identify willful and material failure to abide by state and local law."  *Id.* at 321.

Unlike many other No Fault cases in this district—including the two State Farm points to—State Farm here does not allege Eclipse of committing outright fraud or giving illegal kickbacks.[19]  Rather, as previewed above, *see supra* Part I.B, State Farm argues that there are "serious questions" going to merits of both (1) whether Eclipse is truly owned and operated by a licensed physician, Baldassare, and (2) "whether all the testing billed by Eclipse was actually ordered by a physician and whether the testing was medical necessary," such that litigating the

---

[19] Specifically, the two cases cited by State Farm additionally allege violations of civil RICO, common law fraud, unjust enrichment and sought not only declaratory relief but also damages.  *See* SF MoL at 6 (citing *Metro Pain Specialists Pro. Corp.*, 2022 WL 2467571, at *1, and *Relief Med., P.C.*, 554 F. Supp. 3d at 482).

further case would be fair.[20]  Compl. ¶¶ 23-28, 48.   If these "troubling concerns" are meritorious, State Farm argues, it is entitled to a declaration that it does not owe Eclipse reimbursement under the No Fault laws.  Plaintiffs' Memo at 20.

As set forth in the complaint and its moving papers, State Farm concedes that Baldassare is the nominal "paper" owner of Eclipse, a fact Baldassare confirmed at his EUO.  Compl ¶ 3; Plaintiffs' Memo at 5 n.2; ECF No. 13-4 ("Baldassare EUO") at pg. 26:18-27:24.   Nonetheless, the complaint also alleges sufficient other facts that may "identify a willful and material failure to abide by state and local law" regarding, at least, whether Eclipse is actually controlled by a licensed physician.  *Mallela*, 4 N.Y.3d at 321.  That is, though the Court "cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, "taking factual allegations taken as true, as well as the other evidence proffered by" State Farm, the "costs outweigh the benefits of not granting the injunction."  *Relief Med., P.C.*, 554 F. Supp. 3d at 498 (quoting *Spanski Enters., Inc.*, 832 F. App'x at 724).  These claims will be borne out and tested in further litigation and discovery.

 Perhaps most relevant here, State Farm's complaint points to two previous No Fault suits brought by different insurers against, *inter alia*, Eclipse (one of which also named Baldassare as a defendant).  Compl. ¶¶ 25-26.  Both complaints in those suits alleged a similar scheme in which Baldassare is not the true owner of a medical practice as required under the law but rather Maks. *Id.  See Geico Action* ¶¶ 2, 21, 64, 92, 98-101; *Allstate Action* ¶¶ 13, 14, 22-23, 285-291, 442-447, 564-577.  *Cf. Relief Med., P.C.*, 554 F. Supp. 3d at 500 ("The Mayzenberg Defendants have been sued for similar claims, which further raises questions about the payments being sound.").

---

[20] As the Court finds there are "serious questions" going to ownership issue, it does not address or opine on the issue of potentially unnecessary medical services provided by Eclipse.

Even setting aside other allegations in litigation not before the Court, State Farm has alleged enough factual matter and adduced other filings in this action to demonstrate that there are serious questions as to whether Baldassare is the true owner of Eclipse, or, at minimum, whether State Farm was entitled to demand further verification from Eclipse for its services.  For example, Baldassare indeed testified at his EUO about Maks offering him a readymade radiology practice—with Maks acting as the billing department and office manager—from what had previously been Kensington, the same radiology practice where Baldassare had previously been employed to read radiological studies.  *See* Baldassare EOU at 14:9-14; 18:1-22:15; 34:10-22; 38:6-16; *see also* Plaintiffs' MoL at 7.   Additionally, as State Farm points out, Baldassare's testified at his EOU that he signed a lease on behalf of Eclipse.  *See* Baldassare EOU at 23:17-21; 27:13-19.  However, State Farm alleges that Baldassare then "changed this response" to the lease question in a later affidavit "to read, 'I never signed any written agreement," and upon State Farm's post-EOU request to review the leases, Eclipse did not produce them.  Compl. ¶¶ 33-34, 37.

Lastly, State Farm has also proffered the opinion of Kirsten L. Flanagan of Marcum LLP who is a Certified Public Accountant ("CPA"), a Certified Fraud Examiner ("CFE"), Certified in Financial Forensics ("CFF") by the American Institute of Certified Public Accountants ("AICPA").[21]   ECF No. 13-5 ("Flanagan Report").  The Flanagan Report avers that Ms. Flanagan has "identified various indications to suggest that Dr. Baldassare may not, in fact, own and control Eclipse."  These "indications" largely mirror the allegations in the complaint.  *See generally id.*  The Flanagan Report concludes that:

> Based on my experience, including 22 years as a forensic accountant and 28 years as a CPA, considering the red flags indicating a lack of ownership and control by Dr. Baldassare, it is my opinion that all documents and information requested by

---

[21] "In deciding a motion for preliminary injunction, a court may consider the entire record, including affidavits and other hearsay evidence." *Sterling v. Deutsche Bank Nat'l Tr. Co. as Trs. for Femit Tr.*, 368 F. Supp. 3d 723, 725 n.2 (S.D.N.Y. 2019).

State Farm are reasonable and necessary to make a proper and objective assessment regarding whether Dr. Baldassare, in fact, owns and financially and operationally controls Eclipse.

*Id.* at 3-4.

At this juncture and given the totality of the allegations in the complaint and other evidence provided, the Court finds that "State Farm has established that there is a serious question going to the merits to make its claims a fair ground for litigation." *Kotkes*, 2023 WL 4532460, at *10. That is, considering the record, "it cannot be said that [State Farm's] request for injunctive relief rests on mere hypotheticals." *Parisien*, 352 F. Supp. 3d at 234.

### C. Balance of Hardships and Public's Interest

As the Court applies the "serious questions going to the merits" standard here, for a preliminary injunction to issue, the Court must also find a "balance of hardships tipping decidedly in [the movant's] favor." *Citigroup*, 598 F.3d at 33 (cleaned up). As to this prong, State Farm advances two arguments.

First, State Farm argues that a stay of the pending AAA arbitrations and future arbitrations and lawsuits addressing the same claims will save the parties time and resources and promote judicial efficiency. While the promotion of judicial efficiency is certainly a laudable goal, the law is concerned with the hardships facing the *movant* that would warrant exercising its equitable powers. That is, it is the district court's duty to "expressly consider" the *movant's* concerns and potential prejudices they might face absent an injunction and then "weigh" those "hardship[s] against those that would be imposed on [the non-movant] in the absence of a preliminary injunction." *Citigroup*, 598 F.3d at 40. Under the relevant inquiry, the Court nonetheless agrees that balance of the hardships tips decidedly in State Farm's favor. State Farm faces over 200 ongoing AAA arbitrations with the potential for discordant outcomes and judgments; Courts in

this district have generally agreed "both parties benefit from the injunction sought here because it relieves them of their obligation to separately litigate the merits of [] individual claims before individual state courts and arbitrators." *Kotkes*, 2023 WL 4532460, at *11.  Further, "all parties will benefit from having the issue of fraudulent incorporation determined in one action." *Metro Pain Specialists Pro. Corp.*, 2022 WL 2467571, at *6 (citation omitted) (collecting cases finding the same).  Second, State Farm points to the fact that, should Eclipse ultimately prevail, it would "recover on all balances owed with interest," which accrues a statutory rate of 2%,[22] limiting the potential prejudice to Eclipse.  Plaintiffs' Memo at 21.

Eclipse counters that if the "Court stays the pending collection actions and enjoins Defendants from filing future actions, it is likely that Eclipse would never receive payment even should it prevail at trial." Defendant's Opp. at 11.  Eclipse's ultimate argument on this point comes down to its fear that if an injunction is granted, the policies held by the relevant State Farm insureds may be exhausted by other claims against the policy, rendering Eclipse unable to recoup payment because (a) State Farm has no further obligation to pay out claims after $50,0000 has been spent and (b) may pay out other claims before a final judgment is rendered here.  Defendant's Opp. at 11-13.  However, this argument both presupposes that State Farm will be victorious *and* is couched in the attenuated fear the same insured will incur enough injury in an automobile to deplete their policy.  While this scenario is certainly imaginable, Eclipse has provided no further corroboration beyond speculation.  Further, there is no indication that, assuming Eclipse was owed for services already rendered, it could not recover money damages through an action based in contract *viz. quantum meruit*.  Balancing the hardships, the Court finds the equities "tip squarely in State Farm's

---

[22] *See* NYCRR § 65–3.9(1)(a) ("All overdue mandatory and additional personal injury protection benefits due an applicant or assignee shall bear interest at a rate of two percent per month, calculated on a pro-rata basis using a 30–day month . . . ").

favor. If the preliminary injunction is granted and State Farm fails to prove its claims, then, at worst, [Eclipse's] recovery of the no-fault benefits to which they are entitled will be delayed" but will come with accrued interest. *Parisien*, 352 F. Supp. 3d at 324.

Lastly, the Court considers the potential effects on the "public's interest" in granting the injunction. *See E.E.O.C. v. KarenKim, Inc.*, 698 F.3d 92, 100 (2d Cir. 2012) ("The factors . . . [that] are pertinent in assessing the propriety of injunctive relief' are 'the balance of equities and consideration of the public interest'") (quoting *Winter*, 555 U.S. at 32). State Farm's states that "[t]here is no indication that granting an injunction would harm the public interest." Plaintiffs' MoL at 22. The Court agrees and Eclipse proffers no argument to the contrary. To issue an injunction here is unlikely to harm or negatively affect the public at large; rather, the injunction sought here stays and enjoins disputes only between two distinct private parties – a single medical practice and the insurer it seeks reimbursement from.[23] Further, as the insureds, which collectively could be considered part of the "public," have already assigned their rights to reimbursement to Eclipse, an injunction here does not affect them as they have already received the services they purportedly needed from Eclipse. If anything, because there are serious questions going to the merits of Eclipse's use of the corporate medical form and potentially unnecessary testing, and

---

[23] Furthermore, the Court observes that "public interest" or "public consequences" factor generally comes into the fore when, naturally, public instrumentalities and functionaries are at play and the requested injunctive relief would might have a negative external or "public" effect. For example, the Supreme Court's decision in *Winter* (cited by State Farm) vacated a preliminary injunction put in place to safeguard marine mammals from Navy's active sonar training. 555 U.S. at 12. The Court took umbrage that the district court and Ninth Circuit had only addressed the public interest in a "cursory fashion." *Id.* at 17. In its own review, the Court concluded that the "public interest" factor certainly tipped "strongly" in the Navy's favor and in the general public's interest in national defense and security, specifically the interest of having well trained sailors who could be prepared to detect and track enemy submarines using active sonar. *Id.* at 24, 26-29. *See e.g.*, *Yang v. Kosinski*, 960 F.3d 119, 136 (2d Cir. 2020) (reviewing propriety of injunction issued in Democratic primaries during the Covid 19 pandemic and noting the "importance of the right to political participation in a primary election and the pivotal role that delegates play within the structure of the Democratic Party"); *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 662 (2d Cir. 2015) (New York's interest in a competitive market for generic Alzheimer's drugs).

because New York has embodied a state interest in preventing abuse through its No Fault Scheme, granting the injunction here ostensibly promotes public interest.  *Cf. Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 424 (2d Cir.2004) ("[G]overnment action taken in furtherance of a regulatory or statutory scheme ... is presumed to be in the public interest"); *Mayzenberg*, 2018 WL 6031156, at *10 ("Preventing fraud on our health care system is also in the public's interest.").

### D.  There Are No Other Bars to Injunctive Relief

State Farm contends that neither the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, nor the Anti Injunction Act ("AIA"), 28 U.S.C. § 2283, bar injunctive relief here citing to relevant and well-settled precedent on these issues in No Fault cases.  *See* Plaintiffs' Memo at 12-15. *Elzanaty*, 929 F. Supp. 2d at 217, 221 (E.D.N.Y. 2013) (No Fault case analyzing FAA and AIA and concluding "the Court finds that it has the power to temporarily stay a pending private arbitration as well as to temporarily enjoin any future private arbitrations"); *Mayzenberg*, No. 17-CV-2802, 2018 WL 6031156, at *8-9 (E.D.N.Y. Nov. 16, 2018) (No Fault case concluding that the court cannot stay pending proceedings under the exceptions to the AIA, "the Anti-Injunction Act does not prevent federal courts from enjoining proceedings in state courts that have not yet been filed");  *Parisien*, 352 F. Supp. 3d at 224-33 (E.D.N.Y. 2018) (devoting two sections of analysis to court's the authority to enjoining pending state proceedings and arbitration) (citing *Mayzenberg*, 2018 WL 6031156, at *3-4); *Relief Med., P.C.*, 554 F. Supp. 3d at 495-97 (E.D.N.Y. 2021) (same). Eclipse does not address these issues at all.  In its own review, the Court finds these decisions thorough and well-reasoned and hereby adopts them.[24]  Accordingly, the Court finds it

---

[24] Additionally, State Farm explicitly concedes that they do not seek to stay the one ongoing state court action, therefore the Anti Injunction act is not implicated.  *See* Plaintiffs' Memo at 15 ("Although Eclipse is currently prosecuting one civil court lawsuit, the State Farm Companies are only seeking to enjoin Eclipse from commencing future No-Fault insurance collection lawsuits against them pending the disposition of the declaratory judgment claim, which renders the Anti-Injunction Act inapplicable.");  28 U.S.C.A. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court  except as . . .").

has the authority to both stay the pending arbitrations and enjoin future arbitration and state court actions. *Relief Med., P.C.*, 554 F. Supp. 3d at 495-97.

### E.  Security is Not Required

Lastly, Rule 65(c) of the Federal Rules of Civil Procedure provides that that "the court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  While Eclipse maintains that a $200,000 bond should be posted, the Court is "is vested with wide discretion in the matter of security." *Relief Med., P.C.*, 554 F. Supp. 3d. at 505 (quoting *Doc.'s Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)).  Because there are serious questions going to the merits, and "a stay is unlikely to prejudice [Eclipse], and the [Eclipse] may readily collect damages from [State Farm], the Court declines to require Plaintiffs to post a bond."  *Id.* (collecting No Fault cases waiving bond requirement).

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion to stay all No-Fault insurance collection arbitrations pending before the American Arbitration Association between State Farm and Eclipse and further enjoins Eclipse from commencing any further no-fault insurance collection arbitrations or state court actions against State Farm, pending the disposition of the declaratory judgment claim.

**SO ORDERED**.

Dated:        November 2, 2023
              Brooklyn, New York

_/s/ Orelia E. Merchant_____
ORELIA E. MERCHANT
United States District Judge