American Arbitration Association
New York No-Fault Arbitration Tribunal

In the Matter of the Arbitration between:

| | | |
|---|---|---|
| Eclipse Medical Imaging PC / Davita Washington (Applicant) | AAA Case No. | 17-22-1279-7940 |
| | Applicant's File No. | 170.154 |
| | Insurer's Claim File No. | 52-25Q8-04P |
| - and - | NAIC No. | 25143 |
| State Farm Fire & Casualty Company (Respondent) | | |

## ARBITRATION AWARD

I, Kathleen Sweeney, the undersigned arbitrator, designated by the American Arbitration Association pursuant to the Rules for New York State No-Fault Arbitration, adopted pursuant to regulations promulgated by the Superintendent of Insurance, having been duly sworn, and having heard the proofs and allegations of the parties make the following **AWARD:**

Injured Person(s) hereinafter referred to as: IP

1. Hearing(s) held on                                  05/02/2023
   Declared closed by the arbitrator on     05/02/2023

   George Malanoukas from Tsirelman Law Firm PLLC participated virtually for the **Applicant**

   Tara Gutman from Goldberg, Miller and Rubin, P.C. participated virtually for the **Respondent**

2. The amount claimed in the Arbitration Request, **$966.54**, was NOT AMENDED at the oral hearing.
   Stipulations WERE NOT made by the parties regarding the issues to be determined.

3. Summary of Issues in Dispute

   Whether the Respondent's denial based on the 120 day rule was proper?

   This arbitration arises out of medical treatment for the IP, a 29 year old female, related to injuries sustained in a motor vehicle accident that occurred on 9/20/21. Applicant seeks reimbursement for an MRI that took place on 9/29/21. Respondent denied the claim based on the 120 day rule regarding outstanding post EUO verification requests.

4. Findings, Conclusions, and Basis Therefor

Applicant has established its prima facie case with proof that it submitted a proper claim, setting forth the fact and the amount charged for the services rendered and that payment of no-fault benefits was overdue (see Insurance Law § 5106 a; Mary Immaculate Hosp. v. Allstate Ins. Co., 5 AD 3d 742, 774 N.Y.S. 2d 564 [2004]; Amaze Med. Supply v. Eagle Ins. Co., 2 Misc. 3d 128A, 784 N.Y.S. 2d 918, 2003 NY Slip Op 51701U [App Term, 2d & 11th Jud Dists]).

In this particular action, there was 1bill. The bill was received on 11/15/21. The Respondent timely requested verification in the form of an EUO and it was finally scheduled and held on 5/26/22. Thereafter the bills were then timely delayed for additional verification as to outstanding items from the EUO. Post EUO verification requests were served within 7 days (on 6/2/22). There was a follow up demand sent on 7/5/22. A denial was issued on 10/5/22. However, there were numerous follow up letters sent and responses received before the denial and even at least one after the denial on 10/19/22. The responses contained strong objections to the materials being requested. The nature of the requests is Mallella based as State Farm has asserted through its SIU investigators affidavit and attorneys brief that State Farm has an ongoing investigation regarding the Applicant which is also supported by an affidavit by another Dr. and a Federal Rico action.

In State Farm Mutual Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 794 N.Y.S.2d 700 (2005), the Court of Appeals confirmed that "carriers may look beyond the face of licensing documents" to identify willful and material failure to abide by State Law. However, the Court was mindful that carriers may turn the investigatory privilege into a vehicle for delay and recalcitrance. The Court stated: "The regulatory scheme, however, does not permit abuse of the truth seeking opportunity that 11 NYCRR § 65-3.16(a)(12) authorizes.

Indeed, the superintendent and regulation themselves provide for agency oversight of the carriers, and demand that carriers delay the payment of claims to pursue investigations solely for good cause (see 11 NYCRR § 65-3.2[c]). In the licensing context, carriers will be unable to show "good cause" unless they can demonstrate behavior tantamount to fraud …"

It has since been held that "[p]ermitting an insurer to obtain written documents such as tax returns, incorporation agreements or leases regarding a potential fraudulent incorporation 'Malella' defense as part of the verification process defeats the stated policy and purpose of the no-fault law and carries with it the potential for abuse." Island Chiropractic Testing, P.C. v. Nationwide Ins. Co., 35 Misc.3d 1235(A), 953 N.Y.S.2d 550 (Dist. Ct. Suffolk Cty., C. Stephen Hackeling, J., June 6, 2012). To minimize this "potential for abuse," it has been held that a showing of 'special circumstances' is required to warrant production of income tax returns and bank statements, etc., in a

verification request. Vista Surgical Supplies, Inc. v. Utica Mutual Ins. Co., 22 Misc.3d 142(A), 880 N.Y.S.2d 876, 2009 WL 754770 (App. Term 2d, 11th & 13 Dists., 3/17/09).

Upon review of the evidence, including the facts disclosed and the applicant's responses to verification requests, the respondent has presented "special circumstances" supporting its need for the documentation requested. Under the circumstances present here, I conclude that Respondent's remaining verification requests do not fly in the face of the no-fault scheme, nor do the requests in this case present a concern for the type of carrier "abuse" of the verification process which the Courts have recognized and attempted to avoid.

However, Respondent's denial cannot be sustained because it fails to acknowledge the September response which was within 120 days. Respondent acknowledged that letter from Applicant and then summarily denied the bills. The Applicant has complied under protest with objections that at face value appear fair. The Applicant is entitled to be paid. This decision is in full disposition of all claims for No-fault benefits presently before this Arbitrator.

5. Optional imposition of administrative costs on Applicant.
   Applicable for arbitration requests filed on and after March 1, 2002.

   I do NOT impose the administrative costs of arbitration to the applicant, in the amount established for the current calendar year by the Designated Organization.

6. **I find as follows with regard to the policy issues before me:**
   ☐ The policy was not in force on the date of the accident
   ☐ The applicant was excluded under policy conditions or exclusions
   ☐ The applicant violated policy conditions, resulting in exclusion from coverage
   ☐ The applicant was not an "eligible injured person"
   ☐ The conditions for MVAIC eligibility were not met
   ☐ The injured person was not a "qualified person" (under the MVAIC)
   ☐ The applicant's injuries didn't arise out of the "use or operation" of a motor vehicle
   ☐ The respondent is not subject to the jurisdiction of the New York No-Fault arbitration forum

Accordingly, the applicant is AWARDED the following:

A.

| Medical | | From/To | Claim Amount | Status |
|---|---|---|---|---|
| | | | | |

| Davita Washington | Eclipse Medical Imaging PC | 09/29/21 - 09/29/21 | $966.54 | Awarded: $966.54 |
|---|---|---|---|---|
| **Total** | | | **$966.54** | **Awarded: $966.54** |

B.  The insurer shall also compute and pay the applicant interest set forth below. 12/22/2022 is the date that interest shall accrue from. This is a relevant date only to the extent set forth below.

Interest runs from the filing date for this case until the date that payment is made at two percent per month, simple interest, on a pro rata basis using a thirty day month.

C.  Attorney's Fees

The insurer shall also pay the applicant for attorney's fees as set forth below

The insurer shall also pay the applicant for attorney's fees as set forth below:

After calculating the sum total of the first-party benefits awarded in this arbitration plus the interest thereon, Respondent shall pay Applicant an attorney's fee equal to 20% of that sum total, subject to a maximum fee of $1,360. See, 11 NYCRR 65-4.6 (d).

D.  The respondent shall also pay the applicant forty dollars ($40) to reimburse the applicant for the fee paid to the Designated Organization, unless the fee was previously returned pursuant to an earlier award.

This award is in full settlement of all no-fault benefit claims submitted to this arbitrator.

State of NY
SS :
County of Nassau

I, Kathleen Sweeney, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my award.

06/01/2023
(Dated)

*Kathleen M Sweeney*

Kathleen Sweeney

## IMPORTANT NOTICE

*This award is payable within 30 calendar days of the date of transmittal of award to parties.*

*This award is final and binding unless modified or vacated by a master arbitrator. Insurance Department Regulation No. 68 (11 NYCRR 65-4.10) contains time limits and grounds upon which this award may be appealed to a master arbitrator. An appeal to a master arbitrator must be made within 21 days after the mailing of this award. All insurers have copies of the regulation. Applicants may obtain a copy from the Insurance Department.*

**ELECTRONIC SIGNATURE**

**Document Name:** Final Award Form
**Unique Modria Document ID:**
353521e22b97f812c5840d0502533534

**Electronically Signed**

Your name: Kathleen Sweeney
Signed on: 06/01/2023 5:35:55 PM

American Arbitration Association
New York No-Fault Arbitration Tribunal

In the Matter of the Arbitration between:

| | | |
|---|---|---|
| Eclipse Medical Imaging PC / Junior Charles (Applicant) | AAA Case No. | 17-22-1279-8187 |
| | Applicant's File No. | 170.144 |
| - and - | Insurer's Claim File No. | 32-12B1-49G |
| | NAIC No. | 25178 |
| State Farm Mutual Automobile Insurance Company (Respondent) | | |

## ARBITRATION AWARD

I, Richard Kokel, the undersigned arbitrator, designated by the American Arbitration Association pursuant to the Rules for New York State No-Fault Arbitration, adopted pursuant to regulations promulgated by the Superintendent of Insurance, having been duly sworn, and having heard the proofs and allegations of the parties make the following **AWARD:**

Injured Person(s) hereinafter referred to as: EIP

1. Hearing(s) held on                                 05/12/2023
   Declared closed by the arbitrator on      05/12/2023

   Gary Tsirelman from Tsirelman Law Firm PLLC participated virtually for the Applicant

   Tara Gutman from Goldberg, Miller and Rubin, P.C. participated virtually for the Respondent

2. The amount claimed in the Arbitration Request, **$2,937.44**, was NOT AMENDED at the oral hearing.
   Stipulations WERE NOT made by the parties regarding the issues to be determined.

3. Summary of Issues in Dispute

   The issues concern the propriety of requests for additional verification to establish proof of claim, and whether or not the Applicant sufficiently responded to the requests.

4. Findings, Conclusions, and Basis Therefor

   The Applicant commenced this proceeding to recover assigned first party No-Fault benefits regarding the cost of MRI studies performed on February 22, 2022, March 4,

2022 and March 14, 2022. The Applicant stated that the services were medically necessary to treat injuries sustained by the EIP, a 42-year-old male, in a September 30, 2020 motor vehicle accident.

The Respondent denied the claim based on their contention that additional verification to establish proof of claim was not supplied within 120 days of their initial request. The language within the denial of claim forms was: *Pursuant to 11 NYCRR 65-3.5(o), Eclipse Medical Imaging PC has failed to submit verification documentation requested on June 2, 2022 and July 5, 2022 for the referenced claims within the prescribed 120 day period, therefore, benefits are denied. Unless otherwise noted, all fees should be in accordance with the medical fee schedule as per the rules and regulations authorized by the State of New York, Department of Insurance, 28 Amendment to Regulation No. 83.*

A review of the evidentiary record reveals that the Applicant established their prima facie entitlement to recover the cost of the services at issue herein. The only issue for determination concerns the 120-day defense.

11 NYCRR 65-3.5(o) states, in part, that: "[A]n applicant from whom verification is requested shall, within 120 calendar days from the date of the initial request for verification, submit all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply…." The Respondent stated that they initially requested additional verification to establish proof of claim on June 2, 2022, and again on July 5, 2022. They argued that the Applicant did not respond to their requests within 120 days of June 2, 2022, and that therefore the claim should be denied.

According to the evidentiary record, the Respondent received the Applicant's billing claim forms and thereafter scheduled an Examination under Oath of the Applicant provider. This Examination was conducted on May 26, 2022, and Dr. Baldassare, M.D. was deposed. He is the owner of the Applicant imaging facility. Subsequent to the completion of the Examination under Oath, the Respondent sent their first post-examination request. Therein, they sought:

*Copies of all records evidencing your ownership of MRI machines, CT scanners/ machines, and x-rays; Copies of payments used for the maintenance, calibration, and inspection of MRI machines, CT scanners/ machines, and x-rays; Copies of all lease agreements from January 2017 to the present; Copies of all rent payments from January 2019 to the present; Copies of all agreements with Kensington Realty; Copies of all payments to Kensington Realty; Copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through the present, including but not limited to quick book records and records reflecting receipts and disbursements; Copies of all bank records, including but not limited to cancelled checks and statements from January 1, 2019 through the present; Copies of payments to car service providers and/or copies of payments for patient transportation to and from the facility; Copies of all payments to Robert Maks from January 1, 2019 to the present; Copies of all payments to Yelena Maks from January 1, 2019 to the present; Copies of transcripts of Eclipse for EUOs*

*taken by GEICO, Allstate and Liberty Mutual; Copies of all records reflecting compensation, including salary and bonuses, paid to Dr. Baldassare; and, Tax returns for tax year 2018, 2019, 2020 and 2021.*

The Applicant, on August 27, 2022 responded to the Respondent's requests. They provided a large number of documents that included: W-2 wage information; tax returns (2019 & 2020 & and a notation that 2021 return was not yet filed); checks regarding rent, maintenance payments, patient transportation; and, the lease for the Applicant's premises. The Applicant also informed the Respondent that some of the requested information did not exist or could not be found. They also objected to some requests as being onerous and/or improper. The Applicant also argued, notwithstanding their response, that the verification requests were untimely as per the requirements of 11 NYCRR 65-3.5.

The Respondent, on September 19, 2022, responded to the Applicant's August 27th response. They stated that the Applicant's partial response was insufficient and that the ongoing requests were reasonable and necessary to assess whether Eclipse is controlled by Dr. Baldassare.

My review of the Respondent's September 19th letter reveals that many of the requests were for information that the Applicant said did not exist or was unable to be located. The Respondent, essentially, is arguing with the Applicant, i.e., disputing the veracity of their response. The other point was that the Applicant refused to provide transcripts of the Examination under Oath taken by Liberty Mutual. This, to the undersigned, appears to be an improper request for a legal document that involves a party (Liberty Mutual) that is not a party to the within arbitration. And in my view, the only reason for obtaining this other transcript, would be for the Respondent to compare Dr. Baldassare's answers line by line with the Examination taken on May 26, 2022. Apparently, the Respondent was investigating the Applicant due to their suspicion that they (the Applicant facility) were controlled by a layperson, i.e., not a medical doctor charged with overseeing patient care and the medical staff as required by New York State law.

I find that the Applicant substantially complied with the Respondent's verification requests. All requests were responded to, but for those that were deemed unnecessary, irrelevant or unduly burdensome. It appears, to the undersigned, that the Respondent was seeking materials that might lead to a 'founded belief' that the Applicant facility was fraudulently incorporated (see State Farm Mutual Auto Ins Co., v. Mallela, et al. (Mallela III), 4 NY 3d 313, 321, 794 N.Y.S. 2d 700 (2005). The record is bereft of any evidence to support such a belief, other than the Respondent's supposition.

Based on the foregoing, the Respondent's defense has not been sustained. The Applicant's claim is thereby awarded.

The above noted decision is based upon my review of the submitted evidence, as well as the oral argument of the representatives present at the hearing. All evidence is contained within the ADR Case management system maintained by the American Arbitration Association, as of the date of the hearing.

5. Optional imposition of administrative costs on Applicant.
   Applicable for arbitration requests filed on and after March 1, 2002.

   I do NOT impose the administrative costs of arbitration to the applicant, in the amount established for the current calendar year by the Designated Organization.

6. **I find as follows with regard to the policy issues before me:**
   ☐ The policy was not in force on the date of the accident
   ☐ The applicant was excluded under policy conditions or exclusions
   ☐ The applicant violated policy conditions, resulting in exclusion from coverage
   ☐ The applicant was not an "eligible injured person"
   ☐ The conditions for MVAIC eligibility were not met
   ☐ The injured person was not a "qualified person" (under the MVAIC)
   ☐ The applicant's injuries didn't arise out of the "use or operation" of a motor vehicle
   ☐ The respondent is not subject to the jurisdiction of the New York No-Fault arbitration forum

Accordingly, the applicant is AWARDED the following:

A.

| Medical | | From/To | Claim Amount | Status |
|---|---|---|---|---|
| **Junior Charles** | **Eclipse Medical Imaging PC** | **02/22/22 - 02/22/22** | **$966.54** | **Awarded: $966.54** |
| **Junior Charles** | **Eclipse Medical Imaging PC** | **03/04/22 - 03/04/22** | **$967.70** | **Awarded: $967.70** |
| **Junior Charles** | **Eclipse Medical Imaging PC** | **03/14/22 - 03/14/22** | **$1,003.20** | **Awarded: $1,003.20** |
| **Total** | | | **$2,937.44** | **Awarded: $2,937.44** |

B. The insurer shall also compute and pay the applicant interest set forth below. 01/05/2023 is the date that interest shall accrue from. This is a relevant date only to the extent set forth below.

   Interest shall be computed from January 5, 2023, the date the request for arbitration was filed with the American Arbitration Association, at a rate of 2% per month, calculated

on a pro rata basis using a 30 day month, and ending with the date of payment of the award subject to the provisions of 11 NYCRR 65-3.9(e).

C. Attorney's Fees

The insurer shall also pay the applicant for attorney's fees as set forth below

An attorney's fee of 20% shall be paid on the sum total of the awarded claim plus interest, subject to a maximum of $1,360 (see 11 NYCRR 65-4.6(d).

D. The respondent shall also pay the applicant forty dollars ($40) to reimburse the applicant for the fee paid to the Designated Organization, unless the fee was previously returned pursuant to an earlier award.

This award is in full settlement of all no-fault benefit claims submitted to this arbitrator.

State of NY
SS :
County of New York

I, Richard Kokel, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my award.

06/11/2023
(Dated)

Richard Kokel

**IMPORTANT NOTICE**

*This award is payable within 30 calendar days of the date of transmittal of award to parties.*

*This award is final and binding unless modified or vacated by a master arbitrator. Insurance Department Regulation No. 68 (11 NYCRR 65-4.10) contains time limits and grounds upon which this award may be appealed to a master arbitrator. An appeal to a master arbitrator must be made within 21 days after the mailing of this award. All insurers have copies of the regulation. Applicants may obtain a copy from the Insurance Department.*

**ELECTRONIC SIGNATURE**

**Document Name:** Final Award Form
**Unique Modria Document ID:**
aca3bf9b68d7f50d7b8a7524242d3f00

**Electronically Signed**

Your name: Richard Kokel
Signed on: 06/11/2023 10:49:00 PM

American Arbitration Association
New York No-Fault Arbitration Tribunal

In the Matter of the Arbitration between:

| | | |
|---|---|---|
| Eclipse Medical Imaging PC (Applicant) | AAA Case No. | 17-22-1279-6674 |
| | Applicant's File No. | 170.171 |
| - and - | Insurer's Claim File No. | 32-21L1-20H |
| State Farm Mutual Automobile Insurance Company (Respondent) | NAIC No. | 25178 |

## ARBITRATION AWARD

I, Maureen Callahan, the undersigned arbitrator, designated by the American Arbitration Association pursuant to the Rules for New York State No-Fault Arbitration, adopted pursuant to regulations promulgated by the Superintendent of Insurance, having been duly sworn, and having heard the proofs and allegations of the parties make the following **AWARD:**

Injured Person(s) hereinafter referred to as: eip

1. Hearing(s) held on               06/26/2023
   Declared closed by the arbitrator on    06/26/2023

   Gary Tsirlman from Tsirelman Law Firm PLLC participated virtually for the Applicant

   Ann Henricksonand him from Goldberg, Miller and Rubin, P.C. participated virtually for the Respondent

2. The amount claimed in the Arbitration Request, **$966.54**, was NOT AMENDED at the oral hearing.
   Stipulations WERE made by the parties regarding the issues to be determined.

   The parties stipulated and agreed that (i) Applicant has met its prima facie burden by submitting evidence that payment of no-fault benefits are overdue, and proof of its claim was mailed to and received by Respondent; (ii) Respondent's denial of the subject claim was timely issued; and (iii) the amount claimed does not exceed the maximum permissible charges under the fee schedule applicable to the disputed services.

3. Summary of Issues in Dispute

   CASE SUMMARY

The accident occurred on 3/10/22. The eligible injured party (EIP) is a 31 year old female. The applicant, an assignee of the eligible injured party, seeks reimbursement for a left shoulder MRI performed on 8/2/21. The claim was denied based upon failure to provide EUO verification. Does the respondent substantiate this denial?

## 4. Findings, Conclusions, and Basis Therefor

The accident occurred on 3/10/22. This matter falls under the First Amendment to Regulation 68D and, as such, only the documents submitted by the Applicant at the time of filing and by the Respondent during the conciliation will be considered. I have reviewed all of the relevant exhibits contained in the electronic file center maintained by the American Arbitration Association. The hearing was held via ZOOM. This decision is rendered upon consideration of the oral arguments made by the parties at the hearing and upon a review of the evidence contained in the case folder as of the date of this hearing.

The applicant seeks reimbursement for a left shoulder MRI performed on 8/2/21.

The records contained in the electronic case folder include a police report. It indicates that the EIP, a 31-year-old female, was in a vehicle involved in an accident on 3/10/22 on Lefferts Blvd. in Queens County. The EIP's vehicle was stopped at a red light when it was rear-ended by another, causing a chain reaction in a three car incident. The EIP had multiple injuries. A left shoulder MRI was performed on 8/2/21. This mri is the subject of this dispute.

A prima facie showing of entitlement to judgment as a matter of law is made out by submitting evidentiary proof that the prescribed statutory billing forms have been mailed and received, and that payment of No-Fault benefits was overdue. LMK Psychological Services, P.C. v. Liberty Mut. Ins. Co., 30 A.D.3d 727, 816 N.Y.S.2d 587 (3d Dept. 2006) (claimant submitted signed return receipt cards); Mary Immaculate Hospital v. Allstate Insurance Co., 5 A.D.3d 742, 774 N.Y.S.2d 564 (2d Dept. 2004).If an insurer presents evidence substantiating a lack of medical necessity defense, the burden shifts to the applicant health services provider to then present its own evidence of medical necessity. West Tremont Med. Diagnostic, P.C. v. Geico Ins. Co., 13 Misc.3d 131(A) (App Term 2d Dept 2006). If the applicant fails to present any evidence to refute respondent's prima facie showing of a lack of medical necessity for post-IME health services, the claim should be denied, as the ultimate burden of proof on the issue of medical necessity lies with the applicant. AJS Chiropractic, P.C. v. Mercury Ins. Co., 22Misc.3d 133(A) (2d Dept 2002). See Insurance Law § 5102; Wagner v. Baird, 208 AD2d 1087 (3d Dept 1994). The burden then becomes respondent's to show otherwise.

No fault benefits are overdue if not paid within 30 calendar days after the insurer receives proof of claim, which shall include verification of all of the relevant information requested pursuant to section 65-3.5. It is well settled than an insurer must pay or deny a claim within thirty days of receiving proof of claim. Insurance Law § 5106 [a]; 11 NYCRR 65-3.8(a). Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274 (1997). An insurer may extend the thirty-day period through the verification procedures set forth in 11 NYCRR 65-3.5. Failure to comply with or extend the thirty-day period results in the preclusion of most defenses, including medical necessity. Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.; Vista Surgical Supplies v. State Farm Mut. Ins. Co., 14 Misc. 3d 135(A) (App Term, 2 and 11 Jud. Dists. 2007). The narrow exceptions to the preclusion rule apply and the to lack of coverage and fraud defenses.

See Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195(1997); Matter of Metro Med. Diagnostics v Eagle Ins. Co., 293 AD2d 751 (2002).

This bill was received in by the carrier on 9/13/21. The respondent chose to verify the claim. Certainly they are entitled to do so. The No-Fault program "stresses the justifying of claims." Nyack Hosp. v. General Motors Acceptance Corp., 8 N.Y.3d 294, 300, 832 N.Y.S.2d 880, 884 (2007). Respondent avers that verification request letter number one was dispatched on 9/23/21, advising that the claim is being delayed pending an examination under oath. This missive clearly states the location of said EUO. However, to see the date and time of the euo, one is directed to an appendix, which could be considered confusing. Respondent asserts the provider was a no-show. The second EUO request letter is dated 10/22/21. It apprises that the EUO will be conducted via zoom on 12/15/21 at 11 AM. However, there are no zoom instructions, no zoom link is provided. The scheduling letters are flawed.

Despite these multiple scheduling flaws, respondent argues that the doctor appear for examination on 5/26/22. Post EUO verification requests were dispatched. They 6/2/22 request letter was sent by respondent. This letter requested things such as: copies of all records evidencing your ownership of MRI machines, CT scanners/ machines, and x-rays; copies of payments used for the maintenance, calibration, and inspection of MRI machines, CT scanners/ machines, and x-rays, copies of all lease agreements from January 2017 to the present; copies of all rent payments from January 2019 to the present; - copies of all agreements with Kensington Realty; copies of all payments to Kensington Realty; copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through the present, including but not limited to quick book records and records reflecting receipts and disbursements; copies of all bank records, including but not limited to cancelled checks and statements from January 1, 2019 through the present; Copies of payments to car service providers and/or copies of payments for patient transportation to and from the facility; copies of all payments to Robert Maks from January 1, 2019 to the present; Copies of all payments to Yelena Maks from January 1, 2019 to the present copies of transcripts of Eclipse for EUOs taken by GEICO, Allstate and Liberty Mutual; copies of all records reflecting compensation, including salary and bonuses, paid to Dr. Baldassare; and Tax returns for tax year 2018, 2019, 2020 and 2021. On 7/5/22 a second verification request was dispatched by respondent asking for the same things.

Applicant asserts they responded at page 152/195 of applicant's submission, applicant's response letter of 8/27/22. Same is arguably responsive. Respondent argues that certain items were still outstanding such as ownership of of radiology equipment, bookkeeping records, etc. Inquiry was made as to why these items were necessary to process this claim for the shoulder MRI. Respondent advises that they were looking into a fraudulent scheme. Applicant argues that Dr. Rehman had nothing to do with the Eclipse, that this is a fishing expedition. He argues that to other arbitrators, arbitrators Sweeney and Kogel in 17 - 22 - 1279 - 2345 and 17 - 22 - 1279 - 8187 respectively, have already addressed this. In these decisions, applicant argues that the arbitrators have found that there was substantial compliance to complete the verification process and everything was provided except for irrelevant material. Applicant argues that "the No-Fault Law and its regulations should be interpreted to promote the expeditious handling of verification requests and prompt claim resolution". The applicant is correct in asserting this proposition. Infinity Health Products, Ltd. v. Eveready Ins. Co., 67 A.D.3d 862, 890 N.Y.S.2d 545 (2d Dept. 2009).

I have listened to the arguments and evaluated the evidence. The respondent's handling of this case, namely the EUO scheduling letters, were initially improper for the logic stated above regarding same. Nonetheless, this claim was denied on 10/5/22 for failure to provide post EUO verification. I find that there has been substantial compliance. This claim ought be paid. Respondent's arguments to the contrary are not persuasive. Award to applicant $966.54.

5. Optional imposition of administrative costs on Applicant.
   Applicable for arbitration requests filed on and after March 1, 2002.

   I do NOT impose the administrative costs of arbitration to the applicant, in the amount established for the current calendar year by the Designated Organization.

6. **I find as follows with regard to the policy issues before me:**
   ☐ The policy was not in force on the date of the accident
   ☐ The applicant was excluded under policy conditions or exclusions
   ☐ The applicant violated policy conditions, resulting in exclusion from coverage
   ☐ The applicant was not an "eligible injured person"
   ☐ The conditions for MVAIC eligibility were not met
   ☐ The injured person was not a "qualified person" (under the MVAIC)
   ☐ The applicant's injuries didn't arise out of the "use or operation" of a motor vehicle
   ☐ The respondent is not subject to the jurisdiction of the New York No-Fault arbitration forum

Accordingly, the applicant is AWARDED the following:

A.

| Medical | | From/To | Claim Amount | Status |
|---------|---|---------|--------------|--------|
|  | **Eclipse Medical Imaging PC** | **08/02/21 - 08/02/21** | **$966.54** | **Awarded: $966.54** |
| **Total** | | | **$966.54** | **Awarded: $966.54** |

B. The insurer shall also compute and pay the applicant interest set forth below. 12/21/2022 is the date that interest shall accrue from. This is a relevant date only to the extent set forth below.

INTEREST: Pursuant to Insurance Law § 5106 (a), interest accrues on overdue no-fault insurance claims at a rate of 2% per month. A claim is overdue when it is not paid within 30 days after a proper demand is made for its payment (Insurance Law § 5106 [a]; 11 NYCRR 65.15 [g]). The Superintendent's regulation tolls the accumulation of interest if the claimant "does not request arbitration or institute a lawsuit within 30 days after receipt of a denial of claim form or payment of benefits calculated pursuant to Insurance Department regulations" (11 NYCRR 65-3.9 [c]). The Superintendent has interpreted this provision to mandate that the accrual of interest is tolled, regardless of whether the particular denial at issue was timely. That interpretation was upheld by the Court of Appeals in LMK Psychological Servs, P.C. v. State

Farm Mut. Auto. Ins. Co., 2009 NY Slip Op 02481 (April 2, 2009). Where no denial of claim is issued in response to a proper demand for payment, the insurer does not benefit from the tolling provision and interest will accrue from the date 30 days after the proper demand for payment is made. Interest that accrues when a denial of claim is not issued within 30 days after the proper demand for payment is made will be tolled upon the issuance of a denial of claim, although such denial is untimely, and the failure to request arbitration or institute a lawsuit within 30 days after receipt of that denial of claim form.

C.  Attorney's Fees

   The insurer shall also pay the applicant for attorney's fees as set forth below

   The insurer shall also pay the applicant for attorney's fees as set forth below ATTORNEY'S FEES: 11 NYCRR 65-4.6 establishes a minimum attorneys' fee and further provides that: For cases filed on or before February 4, 2015, the "attorney's fee shall be limited as follows: 20 percent of the amount of first-party benefits, plus interest thereon, awarded by the . . . court, subject to a maximum of $850" (11 NYCRR 65-4.6 [e]). The October 8, 2003, opinion letter of the Superintendent interpreted that regulation and stated that the minimum amount of attorneys' fees awarded to an assignee health care provider pursuant to Insurance Law § 5106 is "based upon the aggregate amount of payment required to be reimbursed based upon the amount awarded for each bill which had been submitted and denied. The minimum attorney fee . . . is not due and owing for each bill submitted as part of the total amount of the disputed claim sought in the court action" (Ops Gen Counsel NY Ins Dept No. 03-10-04 [Oct. 2003]). For purposes of calculating attorneys' fees, the Superintendent has interpreted a claim to be the total medical expenses claimed in a cause of action pertaining to a single insured, and not each separate medical bill submitted by the provider. The Insurance Department's interpretation of its own regulation was upheld by the Court of Appeals in LMK Psychological Servs, P.C. v. State Farm Mut. Auto. Ins. Co., 2009 NY Slip Op 02481 (April 2, 2009). Attorneys' fees are therefore to be calculated based on the aggregate of all bills for each insured; and Page 4/6 D. For cases filed after February 4, 2015, the attorney's fee is subject to the provisions promulgated by the Department of Financial Services in the Sixth Amendment to 11 NYCRR 65-4 (Insurance Regulation 68-D). The attorney's fee shall be limited as follows: 20 percent of the total amount of first-party benefits and any additional first-party benefits, plus interest thereon, for each applicant per arbitration or court proceeding, subject to a maximum fee of $1,360. If the nature of the dispute results in an attorney's fee that could be computed in accordance with the limitations prescribed in both subdivision (c) and this subdivision, the higher attorney's fee shall be payable

D.  The respondent shall also pay the applicant forty dollars ($40) to reimburse the applicant for the fee paid to the Designated Organization, unless the fee was previously returned pursuant to an earlier award.

This award is in full settlement of all no-fault benefit claims submitted to this arbitrator.

State of NY
SS :
County of NY

I, Maureen Callahan, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my award.

07/02/2023                                                              Maureen Callahan
(Dated)

**IMPORTANT NOTICE**

*This award is payable within 30 calendar days of the date of transmittal of award to parties.*

*This award is final and binding unless modified or vacated by a master arbitrator. Insurance Department Regulation No. 68 (11 NYCRR 65-4.10) contains time limits and grounds upon which this award may be appealed to a master arbitrator. An appeal to a master arbitrator must be made within 21 days after the mailing of this award. All insurers have copies of the regulation. Applicants may obtain a copy from the Insurance Department.*

**ELECTRONIC SIGNATURE**

**Document Name:** Final Award Form
**Unique Modria Document ID:**
f483c2ff684abb51750c535e3a56645a

**Electronically Signed**

Your name: Maureen Callahan
Signed on: 07/02/2023

American Arbitration Association
New York No-Fault Arbitration Tribunal

In the Matter of the Arbitration between:

| | | |
|---|---|---|
| Eclipse Medical Imaging PC (Applicant) | AAA Case No. | 17-22-1279-6757 |
| | Applicant's File No. | 170.169 |
| - and - | Insurer's Claim File No. | 32-26G8-08P |
| State Farm Mutual Automobile Insurance Company (Respondent) | NAIC No. | 25178 |

## ARBITRATION AWARD

I, Ioannis Gloumis, the undersigned arbitrator, designated by the American Arbitration Association pursuant to the Rules for New York State No-Fault Arbitration, adopted pursuant to regulations promulgated by the Superintendent of Insurance, having been duly sworn, and having heard the proofs and allegations of the parties make the following **AWARD:**

Injured Person(s) hereinafter referred to as: EIP.

1. Hearing(s) held on                              06/21/2023
   Declared closed by the arbitrator on       06/21/2023

   Gary Tsirelman, Esq. from Tsirelman Law Firm PLLC participated virtually for the **Applicant**

   Tara Gutman, Esq. from Goldberg, Miller and Rubin, P.C. participated virtually for the **Respondent**

2. The amount claimed in the Arbitration Request, **$2,695.51**, was NOT AMENDED at the oral hearing.
   Stipulations WERE NOT made by the parties regarding the issues to be determined.

3. Summary of Issues in Dispute

   Applicant seeks reimbursement of charges for MRIs of the left shoulder, cervical spine, and lumbar spine performed on October 26, 2021 and November 2, 2021, following a September 29, 2021 motor vehicle accident. Respondent defends the claims in dispute based upon the defense that Applicant failed to comply with verification requests within 120 days of the initial requests.

4. Findings, Conclusions, and Basis Therefor

I have reviewed the submissions contained in the American Arbitration Association's Electronic Case Folder in MODRIA, said submissions constituting the record in this case. This award is based upon the arguments that were presented by the parties during the arbitration hearing and the documentary evidence that was submitted by the parties. There were no witnesses that testified during the arbitration hearing.

According to the submissions contained in the Electronic Case Folder for this case in MODRIA, the subject of this dispute involves claims for charges related to MRIs of the left shoulder, cervical spine, and lumbar spine performed on October 26, 2021 and November 2, 2021. Applicant billed Respondent in the total amount of $2,695.51 for the advanced imaging services in dispute. Respondent acknowledged that it received the bills for the claims on December 13, 2021 and December 20, 2021. Thus, Applicant has established its prima facie case. See *Amaze Med. Supply Inc. v Allstate Ins. Co*., 3 Misc.3d 133(A) (App Term, 2d & 11th Jud Dists 2004); *King's Med. Supply Inc. v Country-Wide Ins. Co.*, 5 Misc 3d 767 (Civ Ct, NY County 2004).

Respondent states that it initially delayed the claims pending the examination under oath ("EUO") of Applicant, which was conducted on May 26, 2022; post-EUO verification requests were issued on June 2, 2022 and July 5, 2022 by Respondent's attorneys; and the claims were subsequently denied on October 5, 2022 based upon the defense that Applicant failed to comply with verification requests within 120 days of the initial requests.

The evidence shows that Dr. Jack Baldassare, Applicant's owner, appeared and testified at an EUO that was conducted by Respondent on May 26, 2022.

In its arbitration brief, Respondent represented that the following the verification was outstanding at the time that the claims were denied:

1. Written records evidencing Applicant's ownership of radiological equipment, including MRI, CT, and x-ray equipment/machines;

2. Bank records, bookkeeping records, and financial statements held by Applicant's accountants for years 2019 to present;

3. The EUO transcript from the EUO conducted by Liberty Mutual Insurance Company; and,

4. The 2021 tax return.

During the arbitration hearing, Applicant's attorney argued that the doctrine of Collateral Estoppel precludes Respondent from proceeding to arbitration on the very same issues between the same parties regarding the same post-EUO verification as the issues have already been decided in favor of Applicant in *AAA Case Numbers 17-22-1279-8187* and *17-22-1279-7940*. The parties stipulated during the hearing that these arbitrations involved the same issues and the same post-EUO verification and included the same evidence.

In *AAA Case Number 17-22-1279-8187,* Arbitrator Richard Kokel, Esq. held the following, in relevant part:

> "…According to the evidentiary record, the Respondent received the Applicant's billing claim forms and thereafter scheduled an Examination under Oath of the Applicant provider. This Examination was conducted on May 26, 2022, and Dr. Baldassare, M.D. was deposed. He is the owner of the Applicant imaging facility. Subsequent to the completion of the Examination under Oath, the Respondent sent their first post-examination request. Therein, they sought:

> *Copies of all records evidencing your ownership of MRI machines, CT scanners/ machines, and x-rays; Copies of payments used for the maintenance, calibration, and inspection of MRI machines, CT scanners/ machines, and x-rays; Copies of all lease agreements from January 2017 to the present; Copies of all rent payments from January 2019 to the present; Copies of all agreements with Kensington Realty; Copies of all payments to Kensington Realty; Copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through the present, including but not limited to quick book records and records reflecting receipts and disbursements; Copies of all bank records, including but not limited to cancelled checks and statements from January 1, 2019 through the present; Copies of payments to car service providers and/or copies of payments for patient transportation to and from the facility; Copies of all payments to Robert Maks from January 1, 2019 to the present; Copies of all payments to Yelena Maks from January 1, 2019 to the present; Copies of transcripts of Eclipse for EUOs taken by GEICO, Allstate and Liberty Mutual; Copies of all records reflecting compensation, including salary and bonuses, paid to Dr. Baldassare; and, Tax returns for tax year 2018, 2019, 2020 and 2021.*

The Applicant, on August 27, 2022 responded to the Respondent's requests. They provided a large number of documents that included: W-2 wage information; tax returns (2019 & 2020 & and a notation that 2021 return was not yet filed); checks regarding rent, maintenance payments, patient transportation; and, the lease for the Applicant's premises. The Applicant also informed the Respondent that some of the requested information did not exist or could not be found. They also objected to some requests as being onerous and/or improper. The Applicant also argued, notwithstanding their response, that the verification requests were untimely as per the requirements of 11 NYCRR 65-3.5.

The Respondent, on September 19, 2022, responded to the Applicant's August 27 [th] response. They stated that the Applicant's partial response was insufficient and that the ongoing requests were reasonable and necessary to assess whether Eclipse is controlled by Dr. Baldassare.

My review of the Respondent's September 19 letter reveals that many of the requests th were for information that the Applicant said did not exist or was unable to be located. The Respondent, essentially, is arguing with the Applicant, i.e., disputing the veracity of their response. The other point was that the Applicant refused to provide transcripts of the Examination under Oath taken by Liberty Mutual. This, to the undersigned, appears to be an improper request for a legal document that involves a party (Liberty Mutual) that is not a party to the within arbitration. And in my view, the only reason for obtaining this other transcript, would be for the Respondent to compare Dr. Baldassare's answers line by line with the Examination taken on May 26, 2022. Apparently, the Respondent was investigating the Applicant due to their suspicion that they (the Applicant facility) were controlled by a layperson, i.e., not a medical doctor charged with overseeing patient care and the medical staff as required by New York State law.

I find that the Applicant substantially complied with the Respondent's verification requests. All requests were responded to, but for those that were deemed unnecessary, irrelevant or unduly burdensome. It appears, to the undersigned, that the Respondent was seeking materials that might lead to a 'founded belief' that the Applicant facility was fraudulently incorporated (see State Farm Mutual Auto Ins Co., v. Mallela, et al. (Mallela III), 4 NY 3d 313, 321, 794 N.Y.S. 2d 700 (2005). The record is bereft of any evidence to support such a belief, other than the Respondent's supposition.

Based on the foregoing, the Respondent's defense has not been sustained…"

Moreover, in *AAA Case Number 17-22-1279-7940,* Arbitrator Kathleen Sweeney, Esq. held the following, in relevant part:

"…there were numerous follow up letters sent and responses received before the denial and even at least one after the denial on 10/19/22. The responses contained strong objections to the materials being requested. The nature of the requests is Mallella based as State Farm has asserted through its SIU investigators affidavit and attorneys brief that State Farm has an ongoing investigation regarding the Applicant which is also supported by an affidavit by another Dr. and a Federal Rico action…

Upon review of the evidence, including the facts disclosed and the applicant's responses to verification requests, the respondent has presented "special circumstances" supporting its need for the documentation requested. Under the circumstances present here, I conclude that Respondent's remaining verification requests do not fly in the face of the no-fault scheme, nor do the requests in this case present a concern for the type of carrier "abuse" of the verification process which the Courts have recognized and attempted to avoid.

However, Respondent's denial cannot be sustained because it fails to acknowledge the September response which was within 120 days. Respondent acknowledged that letter from Applicant and then summarily denied the bills. The Applicant has complied under protest with objections that at face value appear fair. The Applicant is entitled to be paid. This decision is in full disposition of all claims for No-fault benefits presently before this Arbitrator…"

Respondent presented an arbitration brief with a summary of the post-EUO verification sought at the time of the denials and the summary of Respondent's investigation, the EUO transcript dated March 26, 2022, the affidavit of Jack Baldassare, M.D. dated October 17, 2022, the affidavit of Arkam Rehman, M.D. dated November 17, 2021, and the affidavit of Project Specialist and SIU Investigator Valerie Williams dated March 1, 2023. SIU Investigator Williams attested that Applicant failed to provide (i) copies of lease agreements, in their entirety, from January 2017 to present; (ii) copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through present; (iii) copies of all payments to Robert and Yelena Maks from January 1, 2019 to present; (iv) tax returns for tax years 2018 and 2021, and (v) copies of all recordings reflecting compensation, including salary and bonuses, paid to Dr. Baldassare. Project Specialist Williams explained Respondent's basis for the verification requests.

Applicant provided written correspondence from Raymond Zuppa, Esq., the attorney that represented Applicant during the EUO and the post-EUO verification requests. The correspondence includes a list of the documents that were provided by Applicant and Applicant's objections to the remaining requests.

In *Paramount Pictures Corp. v Allianz Risk Transfer AG*, 31 NY3d 64 (NY Ct. of Appeals 2018), the Court stated the following, in relevant part:

"…The preclusive effect of a judgment is determined by two related but distinct concepts - issue preclusion and claim preclusion - which collectively comprise the doctrine of "res judicata" (see *Taylor*, 553 US at 892). Issue preclusion, also known as collateral estoppel, bars the relitigation of "an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment" (*New Hampshire v Maine*, 532 US 742, 748-749 [2001]; *see also* Restatement [Second] of Judgments § 27 [1982]). As a result, the determination of an essential issue is binding in a subsequent action, even if it recurs in the context of a different claim (*Taylor*, 553 US at 892).

While issue preclusion applies only to issues *actually* litigated, claim preclusion (sometimes used interchangeably with "res judicata") more broadly bars the parties or their privies from relitigating issues that were or could have been raised in that action ( *Cromwell v County of Sac*, 94 US 351, 352 [1976]). The doctrine "encompasses the law of merger and bar" - it precludes the relitigation of all claims falling within the scope of the judgment, regardless of whether or not those claims were in fact litigated (*Migra v Warren City School Dist. Bd. Of Educ*., 465 US 75, 77 n 1 [1984]; *Monahan v New York City Dept of Corrections*, 214 F3d 275, 285 [2d Cir 2000]; Wright, 6 Fed Prac & Proc Juris § 1417). As such, claim preclusion serves to bar not only "every matter which was offered and received to sustain or defeat the claim or demand," but also "any other admissible matter which might have been offered for that purpose" (Nevada v United States, 463 US 110, 129-130 [1983], citing Cromwell, 94 US at 352). In other words, claim preclusion may "foreclos[e] litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit" (*Migra*, 465 US at 77 n 1).

Collectively, these doctrines serve to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication" (*Allen v McCurry*, 449 US 90, 94 [1980]). By promoting consolidation, res judicata shields litigants from undue harassment and protects against the substantial time and expense associated with needless and repetitive litigation (Taylor, 553 US at 892; see also Allan D. Vestal, *Res Judicata/Preclusion by Judgment: The Law Applied in Federal Courts*, 66 Mich L Rev 1723, 1723 [1967]). The reduction of duplicative proceedings similarly furthers the goals of convenience, efficiency and judicial economy - the same trial court presides over unified discovery, all relevant motions, and a single trial (*Allen*, 449 US at 94; Conway, 60 U Chi L Rev at 156). Res judicata also preserves the integrity of the courts by fostering finality and minimizing the risk of conflicting judgments, which serve only to undermine public confidence in the judicial process (see Nevada, 463 US at 128-129; Vestal, 66 Mich L Rev at 1723; Conway, 60 U Chi L Rev at 162) …"

"It is well settled that res judicata and collateral estoppel are applicable to arbitration awards, including those rendered in disputes over no-fault benefits, and will bar relitigation of the same claim or issue." *A.B. Medical Services PLLC v. New York Central Mutual Fire Ins. Co*., 12 Misc.3d 500 (Civ. Ct. Kings Co. 2006), citing *Matter of Ranni*, 58 N.Y.2d 715 (1982); *Monroe v. Providence Washington Ins. Co.*, 126 A.D.2d 929 (3d Dept. 1987).

Additionally, there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling. *Gilberg v. Barbieri*, 441 NYS2d 49 (1981).

Moreover, in *City School Dist. of City of Tonawanda v. Tonawanda Educ. Ass'n*, 63 N.Y.2d 846 (1984), the Court held that "The effect, if any, to be given to an earlier arbitration award in subsequent arbitration proceedings is a matter for determination in that forum." See *Board of Educ. v Patchogue-Medford Congress of Teachers*, 48 N.Y.2d 812, 813; *Matter of Country-Wide Ins. Co. [Barrios]*, 48 N.Y.2d 831, 832).

The issue of whether Respondent was entitled to the documentation and information that remained in dispute which was requested as part of the post-EUO verification requests has already been decided in favor of Applicant in *AAA Case Numbers 17-22-1279-8187* and *17-22-1279-7940.* The very same issues have already been decided in the prior arbitrations. The awards issued in the prior arbitrations are decisive in the present arbitration, and both parties had had a full and fair opportunity to contest the issues in the prior arbitrations that are now controlling. The parties represented that the prior arbitrations involved the same issues and included the same evidence. Based upon the arbitration awards issued in *AAA Case Numbers 17-22-1279-8187* and *17-22-1279-7940,* the doctrines of Collateral Estoppel and Res Judicata preclude Respondent from proceeding to arbitration on the very same issues.

Accordingly, Applicant's claims are hereby granted in their entirety.

5. Optional imposition of administrative costs on Applicant.
   Applicable for arbitration requests filed on and after March 1, 2002.

   I do NOT impose the administrative costs of arbitration to the applicant, in the amount established for the current calendar year by the Designated Organization.

6. **I find as follows with regard to the policy issues before me:**
☐ The policy was not in force on the date of the accident
☐ The applicant was excluded under policy conditions or exclusions
☐ The applicant violated policy conditions, resulting in exclusion from coverage
☐ The applicant was not an "eligible injured person"
☐ The conditions for MVAIC eligibility were not met
☐ The injured person was not a "qualified person" (under the MVAIC)
☐ The applicant's injuries didn't arise out of the "use or operation" of a motor vehicle
☐ The respondent is not subject to the jurisdiction of the New York No-Fault arbitration forum

Accordingly, the applicant is AWARDED the following:

A.

| Medical | | From/To | Claim Amount | Status |
|---|---|---|---|---|
| | **Eclipse Medical Imaging PC** | **11/02/21 - 11/02/21** | **$1,728.97** | **Awarded: $1,728.97** |
| | **Eclipse Medical Imaging PC** | **10/26/21 - 10/26/21** | **$966.54** | **Awarded: $966.54** |
| **Total** | | | **$2,695.51** | **Awarded: $2,695.51** |

B. The insurer shall also compute and pay the applicant interest set forth below. 12/21/2022 is the date that interest shall accrue from. This is a relevant date only to the extent set forth below.

Since the claim(s) in question arose from an accident that occurred on or after April 5, 2002, the insurer shall compute and pay Applicant the amount of interest computed from the date of filing, at the rate of 2% per month, simple, and ending with the date of payment of the award, subject to the provisions of *11 NYCRR 65-3.9(c)* (stay of interest).

C. Attorney's Fees

The insurer shall also pay the applicant for attorney's fees as set forth below

Respondent shall also pay Applicant an attorney's fee in accordance with *11 NYCRR 4.6*.

D.  The respondent shall also pay the applicant forty dollars ($40) to reimburse the applicant for the fee paid to the Designated Organization, unless the fee was previously returned pursuant to an earlier award.

This award is in full settlement of all no-fault benefit claims submitted to this arbitrator.

State of NY
SS :
County of Nassau

I, Ioannis Gloumis, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my award.

07/21/2023
(Dated)                                                              Ioannis Gloumis

## IMPORTANT NOTICE

*This award is payable within 30 calendar days of the date of transmittal of award to parties.*

*This award is final and binding unless modified or vacated by a master arbitrator. Insurance Department Regulation No. 68 (11 NYCRR 65-4.10) contains time limits and grounds upon which this award may be appealed to a master arbitrator. An appeal to a master arbitrator must be made within 21 days after the mailing of this award. All insurers have copies of the regulation. Applicants may obtain a copy from the Insurance Department.*

**ELECTRONIC SIGNATURE**

**Document Name:** Final Award Form
**Unique Modria Document ID:**
ddd07b49673c0e2a26113c1b93804de5

**Electronically Signed**

Your name: Ioannis Gloumis
Signed on: 07/21/2023

American Arbitration Association
New York No-Fault Arbitration Tribunal

In the Matter of the Arbitration between:

| | | |
|---|---|---|
| Eclipse Medical Imaging PC / Michael Matthews<br>(Applicant) | AAA Case No. | 17-22-1279-6902 |
| | Applicant's File No. | 170.164 |
| | Insurer's Claim File No. | 52-26Z8-30Q |
| - and - | NAIC No. | 25143 |
| State Farm Fire & Casualty Company<br>(Respondent) | | |

## ARBITRATION AWARD

I, Sandra Adelson, the undersigned arbitrator, designated by the American Arbitration Association pursuant to the Rules for New York State No-Fault Arbitration, adopted pursuant to regulations promulgated by the Superintendent of Insurance, having been duly sworn, and having heard the proofs and allegations of the parties make the following **AWARD:**

Injured Person(s) hereinafter referred to as: the patient

1. Hearing(s) held on                                       08/07/2023
   Declared closed by the arbitrator on     08/07/2023

   Allen Tsirelman, Esq. from Tsirelman Law Firm PLLC participated virtually for the Applicant

   Ann Henriksen, Esq. from Goldberg, Miller and Rubin, P.C. participated virtually for the Respondent

2. The amount claimed in the Arbitration Request, **$3,420.42**, was NOT AMENDED at the oral hearing.
   Stipulations WERE NOT made by the parties regarding the issues to be determined.

3. Summary of Issues in Dispute

   The patient was a 33 year old male pedestrian who was involved in a motor vehicle accident. The patient is alleged to have sustained multiple injuries and came under the care of medical professionals. The patient was prescribed MRI scans which were performed by applicant. Applicant performed MRI scans of the right ankle and right wrist on 11/19/21 and MRI scans of the cervical and lumbar spine on 12/1/21. The applicant seeks payment for said MRI scans.

   Respondent denied the claim on the ground that requested additional verification was not provided within the statutory 120-day time period.

4. Findings, Conclusions, and Basis Therefor

The record consisted of claimant's submission, respondent's submission, as well as documents not enumerated within this decision, but which are contained in the case file maintained by the American Arbitration Association. THE ARBITRATOR SHALL BE THE JUDGE OF THE RELEVANCE AND MATERIALITY OF THE EVIDENCE OFFERED. 11 NYCRR 65-4.5(o) (1) (Regulation 68-D), reads as follows: The arbitrator shall be the judge of the relevance and materiality of the evidence offered and strict conformity to legal rules of evidence shall not be necessary. The arbitrator may question any witness or party and independently raise any issue that the arbitrator deems relevant to making an award that is consistent with the Insurance Law and Department Regulations.

Based on a review of the documentary evidence submitted to the case file, the claim is decided as follows:

A denial of no-fault coverage premised on a lack of medical necessity must be supported by competent evidence, such as an independent medical examination or peer review, or other proof, which sets forth a factual basis and a medical rationale for denying the claim (see Healing Hands Chiropractic, P.C. v. Nationwide Assur. Co., 5 Misc 3d 975, 787 N.Y.S.2d 645, 2004 NY Slip Op. 24472 (Civ Ct, NY County 2004); Bajaj v. Progressive Ins. Co., 14 Misc 3d 1202[A], 831 N.Y.S.2d 358, 2006 Slip Op. 53287[U](Civ Ct, Queens County 2006)).

Where a plaintiff provider proves that it timely submitted completed no-fault claim forms setting forth the facts and amount of the loss sustained, and that payment of the no-fault benefits are overdue, the provider establishes a prima facie case of medical necessity (West Tremont Med. Diagnostic, P.C. v. Geico Ins. Co., 13 Misc 3d 131[A],824 N.Y.S.2d 759,2006 NY Slip Op. 51871[U] [App Term, 2d & 11th Jud Dists]).

However, "[w]here the defendant insurer presents sufficient evidence to establish a defense based on lack of medical necessity, the burden shifts to the plaintiff which must then present its own evidence of medical necessity" (id., citing Prince, Richardson on Evidence §§ 3-104, 3-202 [Farrell 11th ed]; see also Delta Diagnostic Radiology P.C. v. American Transit Ins. Co., 18 Misc. 3d 128[A], 856 N.Y.S.2d 23, 2007 NY Slip Op.52455[U] [App Term. 2d & 11 Jud Dists]). The respondent alleged that additional verification remained outstanding.

From a review of cases involving this applicant, it is clear that the issues presented in the arbitration record repeatedly asserted the same arguments set forth in other arbitrations involving applicant Eclipse Medical Imaging PC. In AAA Case No. 17-22-1279-6757, Arbitrator Ioannis Gloumis, held in Eclipse Medical Imaging PC and State Farm Mutual Insurance Company, that the applicant had had provided sufficient information to verify the claim, had objected to those items that were improperly requested, and that the

outstanding items were not pertinent to the processing of the within claim From a review of the decision of Arbitrator Gloumis, it was clear that the same post EUO additional verification requests which were relied on by respondent (6/2/22, 7/5/22, 9/19/22) and that applicant had also submitted to the record and relied on the same additional verification responses (8/27/22 and 10/19/22) which were submitted to the case presently before this arbitrator. With regard to the present arbitration, the same documents noted herein were submitted to the record.

Arbitrator Gloumis in <u>AAA Case No. 17-22-1279-6757</u>, held the following:

"Respondent states that it initially delayed the claims pending the examination under oath ("EUO") of Applicant, which was conducted on May 26, 2022; post-EUO verification requests were issued on June 2, 2022 and July 5, 2022 by Respondent's attorneys; and the claims were subsequently denied on October 5, 2022 based upon the defense that Applicant failed to comply with verification requests within 120 days of the initial requests.

The evidence shows that Dr. Jack Baldassare, Applicant's owner, appeared and testified at an EUO that was conducted by Respondent on May 26, 2022.

In its arbitration brief, Respondent represented that the following the verification was outstanding at the time that the claims were denied:

1. Written records evidencing Applicant's ownership of radiological equipment, including MRI, CT, and x-ray equipment/machines;

2. Bank records, bookkeeping records, and financial statements held by Applicant's accountants for years 2019 to present;

3. The EUO transcript from the EUO conducted by Liberty Mutual Insurance Company; and,

4. The 2021 tax return.

During the arbitration hearing, Applicant's attorney argued that the doctrine of Collateral Estoppel precludes Respondent from proceeding to arbitration on the very same issues between the same parties regarding the same post-EUO verification as the issues have already been decided in favor of Applicant in AAA Case Numbers 17-22-1279-8187 and 17-22-1279-7940. The parties stipulated during the hearing that these arbitrations involved the same issues and the same post-EUO verification and included the same evidence.

In <u>AAA Case Number 17-22-1279-8187</u>, Arbitrator Richard Kokel, Esq. held the following, in relevant part:

"…According to the evidentiary record, the Respondent received the Applicant's billing claim forms and thereafter scheduled an Examination under Oath of the Applicant provider. This Examination was conducted on May 26, 2022, and Dr. Baldassare, M.D.

was deposed. He is the owner of the Applicant imaging facility. Subsequent to the completion of the Examination under Oath, the Respondent sent their first post-examination request. Therein, they sought:

Copies of all records evidencing your ownership of MRI machines, CT scanners/ machines, and x-rays; Copies of payments used for the maintenance, calibration, and inspection of MRI machines, CT scanners/ machines, and x-rays; Copies of all lease agreements from January 2017 to the present; Copies of all rent payments from January 2019 to the present; Copies of all agreements with Kensington Realty; Copies of all payments to Kensington Realty; Copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through the present, including but not limited to quick book records and records reflecting receipts and disbursements; Copies of all bank records, including but not limited to cancelled checks and statements from January 1, 2019 through the present; Copies of payments to car service providers and/or copies of payments for patient transportation to and from the facility; Copies of all payments to Robert Maks from January 1, 2019 to the present; Copies of all payments to Yelena Maks from January 1, 2019 to the present; Copies of transcripts of Eclipse for EUOs taken by GEICO, Allstate and Liberty Mutual; Copies of all records reflecting compensation, including salary and bonuses, paid to Dr. Baldassare; and, Tax returns for tax year 2018, 2019, 2020 and 2021.

The Applicant, on August 27, 2022 responded to the Respondent's requests. They provided a large number of documents that included: W-2 wage information; tax returns (2019 & 2020 & and a notation that 2021 return was not yet filed); checks regarding rent, maintenance payments, patient transportation; and, the lease for the Applicant's premises. The Applicant also informed the Respondent that some of the requested information did not exist or could not be found. They also objected to some requests as being onerous and/or improper. The Applicant also argued, notwithstanding their response, that the verification requests were untimely as per the requirements of 11 NYCRR 65-3.5.

The Respondent, on September 19, 2022, responded to the Applicant's August 27 th response. They stated that the Applicant's partial response was insufficient and that the ongoing requests were reasonable and necessary to assess whether Eclipse is controlled by Dr. Baldassare.

My review of the Respondent's September 19 letter reveals that many of the requests were for information that the Applicant said did not exist or was unable to be located. The Respondent, essentially, is arguing with the Applicant, i.e., disputing the veracity of their response. The other point was that the Applicant refused to provide transcripts of the Examination under Oath taken by Liberty Mutual. This, to the undersigned, appears to be an improper request for a legal document that involves a party (Liberty Mutual) that is not a party to the within arbitration. And in my view, the only reason for obtaining this other transcript, would be for the Respondent to compare Dr. Baldassare's answers line by line with the Examination taken on May 26, 2022. Apparently, the Respondent was investigating the Applicant due to their suspicion that they (the Applicant facility) were controlled by a layperson, i.e., not a medical doctor charged with overseeing patient care and the medical staff as required by New York State law.

I find that the Applicant substantially complied with the Respondent's verification requests. All requests were responded to, but for those that were deemed unnecessary, irrelevant and unduly burdensome. It appears, to the undersigned, that the Respondent was seeking materials that might lead to a 'founded belief' that the Applicant facility was fraudulently incorporated (see State Farm Mutual Auto Ins Co., v. Mallela, et al. (Mallela III), 4 NY 3d 313, 321, 794 N.Y.S. 2d 700 (2005). The record is bereft of any evidence to support such a belief, other than the Respondent's supposition.

Based on the foregoing, the Respondent's defense has not been sustained…"

Moreover, in AAA Case Number 17-22-1279-7940, Arbitrator Kathleen Sweeney, Esq. held the following, in relevant part:

"…there were numerous follow up letters sent and responses received before the denial and even at least one after the denial on 10/19/22. The responses contained strong objections to the materials being requested. The nature of the requests is Mallella based as State Farm has asserted through its SIU investigators affidavit and attorneys brief that State Farm has an ongoing investigation regarding the Applicant which is also supported by an affidavit by another Dr. and a Federal Rico action…

Upon review of the evidence, including the facts disclosed and the applicant's responses to verification requests, the respondent has presented "special circumstances" supporting its need for the documentation requested. Under the circumstances present here, I conclude that Respondent's remaining verification requests do not fly in the face of the no-fault scheme, nor do the requests in this case present a concern for the type of carrier "abuse" of the verification process which the Courts have recognized and attempted to avoid.

However, Respondent's denial cannot be sustained because it fails to acknowledge the September response which was within 120 days. Respondent acknowledged that letter from Applicant and then summarily denied the bills. The Applicant has complied under protest with objections that at face value appear fair. The Applicant is entitled to be paid. This decision is in full disposition of all claims for No-fault benefits presently before this Arbitrator…"

Respondent presented an arbitration brief with a summary of the post-EUO verification sought at the time of the denials and the summary of Respondent's investigation, the EUO transcript dated March 26, 2022, the affidavit of Jack Baldassare, M.D. dated October 17, 2022, the affidavit of Arkam Rehman, M.D. dated November 17, 2021, and the affidavit of Project Specialist and SIU Investigator Valerie Williams dated March 1, 2023. SIU Investigator Williams attested that Applicant failed to provide (i) copies of lease agreements, in their entirety, from January 2017 to present; (ii) copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through present; (iii) copies of all payments to Robert and Yelena Maks from January 1, 2019 to present; (iv) tax returns for tax years 2018 and 2021, and (v) copies of all recordings reflecting compensation, including salary and bonuses, paid to Dr. Baldassare. Project Specialist Williams explained Respondent's basis for the verification requests.

Applicant provided written correspondence from Raymond Zuppa, Esq., the attorney that represented Applicant during the EUO and the post-EUO verification requests. The correspondence includes a list of the documents that were provided by Applicant and Applicant's objections to the remaining requests.

I therefore agree with the arbitration award of Arbitrator Gloumis and find that it persuasively discussed the same issues presented in the instant arbitration and relied on the same documents. I also find that applicant had previously provided substantial compliance with the requests in issue. Applicant had also reserved its objections and I find that the outstanding items were not pertinent or relevant to the processing of this claim. The same or similar responses from applicant and requests for additional verification were submitted from respondent. I, therefore, find that applicant had provided substantial compliance with the requests in issue. Applicant had also reserved its objections and I find that the outstanding items were not pertinent or relevant to the process of this claim.

Paramount Pictures Corp. v Allianz Risk Transfer AG, 31 NY3d 64 (NY Ct. of Appeals 2018), the Court stated the following, in relevant part:

"…The preclusive effect of a judgment is determined by two related but distinct concepts - issue preclusion and claim preclusion - which collectively comprise the doctrine of "res judicata" (see Taylor, 553 US at 892). Issue preclusion, also known as collateral estoppel, bars the relitigation of "an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment" (New Hampshire v Maine, 532 US 742, 748-749 [2001]; see also Restatement [Second] of Judgments § 27 [1982]). As a result, the determination of an essential issue is binding in a subsequent action, even if it recurs in the context of a different claim (Taylor, 553 US at 892).

While issue preclusion applies only to issues actually litigated, claim preclusion

(sometimes used interchangeably with "res judicata") more broadly bars the parties or their privies from relitigating issues that were or could have been raised in that action ( Cromwell v County of Sac, 94 US 351, 352 [1976]). The doctrine "encompasses the law of merger and bar" - it precludes the relitigation of all claims falling within the scope of the judgment, regardless of whether or not those claims were in fact litigated (Migra v Warren City School Dist. Bd. Of Educ., 465 US 75, 77 n 1 [1984]; Monahan v New York City Dept of Corrections, 214 F3d 275, 285 [2d Cir 2000]; Wright, 6 Fed Prac & Proc Juris § 1417). As such, claim preclusion serves to bar not only "every matter which was offered and received to sustain or defeat the claim or demand," but also "any other admissible matter which might have been offered for that purpose" (Nevada v United States, 463 US 110, 129-130 [1983], citing Cromwell, 94 US at 352). In other words, claim preclusion may "foreclos[e] litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit" (Migra, 465 US at 77 n 1).

Collectively, these doctrines serve to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication" (Allen v McCurry, 449 US 90, 94 [1980]). By

promoting consolidation, res judicata shields litigants from undue harassment and protects against the substantial time and expense associated with needless and repetitive litigation (Taylor, 553 US at 892; see also Allan D. Vestal, Res Judicata/Preclusion by Judgment: The Law Applied in Federal Courts, 66 Mich L Rev 1723, 1723 [1967]). The reduction of duplicative proceedings similarly furthers the goals of convenience, efficiency and judicial economy - the same trial court presides over unified discovery, all relevant motions, and a single trial (Allen, 449 US at 94; Conway, 60 U Chi L Rev at 156). Res judicata also preserves the integrity of the courts by fostering finality and minimizing the risk of conflicting judgments, which serve only to undermine public confidence in the judicial process (see Nevada, 463 US at 128-129; Vestal, 66 Mich L Rev at 1723; Conway, 60 U Chi L Rev at 162) …"

"It is well settled that res judicata and collateral estoppel are applicable to arbitration awards, including those rendered in disputes over no-fault benefits, and will bar relitigation of the same claim or issue." A.B. Medical Services PLLC v. New York Central Mutual Fire Ins. Co., 12 Misc.3d 500 (Civ. Ct. Kings Co. 2006), citing Matter of Ranni, 58N.Y. 2d 715 (1982);….

Additionally, there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling. Gilberg v. Barbieri, 441 NYS2d 49 (1981)….

The issue of whether respondent was entitled to the documentation and information that remained in dispute which was requested as part of the post-EUO verification requests has already been decided in favor of Applicant in AAA Case Numbers 17-22-1279-8187 and 17-22-1279-7940. The very same issues have already been decided in the prior arbitrations. The awards issued in the prior arbitrations are decisive in the present arbitration, and both parties had had a full and fair opportunity to contest the issues in the prior arbitrations that are now controlling. The parties represented that the prior arbitrations involved the same issues and included the same evidence. Based upon the arbitration award issued in AAA Case Numbers 17-22-1279-8187 and 17 -22-1279-7940, the doctrines of collateral estoppel and res judicata preclude respondent from proceeding to arbitration on the very same issues.

Accordingly, Applicant's claims are hereby granted in their entirety."

The same or similar responses from applicant and requests for additional verification were submitted from respondent. I, therefore, find on the specific evidence submitted to this claim that applicant had provided substantial compliance with the requests in issue. Applicant had also reserved its objections and I find that the outstanding items were not pertinent or relevant to the process of this claim.

With regard to any fee schedule defense, please see Robert Physical Therapy PC v. State Farm Mut. Auto Ins. Co., (2006), 13 Misc. 3d 172 which is also controlling for the instant arbitration.

The claim is granted.

5.  Optional imposition of administrative costs on Applicant.
    Applicable for arbitration requests filed on and after March 1, 2002.

    I do NOT impose the administrative costs of arbitration to the applicant, in the amount established for the current calendar year by the Designated Organization.

6.  **I find as follows with regard to the policy issues before me:**
    ☐ The policy was not in force on the date of the accident
    ☐ The applicant was excluded under policy conditions or exclusions
    ☐ The applicant violated policy conditions, resulting in exclusion from coverage
    ☐ The applicant was not an "eligible injured person"
    ☐ The conditions for MVAIC eligibility were not met
    ☐ The injured person was not a "qualified person" (under the MVAIC)
    ☐ The applicant's injuries didn't arise out of the "use or operation" of a motor vehicle
    ☐ The respondent is not subject to the jurisdiction of the New York No-Fault arbitration forum

Accordingly, the applicant is AWARDED the following:

A.

| Medical | | From/To | Claim Amount | Status |
|---|---|---|---|---|
| Michael Matthews | Eclipse Medical Imaging PC | 12/01/21 - 12/01/21 | $1,728.97 | Awarded: $1,728.97 |
| Michael Matthews | Eclipse Medical Imaging PC | 11/19/21 - 11/19/21 | $1,691.45 | Awarded: $1,691.45 |
| Total | | | $3,420.42 | Awarded: $3,420.42 |

B.  The insurer shall also compute and pay the applicant interest set forth below. 12/21/2022 is the date that interest shall accrue from. This is a relevant date only to the extent set forth below.

    The Respondent shall compute and pay the Applicant the amount of interest computed from the date set forth above at the rate of 2% per month, simple, and ending with the date of payment of the award, subject to the provisions of 11 NYCRR 65-3.9(c).

C. Attorney's Fees

The insurer shall also pay the applicant for attorney's fees as set forth below

Applicable attorney fees on the amount awarded in accordance with 11 NYCRR 65-4.6(d).

D. The respondent shall also pay the applicant forty dollars ($40) to reimburse the applicant for the fee paid to the Designated Organization, unless the fee was previously returned pursuant to an earlier award.

This award is in full settlement of all no-fault benefit claims submitted to this arbitrator.

State of NY
SS :
County of Suffolk

I, Sandra Adelson, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my award.

08/10/2023
(Dated)

Sandra Adelson

## IMPORTANT NOTICE

*This award is payable within 30 calendar days of the date of transmittal of award to parties.*

*This award is final and binding unless modified or vacated by a master arbitrator. Insurance Department Regulation No. 68 (11 NYCRR 65-4.10) contains time limits and grounds upon which this award may be appealed to a master arbitrator. An appeal to a master arbitrator must be made within 21 days after the mailing of this award. All insurers have copies of the regulation. Applicants may obtain a copy from the Insurance Department.*

**ELECTRONIC SIGNATURE**

**Document Name:** Final Award Form
**Unique Modria Document ID:**
ca1d2f1ceb8de5959e7e2274e24c412b

**Electronically Signed**

Your name: Sandra Adelson
Signed on: 08/10/2023 11:14:16 AM

American Arbitration Association
New York No-Fault Arbitration Tribunal

In the Matter of the Arbitration between:

| | | |
|---|---|---|
| Eclipse Medical Imaging PC / Denver Douglas (Applicant) | AAA Case No. | 17-22-1279-5018 |
| | Applicant's File No. | 170.193 |
| - and - | Insurer's Claim File No. | 52-27W3-47R |
| State Farm Fire & Casualty Company (Respondent) | NAIC No. | 25143 |

## ARBITRATION AWARD

I, Josh Youngman, the undersigned arbitrator, designated by the American Arbitration Association pursuant to the Rules for New York State No-Fault Arbitration, adopted pursuant to regulations promulgated by the Superintendent of Insurance, having been duly sworn, and having heard the proofs and allegations of the parties make the following **AWARD:**

Injured Person(s) hereinafter referred to as: IP

1. Hearing(s) held on                                        08/07/2023
   Declared closed by the arbitrator on        08/07/2023

   Allen Tsirelman, Esq. from Tsirelman Law Firm PLLC participated virtually for the **Applicant**

   Ann Henricksen, Esq. from Goldberg, Miller and Rubin, P.C. participated virtually for **the Respondent**

2. The amount claimed in the Arbitration Request, **$1,003.20**, was NOT AMENDED at the oral hearing.
   Stipulations WERE NOT made by the parties regarding the issues to be determined.

3. Summary of Issues in Dispute

   The evidence shows this arbitration to recover allegedly overdue PIP benefits involves a 41-year old male (D.D.) who was injured on October 11, 2021 when the motor vehicle he was a passenger in was involved in an accident. The evidence further shows following the accident the injured party (IP) sought treatment and received a lumbar spine MRI on February 24, 2022. The evidence further shows the respondent denied the claim based on an outstanding verification defense.

   The issues presented are whether the applicant made out a prima facie case for no-fault reimbursement, and if so, whether the respondent produced sufficient evidence to sustain their outstanding verification defense.

4. Findings, Conclusions, and Basis Therefor

This Award is rendered after diligent review and consideration of the parties' evidence submitted to and maintained by the American Arbitration Association's electronic case filing system, "MODRIA," as well as the parties' oral arguments and any testimony presented at this matter's hearing. Evidence that was submitted after this matter's "closing" and without this Arbitrator's authorization was not considered.

An applicant establishes its prima facie entitlement to reimbursement with proof that it submitted a proper claim, setting forth the fact and the amount charged for the services rendered and that payment of no-fault benefits was overdue. See Insurance Law § 5106a; Viviane Etienne Med. Care v. Country-Wide Ins. Co., 25 N.Y.3d 498 (2015); Mary Immaculate Hosp. v. Allstate Ins. *Co.*, 5 A.D. 3d 742 (App. Div. 2d Dept. 2004). Once an applicant has established its prima facie case, the burden shifts to the insurer to establish that it timely and properly denied the claim(s), and to submit evidence to sustain the basis of its denial(s).

I find that the applicant has submitted sufficient evidence to make out a prima facie case, thus shifting the burden to the respondent.

The respondent alleges they requested verification for the disputed claim and have not received a sufficient response. Further, the evidence also shows the respondent denied the disputed claim based on the defense that the applicant failed to provide the verification that was requested within 120 days of the initial request per 11 NYCRR 65-3.5(o), which states:

> (o) An applicant from whom verification is requested shall, within 120 calendar days from the date of the initial request for verification, submit all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply. The insurer shall advise the applicant in the verification request that the insurer may deny the claim if the applicant does not provide within 120 calendar days from the date of the initial request either all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply. This subdivision shall not apply to a prescribed form (NF-Form) as set forth in Appendix 13 of this Title, medical examination request, or examination under oath request. This subdivision shall apply, with respect to claims for medical services, to any treatment or service rendered on or after April 1, 2013 and with respect to claims for lost earnings and reasonable and necessary expenses, to any accident occurring on or after April 1, 2013.

If an insurer requires any additional information to evaluate the proof of claim, such request for verification must be made within 15 business days of the receipt of the bill in order to toll the 30-day period to pay or deny the claim. See generally, 11 NYCRR 65-3.5(b); See also, New York Hosp. Med. Ctr. of Queens v. Allstate Ins. Co., 2014 Ny Slip Op 00640 (App. Div. 2d Dept. 2014). Where there is a timely original request for

verification, but no response to the request for verification is received within 30 calendar days thereafter, or the response to the original request for verification is incomplete, then the insurer, within 10 calendar days after the expiration of that 30-day period, must follow up with a second request for verification. Id. If there is no response to the second, or follow-up, request for verification, the time in which the insurer must decide whether to pay or deny the claim is indefinitely tolled. Id. Therefore, when a no-fault medical service provider fails to respond to the requests for verification the claim is premature and should be denied without prejudice.

An applicant in a no-fault matter that receives a request for additional verification is required to respond to the verification request even if such request pertains to information not within its possession. See D & R Medical Supply, Inc. v. American Transit Ins. Co., 2011 NY Slip Op 51727 (App Term 2d Dept. 2011).

In D & R Medical Supply v. American Transit, the plaintiff initiated a no-fault action against the defendant. The plaintiff moved for summary judgment and the defendant cross-moved for the same relief. The lower court granted the plaintiff's motion and denied the cross-motion. The defendant appealed. In reversing the decision of the lower court, the Appellate Term stated:

> It is undisputed that defendant timely mailed its request and follow-up request for verification to plaintiff (*see* Insurance Department Regulations [11 NYCRR] § 65-3.5 [b]; § 65-3.6 [b];*St. Vincent's Hosp. of Richmond v Government Empls. Ins. Co.*, 50 AD3d 1123[2008];*Delta Diagnostic Radiology, P.C. v Chubb Group of Ins.*, 17 Misc 3d 16[App Term, 2d & 11th Jud Dists 2007]). The record establishes that plaintiff's responses to defendant's verification requests failed to provide the information which defendant had requested, in that plaintiff merely stated that the supplies at issue had been provided pursuant to a doctor's prescription and did not advise defendant of the name of the doctor who had issued the prescription or where the doctor was located so that defendant could try to obtain the requested information from the prescribing doctor (*see Urban Radiology, P.C. v Tri-State Consumer Ins. Co.*, 27 Misc 3d 140[A], 2010 NY Slip Op 50987[U] [App Term, 2d, 11th & 13th Jud Dists 2010]). Consequently, defendant's cross motion for summary judgment dismissing the complaint as premature should have been granted, as defendant's time to pay or deny the claim had not begun to run (*see* Insurance Department Regulations [11 NYCRR] § 65-3.8 [a];*Hospital for Joint Diseases v New York Cent. Mut. Fire Ins. Co.*, 44 AD3d 903[2007];*Central Suffolk Hosp. v New York Cent. Mut. Ins. Co.*, 24 AD3d 492[2005];*Hospital for Joint Diseases v State Farm Mut. Auto. Ins. Co.*, 8 AD3d 533[2004]). In light of the foregoing, we reach no other issue.

The Appellate Term recently had a similar holding in the matter of Doctor Goldshteyn Chiropractic, P.C. v. Travelers Indem. Co., 2017 NY Slip Op 51816(U), where they stated:

> Contrary to plaintiff's contention, the record demonstrates that defendant did not receive requested verification and, thus, that the action is premature (*see Central Suffolk Hosp. v New York Cent. Mut. Fire Ins. Co.*, 24 AD3d 492 [2005]).

Indeed, on appeal, plaintiff notes that it had partially responded to defendant's verification requests. *Id.*

The Appellate Term has further held:

defendant was not required to pay or deny plaintiff's claims upon receipt of a "partial response" to defendant's verification requests (*see* 11 NYCRR 65-3.8 [a] [1]; [b] [3]; *New York & Presbyt. Hosp. v Progressive Cas. Ins. Co.*, 5 AD3d 568 , 570 [2004] ["A claim need not be paid or denied until all demanded verification is provided"]). To the extent that plaintiff asserts that certain of defendant's requests were inappropriate, that argument also lacks merit, as plaintiff did not allege, much less demonstrate, that it objected to such requests during claims processing (*see Rogy Med., P.C. v Clarendon Natl. Ins. Co.*, 43 Misc 3d 133[A], 2014 NY Slip Op 50629[U], *2 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2014] ["inaction is an improper response to a verification request, and therefore plaintiff's objections regarding the requests will not now be heard"]). Compas Med., P.C. v. Travelers Ins Co., 2016 NY Slip Op 51441(U) (App. Term 2d Dept. 2016).

Thus, the Appellate Courts have routinely held that a partial response that does not provide the information requested by the insurer is insufficient to verify the claim. See also Doctor Goldshteyn Chiropractic, P.C. v. Travelers Indem. Co., 2017 NY Slip Op 51816(U) (App. Term 2d Dept. 2017); Atlantic Radiology Imaging, P.C. v. Travelers Prop. Cas. Co. of Am., 2018 NY Slip Op 50053(U) (App. Term 1st Dept. 2018).

It must be noted, however, that although a "partial" response is insufficient to verify the claim, the insurer has a duty to communicate with the applicant and vice versa. The purpose of the No-Fault statute is to ensure prompt resolution of claims by accident victims. The parties' obligations are centered on good faith and common sense. Any questions concerning a communication should be addressed by further communication, not inaction. Dilon Medical Supply Corp. v. Travelers Ins. Co., 7 Misc.3d 927 (Civ. Ct. Kings Co. 2005). The response to a verification request that is "arguably responsive" places the burden to take further action upon the carrier. All Health Medical Care, P.C. v. GEICO, 2 Misc.3d 907 (NY City Civ Ct. 2004). Moreover, as long as the applicant's documentation is arguably responsive to an insurer's verification request, the insurer must act affirmatively once it receives a response to its verification request. Media Neurology P.C. v. Countrywide, Ins. Co., 21 Misc.3d 1101 (NY City Civ. Ct. 2005).

In the instant matter, the evidence shows the respondent conducted an EUO of the.listed owner of the applicant, Dr. Baldassare, on May 26, 2022. The evidence further shows the respondent requested post-EUO verification of the claim per letters dated April 29, 2022 and June 2, 2022.

The April 29, 2022 and June 2, 2022 letters request numerous documents from the applicant, such as:

- Copies of records showing ownership of the MRI machines
- Copies of lease agreements from January 2017 to present

- Copies of payments for maintenance/calibration/inspection of the MRI machines, CT scanners and X-rays
- Copies of rent payments
- Copies of agreements with Kensington Realty
- Copies of payments to Kensington Realty
- Copies of the "general ledger and/or bookkeeping records from January 2019 through the present"
- Copies of all bank records from January 2019 to present
- Copies of payments to car services
- Copies of payments to two individuals from January 1, 2019 to present
- Copies of all records reflecting compensation paid to Dr. Baldassare
- Tax returns for 2018, 2019, 2020 and 2021

Further, the letters state the aforementioned documents are required for the following reason:

> The requested documents and information are necessary for numerous reasons, including but not limited to, (i) to evaluate the corporate structure of Eclipse and to verify that Eclipse is properly owned and controlled by a licensed physician; (ii) to verify the necessity and appropriateness of the services billed for including whether the testing services were staggered in a manner to overbill, and (iii) to evaluate whether there were kick backs, fee splitting and/or financial considerations that influenced patient care.

The evidence shows the applicant responded per a letter from The Zuppa Firm PLLC dated August 27, 2022. In the August 27, 2022 response, the applicant cites to Concourse Chiropractic, PLLC v. State Farm Mut. Ins. Co., 35 Misc. 12131(A) (District Court of New York, First District, Nassau County 2012). The applicant also provides a quotation from the aforementioned case, stating:

> The only explanation this court can find for this repeated and repetitive use of a request for an EUO and *Mallela* verification is the insurer's hope that the provider will not respond thus providing the insurer with an absolute defense to an action that is otherwise indefensible.

Further, in their August 27, 2022 response, the applicant provides numerous documents in response, including:

- Checks for payments for the maintenance of the radiological equipment from June 2020 - May 2022
- The lease
- Monthly rent checks from May 2020 - June 2022
- All checks that could be located showing payment to Kensington Realty
- Checks and logs for patient transportation from June 2020 - June 2022
- W-2's for the two (2) individuals that the respondent requested copies of payments for
- W-2 Wage and Tax Statements for 2019, 2020 and 2021
- Tax returns from 2019 and 2020, stating the 2021 return was on extension.

Further, in their August 27, 2022 response, the applicant also objected to the respondent's remaining demands.

The evidence shows the respondent responded per a letter dated September 19, 2022. In their September 19, 2022 letter, the respondent acknowledged receipt of the applicant's August 27, 2022 response (which they state was received on September 12, 2022). Further, in their September 19, 2022 letter, the respondent alleges the August 27, 2022 response was insufficient and that the documentation requested remains outstanding and required to verify the applicant's eligibility to receive reimbursement for no-fault claims.

The evidence shows the respondent subsequently denied the claim per a denial of claim form dated October 5, 2022. The evidence further shows the applicant responded again on October 19, 2022, which was after the time the claim had been denied.

The applicant argues their response was arguably responsive and that the remaining documents requested by the respondent were improper. Further, the applicant argued numerous arbitrators have agreed with their position and have issued awards in their favor on the same verification dispute.

In the matter of Eclipse Medical Imaging, PC v. State Farm Mutual Automobile Ins. Co. . AAA Case No.: 17-22-1279-8187 (2023), Arbitrator Richard Kokel stated:

> The Applicant, on August 27, 2022 responded to the Respondent's requests. They provided a large number of documents that included: W-2 wage information; tax returns (2019 & 2020 & and a notation that 2021 return was not yet filed); checks regarding rent, maintenance payments, patient transportation; and, the lease for the Applicant's premises. The Applicant also informed the Respondent that some of the requested information did not exist or could not be found. They also objected to some requests as being onerous and/or improper. The Applicant also argued, notwithstanding their response, that the verification requests were untimely as per the requirements of 11 NYCRR 65-3.5.
>
> The Respondent, on September 19, 2022, responded to the Applicant's August 27th response. They stated that the Applicant's partial response was insufficient and that the ongoing requests were reasonable and necessary to assess whether Eclipse is controlled by Dr. Baldassare.
>
> My review of the Respondent's September 19 letter reveals that many of the requests th were for information that the Applicant said did not exist or was unable to be located. The Respondent, essentially, is arguing with the Applicant, i.e., disputing the veracity of their response. The other point was that the Applicant refused to provide transcripts of the Examination under Oath taken by Liberty Mutual. This, to the undersigned, appears to be an improper request for a legal document that involves a party (Liberty Mutual) that is not a party to the within arbitration. And in my view, the only reason for obtaining this other transcript, would be for the Respondent to compare Dr. Baldassare's answers line by line with the Examination taken on May 26, 2022. Apparently, the Respondent was investigating the Applicant due to their suspicion that they (the Applicant facility) were controlled by a layperson, i.e., not a medical doctor

charged with overseeing patient care and the medical staff as required by New York State law.

I find that the Applicant substantially complied with the Respondent's verification requests. All requests were responded to, but for those that were deemed unnecessary, irrelevant or unduly burdensome. It appears, to the undersigned, that the Respondent was seeking materials that might lead to a 'founded belief' that the Applicant facility was fraudulently incorporated (see State Farm Mutual Auto Ins Co., v. Mallela, et al. (Mallela III), 4 NY 3d 313, 321, 794 N.Y.S. 2d 700 (2005). The record is bereft of any evidence to support such a belief, other than the Respondent's supposition.

Based on the foregoing, the Respondent's defense has not been sustained. The Applicant's claim is thereby awarded.

Further, in the matter of <u>Eclipse Medical Imaging, PC v. State Farm Mutual Automobile Ins. Co.</u>. AAA Case No.: 17-22-1279-7940 (2023), Arbitrator Kathleen Sweeney stated:

Upon review of the evidence, including the facts disclosed and the applicant's responses to verification requests, the respondent has presented "special circumstances" supporting its need for the documentation requested. Under the circumstances present here, I conclude that Respondent's remaining verification requests do not fly in the face of the no-fault scheme, nor do the requests in this case present a concern for the type of carrier "abuse" of the verification process which the Courts have recognized and attempted to avoid.

However, Respondent's denial cannot be sustained because it fails to acknowledge the September response which was within 120 days. Respondent acknowledged that letter from Applicant and then summarily denied the bills. The Applicant has complied under protest with objections that at face value appear fair. The Applicant is entitled to be paid. This decision is in full disposition of all claims for No-fault benefits presently before this Arbitrator.

Further, in the matter of <u>Eclipse Medical Imaging, PC v. State Farm Mutual Automobile Ins. Co.</u>. AAA Case No.: 17-22-1279-6674 (2023), Arbitrator Maureen Callahan stated:

Applicant asserts they responded at page 152/195 of applicant's submission, applicant's response letter of 8/27/22. Same is arguably responsive. Respondent argues that certain items were still outstanding such as ownership of of radiology equipment, bookkeeping records, etc. Inquiry was made as to why these items were necessary to process this claim for the shoulder MRI. Respondent advises that they were looking into a fraudulent scheme. Applicant argues that Dr. Rehman had nothing to do with the Eclipse, that this is a fishing expedition. He argues that to other arbitrators, arbitrators Sweeney and Kogel in 17 - 22 - 1279 - 2345 and 17 - 22 - 1279 - 8187 respectively, have already addressed this. In these decisions, applicant argues that the arbitrators have found that there was substantial compliance to complete the verification process and everything was provided except for irrelevant material. Applicant argues that "the No-Fault Law and its regulations should be interpreted to promote the expeditious handling of

verification requests and prompt claim resolution". The applicant is correct in asserting this proposition. Infinity Health Products, Ltd. v. Eveready Ins. Co., 67 A.D.3d 862, 890 N.Y.S.2d 545 (2d Dept. 2009).

I have listened to the arguments and evaluated the evidence. The respondent's handling of this case, namely the EUO scheduling letters, were initially improper for the logic stated above regarding same. Nonetheless, this claim was denied on 10/5/22 for failure to provide post EUO verification. I find that there has been substantial compliance. This claim ought be paid. Respondent's arguments to the contrary are not persuasive. Award to applicant $966.54.

Further, in Eclipse Medical Imaging, PC v. State Farm Mutual Automobile Ins. Co., AAA Case No.: 17-22-1279-6757 (2023), Arbitrator Ioannis Gloumis stated:

Respondent presented an arbitration brief with a summary of the post-EUO verification sought at the time of the denials and the summary of Respondent's investigation, the EUO transcript dated March 26, 2022, the affidavit of Jack Baldassare, M.D. dated October 17, 2022, the affidavit of Arkam Rehman, M.D. dated November 17, 2021, and the affidavit of Project Specialist and SIU Investigator Valerie Williams dated March 1, 2023. SIU Investigator Williams attested that Applicant failed to provide (i) copies of lease agreements, in their entirety, from January 2017 to present; (ii) copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through present; (iii) copies of all payments to Robert and Yelena Maks from January 1, 2019 to present; (iv) tax returns for tax years 2018 and 2021, and (v) copies of all recordings reflecting compensation, including salary and bonuses, paid to Dr. Baldassare. Project Specialist Williams explained Respondent's basis for the verification requests.

Applicant provided written correspondence from Raymond Zuppa, Esq., the attorney that represented Applicant during the EUO and the post-EUO verification requests. The correspondence includes a list of the documents that were provided by Applicant and Applicant's objections to the remaining requests.

…..

The issue of whether Respondent was entitled to the documentation and information that remained in dispute which was requested as part of the post-EUO verification requests has already been decided in favor of Applicant in AAA Case Numbers 17-22-1279-8187 and 17-22-1279-7940. The very same issues have already been decided in the prior arbitrations. The awards issued in the prior arbitrations are decisive in the present arbitration, and both parties had had a full and fair opportunity to contest the issues in the prior arbitrations that are now controlling. The parties represented that the prior arbitrations involved the same issues and included the same evidence. Based upon the arbitration awards issued in AAA Case Numbers 17-22-1279-8187 and 17-22-1279-7940, the doctrines of Collateral Estoppel and Res Judicata preclude Respondent from proceeding to arbitration on the very same issues.

I note that Appellate Division of the First Department has provided some guidance regarding whether the type of verification sought by the respondent is proper in Matter of Allstate Prop. & Cas. Ins. Co. v. New Way Massage Therapy, P.C., 2015 N.Y. Slip Op 09184 (App. Div. 1st Dept. 2015), where they held:

> Whether or not the fee-sharing arrangement at issue constitutes unprofessional conduct (see 8 NYCRR 29.1[b][4]), it does not constitute a defense to a no-fault action (compare State Farm Mut. Auto. Ins. Co. v Mallela, 4 NY3d 313 [2005] ["insurance carriers may withhold payment for medical services provided by fraudulently incorporated enterprises to which patients have assigned their claims"]). It is solely a matter for the appropriate state licensing board (see e.g. Necula v Glass, 231 AD2d 457 [1st Dept 1996]; see also H & H Chiropractic Servs., P.C. v Metropolitan Prop. & Cas. Ins. Co., 47 Misc 3d 1075, 1078 [Civ Ct, Queens County 2015]).

Even further, although the respondent submits an affidavit that explains the basis of their requests, the respondent does not submit any evidence to explain why the response received by the applicant was insufficient.

In addition, the evidence shows the applicant objected to the documents that were demanded. For the reasons stated above, however, the respondent does not provide a persuasive explanation of why those documents were required to verify the claim for the prescription for the MRI in dispute.

Additionally, the respondent fails to submit sufficient evidence to show the provider's eligibility to receive reimbursement for no-fault claims has been called into question by any authoritative body.

Further, I agree with the arbitration decisions referenced above and see no reason to alter the prior decisions on the same verification issue. The evidence shows the applicant made a meaningful attempt to comply with the respondent's demands and the respondent denied the claim instead of keeping the line of communication open. Further, the respondent does not submit a persuasive explanation of why they denied the claim when the applicant was attempting to comply with the respondent's demands.

Thus, I find the applicant is entitled to an award for the disputed claim with interest starting on October 13, 2022 (thirty (30) days from the date the evidence shows the respondent received the August 27, 2022 response).

Further, as stated by the Supreme Court of the State of New York, County of New York in the matter of Country-Wide Ins. Co. v. Sayed Physical Therapy, P.C., 2022 NY Slip Op 31874(U) (Sup. Ct. NY County 2022):

> It is not the duty of the arbiter, be it an arbitrator or Court, to parse [through] hundreds of pages of exhibits to make a out a claim or defense for a party (*see e.g. Barsella v. City of New York*, 82 A.D.2d 747, 748 [1st Dept 1981]); such duty belongs to counsel, as advocate. Failing to elucidate evidence in support of

a party's claim is not error of the arbitrator but is rather error of counsel, and such failure does not render an arbitrator's award arbitrary and capricious (*see Stephen Fogel Psychological, P.C. v. Progressive Cas. Ins. Co.,* 35 A.D.3d 720, 721 [2d 2006]).

Thus, any issues not referenced above are held to be moot and/or waived insofar as they were not sufficiently raised at the time of the hearing.

5. Optional imposition of administrative costs on Applicant.
   Applicable for arbitration requests filed on and after March 1, 2002.

   I do NOT impose the administrative costs of arbitration to the applicant, in the amount established for the current calendar year by the Designated Organization.

6. **I find as follows with regard to the policy issues before me:**
   - ☐ The policy was not in force on the date of the accident
   - ☐ The applicant was excluded under policy conditions or exclusions
   - ☐ The applicant violated policy conditions, resulting in exclusion from coverage
   - ☐ The applicant was not an "eligible injured person"
   - ☐ The conditions for MVAIC eligibility were not met
   - ☐ The injured person was not a "qualified person" (under the MVAIC)
   - ☐ The applicant's injuries didn't arise out of the "use or operation" of a motor vehicle
   - ☐ The respondent is not subject to the jurisdiction of the New York No-Fault arbitration forum

Accordingly, the applicant is AWARDED the following:

A.

| Medical | | From/To | Claim Amount | Status |
|---|---|---|---|---|
| Denver Douglas | Eclipse Medical Imaging PC | 02/24/22 - 02/24/22 | $1,003.20 | Awarded: $1,003.20 |
| Total | | | $1,003.20 | Awarded: $1,003.20 |

B. The insurer shall also compute and pay the applicant interest set forth below. 10/13/2022 is the date that interest shall accrue from. This is a relevant date only to the extent set forth below.

Pursuant to 11 NYCRR § 65-3.9, "Interest on overdue payments," the respondent shall pay interest to the applicant on the awarded overdue PIP benefit at a rate of two percent (2%) per month calculated on a pro rata basis using a thirty (30) day month. As applied to the claim(s) herein, interest accrues from the date the arbitration request was received through the date of payment of the awarded overdue PIP benefit (where arbitration was not initiated within 30 days after receipt of a denial(s) of claim(s)), or from the date that the claim(s) was(were) overdue where no denial was issued through the date of payment of the awarded overdue PIP benefits.

C.  Attorney's Fees

The insurer shall also pay the applicant for attorney's fees as set forth below

As this arbitration was filed after February 4, 2015, it is subject to the provisions promulgated by the Department of Financial Services in the Sixth Amendment to 11 NYCRR § 65-4. Accordingly, the respondent shall pay the applicant an attorneys' fee according to § 65-4.6(d).

D.  The respondent shall also pay the applicant forty dollars ($40) to reimburse the applicant for the fee paid to the Designated Organization, unless the fee was previously returned pursuant to an earlier award.

This award is in full settlement of all no-fault benefit claims submitted to this arbitrator.

State of CA
SS :
County of San Diego

I, Josh Youngman, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my award.

08/15/2023
(Dated)

Josh Youngman

**IMPORTANT NOTICE**

*This award is payable within 30 calendar days of the date of transmittal of award to parties.*

*This award is final and binding unless modified or vacated by a master arbitrator. Insurance Department Regulation No. 68 (11 NYCRR 65-4.10) contains time limits and grounds upon which this award may be appealed to a master arbitrator. An appeal to a master arbitrator must be made within 21 days after the mailing of this award. All insurers have copies of the regulation. Applicants may obtain a copy from the Insurance Department.*

**ELECTRONIC SIGNATURE**

**Document Name:** Final Award Form
**Unique Modria Document ID:**
57c15ed24a37f999f2cabdf449ba1762

**Electronically Signed**

Your name: Josh Youngman
Signed on: 08/15/2023 1:39:39 PM

American Arbitration Association
New York No-Fault Arbitration Tribunal

In the Matter of the Arbitration between:

| | | |
|---|---|---|
| Eclipse Medical Imaging PC / Fallen Califf (Applicant) | AAA Case No. | 17-22-1279-8144 |
| | Applicant's File No. | 170.149 |
| - and - | Insurer's Claim File No. | 3325C615R |
| State Farm Mutual Automobile Insurance Company (Respondent) | NAIC No. | 25178 |

## ARBITRATION AWARD

I, Stacy Presser, the undersigned arbitrator, designated by the American Arbitration Association pursuant to the Rules for New York State No-Fault Arbitration, adopted pursuant to regulations promulgated by the Superintendent of Insurance, having been duly sworn, and having heard the proofs and allegations of the parties make the following **AWARD:**

Injured Person(s) hereinafter referred to as: Assignor

1. Hearing(s) held on            08/11/2023
   Declared closed by the arbitrator on    08/11/2023

   Allen Tsirelman, Esq. from Tsirelman Law Firm PLLC participated virtually for the Applicant

   Tara Gutman, Esq. from Goldberg, Miller and Rubin, P.C. participated virtually for the Respondent

2. The amount claimed in the Arbitration Request, **$966.54**, was NOT AMENDED at the oral hearing.
   Stipulations WERE NOT made by the parties regarding the issues to be determined.

3. Summary of Issues in Dispute

   Applicant is seeking reimbursement for Magnetic Resonance Imaging ("MRI") of the right ankle, undergone on September 14, 2021 by the Assignor, a 36-year-old female driver who sustained injuries in a motor vehicle accident on August 28, 2021.

   Respondent denied the claim based upon the failure to supply requested verification within 120 days.

4. Findings, Conclusions, and Basis Therefor

The decision below is based upon a review of the documents that have been submitted electronically, as well as the arguments of counsel and/or representatives appearing via video conference on behalf of the parties.

The Applicant has established a prima facie entitlement to reimbursement, as a matter of law, by submitting evidentiary proof that the prescribed statutory billing forms, setting forth the fact and the amount of the loss sustained, have been mailed and received, and that payment of no-fault benefits is overdue. See, Mary Immaculate Hospital v. Allstate Ins. Co., 5 A.D. 3d 742 (2004).

Respondent failed to establish the validity of its 120-day defense. Applicant's bill was received on November 01, 2021. On November 10, 2021, Respondent placed Applicant on notice that the claim would be delayed for additional verification in the form of its Examination Under Oath ("EUO"), scheduled to be held on December 15, 2021. Said EUO was ultimately conducted on May 26, 2022, following numerous adjournments. Subsequently, on June 02, 2022 and July 05, 2022 (and thereafter), Respondent issued to Applicant requests for post-EUO verification regarding its ownership and operation. According to Respondent, Applicant never provided a complete response. On October 05, 2022, nearly a year following receipt of Applicant's bill, Respondent denied the claim, stating in its NF-10 "[Applicant] has failed to submit verification documentation requested on June 02, 2022 and July 05, 2022 for the referenced claims within the prescribed 120 days period, therefore, benefits are denied."

Pursuant to 11 NYCRR 65-3.5(o), "An applicant from whom verification is requested shall, within 120 calendar days from the date of the initial request for verification, submit all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply. The insurer shall advise the applicant in the verification request that the insurer may deny the claim if the applicant does not provide within 120 calendar days from the date of the initial request either all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply. *This subdivision shall not apply to a prescribed form (NF-Form) as set forth in Appendix 13 of this Title, medical examination request, or examination under oath request.*" [Emphasis added]

11 NYCRR 65-3.5(o) specifically excludes EUOs from its purview. The document requests at issue herein stemmed directly from an EUO and, therefore, fall outside of the 120-day rule. In any event, the Court in Neptune Med. Care, P.C. v. Ameriprise Auto & Home Ins., 48 Misc. 3d 139A (2015), Appellate Term, 2d Department, found that "[E]ven if defendant had tolled the 30-day period within which it was required to pay or deny the bills at issue, by timely requesting verification pursuant to 11 NYCRR 65-3.8(a)…the Regulations do not provide that such a toll grants an insurer additional opportunities to make requests for verification that would otherwise be untimely." Thus, Respondent's request for post-EUO verification and its denial based upon the 120-day rule are nullities.

"No-fault benefits are overdue if not paid within 30 calendar days after the insurer receives proof of claim, which shall include verification of all of the relevant

information requested pursuant to section 65-3.5 of this Subpart. *In the case of an examination under oath or a medical examination, the verification is deemed to have been received by the insurer on the day the examination was performed.*" [Emphasis added] See, 11 NYCRR 65-3.8(a). Applicant's claim is overdue.

Accordingly, for the reasons delineated above, I find in favor of the Applicant and direct the Respondent to issue reimbursement in full, plus interest, an attorney's fee and the arbitration filing fee, as outlined in Sections A through D below.

This decision is in full disposition of all claims for No-Fault benefits presently before this Arbitrator.

5. Optional imposition of administrative costs on Applicant.
   Applicable for arbitration requests filed on and after March 1, 2002.

   I do NOT impose the administrative costs of arbitration to the applicant, in the amount established for the current calendar year by the Designated Organization.

6. **I find as follows with regard to the policy issues before me:**
   ☐ The policy was not in force on the date of the accident
   ☐ The applicant was excluded under policy conditions or exclusions
   ☐ The applicant violated policy conditions, resulting in exclusion from coverage
   ☐ The applicant was not an "eligible injured person"
   ☐ The conditions for MVAIC eligibility were not met
   ☐ The injured person was not a "qualified person" (under the MVAIC)
   ☐ The applicant's injuries didn't arise out of the "use or operation" of a motor vehicle
   ☐ The respondent is not subject to the jurisdiction of the New York No-Fault arbitration forum

Accordingly, the applicant is AWARDED the following:

A.

| Medical | | From/To | Claim Amount | Status |
|---------|---|---------|--------------|--------|
| Fallen Califf | Eclipse Medical Imaging PC | 09/14/21 - 09/14/21 | $966.54 | Awarded: $966.54 |
| Total | | | $966.54 | Awarded: $966.54 |

B.  The insurer shall also compute and pay the applicant interest set forth below. 12/22/2022 is the date that interest shall accrue from. This is a relevant date only to the extent set forth below.

Interest on the above-awarded amount shall be computed and paid at a rate of two percent per month, calculated on a pro rata basis using a 30-day month, commencing as of the date reflected above, per 11 NYCRR 65-3.9.

C.  Attorney's Fees

The insurer shall also pay the applicant for attorney's fees as set forth below

Respondent shall pay Applicant an attorney's fee equal to 20% of the total amount of first-party benefits awarded, plus interest thereon, subject to a maximum fee of $1,360, per 11 NYCRR 65-4.6.

D.  The respondent shall also pay the applicant forty dollars ($40) to reimburse the applicant for the fee paid to the Designated Organization, unless the fee was previously returned pursuant to an earlier award.

This award is in full settlement of all no-fault benefit claims submitted to this arbitrator.

State of NY
SS :
County of New York (NY)

I, Stacy Presser, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my award.

08/15/2023
(Dated)

*Stacy A Presser*

Stacy Presser

## IMPORTANT NOTICE

*This award is payable within 30 calendar days of the date of transmittal of award to parties.*

*This award is final and binding unless modified or vacated by a master arbitrator. Insurance Department Regulation No. 68 (11 NYCRR 65-4.10) contains time limits and grounds upon which this award may be appealed to a master arbitrator. An appeal to a master arbitrator*

*must be made within 21 days after the mailing of this award. All insurers have copies of the regulation. Applicants may obtain a copy from the Insurance Department.*

**ELECTRONIC SIGNATURE**

**Document Name:** Final Award Form
**Unique Modria Document ID:**
46c306f7b7df5689d17e7dfc80b2b204

**Electronically Signed**

Your name: Stacy Presser
Signed on: 08/15/2023 12:57:15 PM

American Arbitration Association
New York No-Fault Arbitration Tribunal

In the Matter of the Arbitration between:

| | | |
|---|---|---|
| Eclipse Medical Imaging PC / Nikoloz Abazadze (Applicant) | AAA Case No. | 17-22-1279-1819 |
| | Applicant's File No. | 170.231 |
| | Insurer's Claim File No. | 32-25Z0-67F |
| - and - | NAIC No. | 25178 |
| State Farm Mutual Automobile Insurance Company (Respondent) | | |

### ARBITRATION AWARD

I, Pamela Hirschhorn, the undersigned arbitrator, designated by the American Arbitration Association pursuant to the Rules for New York State No-Fault Arbitration, adopted pursuant to regulations promulgated by the Superintendent of Insurance, having been duly sworn, and having heard the proofs and allegations of the parties make the following **AWARD:**

Injured Person(s) hereinafter referred to as: Injured Person

1.  Hearing(s) held on                               08/22/2023
    Declared closed by the arbitrator on    08/22/2023

    Allen Tsirelman, Esq. from Tsirelman Law Firm PLLC participated virtually for the Applicant

    Ann Henriksen, Esq. from Goldberg, Miller and Rubin, P.C. participated virtually for the Respondent

2.  The amount claimed in the Arbitration Request, **$1,178.93**, was NOT AMENDED at the oral hearing.
    Stipulations WERE NOT made by the parties regarding the issues to be determined.

3.  Summary of Issues in Dispute

    The injured person was a 54-year-old male who was involved in the subject motor vehicle accident of October 14, 2021. The claim is for x-rays and MRI performed October 19, 2021, through November 30, 2021. The issue is whether the respondent established its 120-day defense in that the

post-EUO verification requested was allegedly not provided within 120 calendar days from the date of the issuance of the initial post-EUO verification request.

4. Findings, Conclusions, and Basis Therefor

The injured person was a 54-year-old male who was involved in the subject motor vehicle accident of October 14, 2021.

The claim is for x-rays and MRI performed October 19, 2021, through November 30, 2021.

The claim was denied based upon a 120-day defense in that the post-EUO verification requested by respondent was allegedly not complied with within 120 calendar days from the date of the issuance of the initial post-EUO verification request. See, 11 NYCRR 65-3.8 (b) (3).

It is undisputed that on May 26, 2022, Dr. Baldassare appeared at the scheduled EUO and provided testimony as the owner of Eclipse Medical Imaging.

Respondent contends that the information requested post-EUO is pertinent to the ownership and operation of Eclipse Medical Imaging.

Respondent acknowledged that the applicant provided a response. However, the applicant's response was deemed a "partial" response. Although the applicant's response referenced that there were no written records evidencing their client's ownership of radiological equipment, including MRI, CT, and x-ray equipment/machines, respondent asserted that Dr. Baldassare testified at the EUO that the company held documentation demonstrating that it owned the equipment.

The respondent submitted an SIU affidavit from Valerie Williams.

Ms. Williams stated that based on the investigation performed, there were questions as to the appropriateness, necessity, and legitimacy of the services which justified the need for additional verification.

Ms. Williams also stated that there are questions as to whether Dr. Baldassare truly owns and controls Eclipse or if Eclipse is owned or controlled by laypersons in violation of New York law.

Ms. Williams stated that there are questions regarding whether all the testing billed by Eclipse was ordered by a physician and whether the testing was medically necessary.

Ms. Williams noted that Dr. Baldassare appeared for an EUO on behalf of Eclipse.

Ms. Williams stated that as to the start-up of Eclipse, Dr. Baldassare testified that someone named Robert Maks informed him there was an empty radiology business with MRI, CT, and X-ray equipment and that the "people who ran it had left." Ms. Williams stated that the former radiology business was Kensington Radiology Group, P.C.

Ms. Williams noted that at the EUO, although Dr. Baldassare worked for Kensington Radiology, he stated that he did not know who owned the business. Additionally, when Robert Maks presented him with the opportunity of the empty radiology practice, Dr. Baldassare stated that he did not know that Kensington Radiology was the entity that vacated the location.

Ms. Williams stated that during the EUO, Dr. Baldassare testified that Robert Maks presented him with a turnkey operation with equipment and staff (e.g. management, technicians, and billing staff). Dr. Baldassare continued to serve as the reading radiologist, doing so from his residence in New Jersey. Ms. Williams stated that Dr. Baldassare did not pay any of any start-up costs for Eclipse.

Ms. Williams stated that Dr. Baldassare does not have any involvement in generating business, and has limited involvement in operating the business.

Ms. Williams stated that Dr. Baldassare does not appear involved in supervising employees, dealing with day-to-day operations of the business, dealing with marketing and referral sources, billing, revenue, accounts receivable, collections, or hiring collections counsel. Ms. Williams stated that Dr. Baldassare's involvement appears limited to "purportedly" interpreting radiology studies from his residence in New Jersey.

Ms. Williams stated that during the EUO, Dr. Baldassare testified that he was the only person that signed checks of Eclipse. However, Ms. Williams stated that it appears that a rubberstamp with Dr. Baldassare's signature was used to sign/endorse most of the checks produced to date.

Ms. Williams stated that among the other documents that Eclipse failed to produce are (i) copies of lease agreements, in their entirety, from January 2017 to present,; (ii) copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through present; (iii) copies of all payments to Robert and Yelena Maks from January 1, 2019 to present,; (iv) tax returns for tax years 2018 and 2021, and (v) copies of all recordings reflecting compensation, including salary and bonuses, paid to Dr. Baldassare.

Ms. Williams stated that State Farm's verification requests, including the sought documents and information are reasonable and necessary to determine whether Eclipse is eligible to collect No-Fault Benefits pursuant to 11 N.Y.C.R.R. §65-3.16(a)(12) and Insurance Law §5102(a)(1).

In the prior award of *Eclipse Medical Imaging, PC & State Farm Fire & Cas. Co.,* AAA Case no. 17-22-1279-6902 (Sandra Adelson, Arb.), Arbitrator Adelson found that the issues presented in the arbitration record were repeatedly asserted in other arbitrations involving applicant, Eclipse Medical Imaging PC. Arbitrator Adelson noted that in *Eclipse Medical Imaging PC & State Farm Mut. Ins. Co.,* AAA Case No. 17-22-1279-6757, Arbitrator Ioannis Gloumis found that the applicant had provided sufficient

information to verify the claim, had objected to those items that were improperly requested, and that the outstanding items were not pertinent to the processing of the claim.

Arbitrator Adelson stated that from a review of the decision of Arbitrator Gloumis, it was clear that the same post-EUO additional verification requests (6/2/22, 7/5/22, 9/19/22) and applicant's responses (8/27/22 and 10/19/22) were also submitted in the case before her.

Arbitrator Adelson noted that Arbitrator Gloumis found as follows:

*"Respondent states that it initially delayed the claims pending the examination under oath ("EUO") of Applicant, which was conducted on May 26, 2022; post-EUO verification requests were issued on June 2, 2022 and July 5, 2022 by Respondent's attorneys; and the claims were subsequently denied on October 5, 2022 based upon the defense that Applicant failed to comply with verification requests within 120 days of the initial requests.*

*The evidence shows that Dr. Jack Baldassare, Applicant's owner, appeared and testified at an EUO that was conducted by Respondent on May 26, 2022.*

*In its arbitration brief, Respondent represented that the following verification was outstanding at the time that the claims were denied:*

*Written records evidencing Applicant's ownership of radiological equipment, including MRI, CT, and x-ray equipment/machines;*

*Bank records, bookkeeping records, and financial statements held by Applicant's accountants for years 2019 to present;*

*The EUO transcript from the EUO conducted by Liberty Mutual Insurance Company; and,*

*The 2021 tax return.*

*During the arbitration hearing, Applicant's attorney argued that the doctrine of Collateral Estoppel precludes Respondent from proceeding to arbitration on the very same issues between the same parties regarding the same post-EUO verification as the issues have already been decided in favor of Applicant in AAA Case Numbers 17-22-1279-8187 and 17-22-1279-7940. The parties stipulated during the hearing that these arbitrations involved the same issues and the same post-EUO verification and included the same evidence.*

*In <u>AAA Case Number 17-22-1279-8187</u>, Arbitrator Richard Kokel, Esq. held the following, in relevant part:*

*"...According to the evidentiary record, the Respondent received the Applicant's billing claim forms and thereafter scheduled an Examination under Oath of the Applicant provider. This Examination was conducted on May 26, 2022, and Dr. Baldassare, M.D. was deposed. He is the owner of the Applicant imaging facility. Subsequent to the completion of the Examination under Oath, the Respondent sent their first post-examination request. Therein, they sought:*

*Copies of all records evidencing your ownership of MRI machines, CT scanners/ machines, and x-rays; Copies of payments used for the maintenance, calibration, and inspection of MRI machines, CT scanners/ machines, and x-rays; Copies of all lease agreements from January 2017 to the present; Copies of all rent payments from January 2019 to the present; Copies of all agreements with Kensington Realty; Copies of all payments to Kensington Realty; Copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through the present, including but not limited to quick book records and records reflecting receipts and disbursements; Copies of all bank records, including but not limited to cancelled checks and statements from January 1, 2019 through the present; Copies of payments to car service providers and/or copies of payments for patient transportation to and from the facility; Copies of all payments to Robert Maks from January 1, 2019 to the present; Copies of all payments to Yelena Maks from January 1, 2019 to the present; Copies of transcripts of Eclipse for EUOs taken by GEICO, Allstate and Liberty Mutual; Copies of all*

*records reflecting compensation, including salary and bonuses, paid to Dr. Baldassare; and, Tax returns for tax year 2018, 2019, 2020 and 2021.*

*The Applicant, on August 27, 2022, responded to the Respondent's requests. They provided a large number of documents that included: W-2 wage information; tax returns (2019 & 2020 & and a notation that 2021 return was not yet filed); checks regarding rent, maintenance payments, patient transportation; and, the lease for the Applicant's premises. The Applicant also informed the Respondent that some of the requested information did not exist or could not be found. They also objected to some requests as being onerous and/or improper. The Applicant also argued, notwithstanding their response, that the verification requests were untimely as per the requirements of 11 NYCRR 65-3.5.*

*The Respondent, on September 19, 2022, responded to the Applicant's August 27th response. They stated that the Applicant's partial response was insufficient and that the ongoing requests were reasonable and necessary to assess whether Eclipse is controlled by Dr. Baldassare.*

*My review of the Respondent's September 19 letter reveals that many of the requests were for information that the Applicant said did not exist or was unable to be located. The Respondent, essentially, is arguing with the Applicant, i.e., disputing the veracity of their response. The other point was that the Applicant refused to provide transcripts of the Examination under Oath taken by Liberty Mutual. This, to the undersigned, appears to be an improper request for a legal document that involves a party (Liberty Mutual) that is not a party to the within arbitration. And in my view, the only reason for obtaining this other transcript, would be for the Respondent to compare Dr. Baldassare's answers line by line with the Examination taken on May 26, 2022. Apparently, the Respondent was investigating the Applicant due to their suspicion that they (the Applicant facility) were controlled by a layperson, i.e., not a medical doctor charged with overseeing patient care and the medical staff as required by New York State law. I find that the Applicant substantially complied with the Respondent's verification requests. All requests were responded to, but for those that were deemed unnecessary, irrelevant, or unduly burdensome. It appears, to the undersigned, that the Respondent was seeking materials that might lead to a 'founded belief' that the Applicant facility was fraudulently incorporated (see <u>State Farm Mutual Auto Ins Co., v. Mallela,</u> et al.*

*(Mallela III), 4 NY 3d 313, 321, 794 N.Y.S. 2d 700 (2005). The record is bereft of any evidence to support such a belief, other than the Respondent's supposition. Based on the foregoing, the Respondent's defense has not been sustained…"*

Arbitrator Adelson noted that in <u>AAA Case Number 17-22-1279-7940</u>, Arbitrator Kathleen Sweeney, Esq. found as follows:

*"…there were numerous follow up letters sent and responses received before the denial and even at least one after the denial on 10/19/22. The responses contained strong objections to the materials being requested. The nature of the requests is Mallella based as State Farm has asserted through its SIU investigators affidavit and attorneys brief that State Farm has an ongoing investigation regarding the Applicant which is also supported by an affidavit by another Dr. and a Federal Rico action…*

*Upon review of the evidence, including the facts disclosed and the applicant's responses to verification requests, the respondent has presented "special circumstances" supporting its need for the documentation requested. Under the circumstances present here, I conclude that Respondent's remaining verification requests do not fly in the face of the no-fault scheme, nor do the requests in this case present a concern for the type of carrier "abuse" of the verification process which the Courts have recognized and attempted to avoid. However, Respondent's denial cannot be sustained because it fails to acknowledge the September response which was within 120 days. Respondent acknowledged that letter from Applicant and then summarily denied the bills. The Applicant has complied under protest with objections that at face value appear fair. The Applicant is entitled to be paid. This decision is in full disposition of all claims for No-fault benefits presently before this Arbitrator…"*

Arbitrator Adelson concurred with the prior decisions of the above referenced arbitrators, finding that the applicant substantially complied with the post-EUO verification requests at issue.

This arbitrator notes that several other arbitrators also found that the applicant substantially complied with respondent's post-EUO verification

requests. See, AAA Case no. 17-22-1279-6674 (Maureen Callahan, Arb.); AAA Case no. 17-22-1279-5018 (Josh Youngman, Arb.).

This arbitrator has considered the evidence and concurs with the prior decisions of the above referenced arbitrators. In the prior cases, the same post-EUO verification requests were issued, and the same responses were provided by the applicant. In the prior cases, the arbitrators performed an exhaustive review of the evidence and found that the applicant substantially complied with the respondent's post-EUO verification requests. Accordingly, since the applicant substantially complied with respondent's post-EUO verification requests, respondent's 120-day defense was not established.

The applicant is awarded reimbursement for the within services. Attorney's fees shall be calculated pursuant to 11 NYCRR 65-4.6 (d). Interest shall be calculated from December 19, 2022, which is the AR1 filing date. See, 11 NYCRR 65-3.9 (c).

5. Optional imposition of administrative costs on Applicant.
Applicable for arbitration requests filed on and after March 1, 2002.

I do NOT impose the administrative costs of arbitration to the applicant, in the amount established for the current calendar year by the Designated Organization.

6. **I find as follows with regard to the policy issues before me:**
   - ☐ The policy was not in force on the date of the accident
   - ☐ The applicant was excluded under policy conditions or exclusions
   - ☐ The applicant violated policy conditions, resulting in exclusion from coverage
   - ☐ The applicant was not an "eligible injured person"
   - ☐ The conditions for MVAIC eligibility were not met
   - ☐ The injured person was not a "qualified person" (under the MVAIC)
   - ☐ The applicant's injuries didn't arise out of the "use or operation" of a motor vehicle
   - ☐ The respondent is not subject to the jurisdiction of the New York No-Fault arbitration forum

Accordingly, the applicant is AWARDED the following:

A.

| Medical | | From/To | Claim Amount | Status |
|---|---|---|---|---|
| Nikoloz Abazadze | Eclipse Medical Imaging PC | 10/19/21 - 10/19/21 | $175.73 | Awarded: $175.73 |
| Nikoloz Abazadze | Eclipse Medical Imaging PC | 11/30/21 - 11/30/21 | $1,003.20 | Awarded: $1,003.20 |
| Total | | | $1,178.93 | Awarded: $1,178.93 |

B.  The insurer shall also compute and pay the applicant interest set forth below. 12/19/2022 is the date that interest shall accrue from. This is a relevant date only to the extent set forth below.

See, the within award.

C.  Attorney's Fees

The insurer shall also pay the applicant for attorney's fees as set forth below

See, the within award.

D.  The respondent shall also pay the applicant forty dollars ($40) to reimburse the applicant for the fee paid to the Designated Organization, unless the fee was previously returned pursuant to an earlier award.

This award is in full settlement of all no-fault benefit claims submitted to this arbitrator.

State of NY
SS :
County of Nassau

I, Pamela Hirschhorn, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my award.

08/25/2023
(Dated)

*Pamela H. Hirschhorn*

Pamela Hirschhorn

## IMPORTANT NOTICE

*This award is payable within 30 calendar days of the date of transmittal of award to parties.*

*This award is final and binding unless modified or vacated by a master arbitrator. Insurance Department Regulation No. 68 (11 NYCRR 65-4.10) contains time limits and grounds upon which this award may be appealed to a master arbitrator. An appeal to a master arbitrator must be made within 21 days after the mailing of this award. All insurers have copies of the regulation. Applicants may obtain a copy from the Insurance Department.*

**ELECTRONIC SIGNATURE**

**Document Name:** Final Award Form
**Unique Modria Document ID:**
5159a18256f19b89031f5d950a0d360d

**Electronically Signed**

Your name: Pamela Hirschhorn
Signed on: 08/25/2023 9:49:12 AM

American Arbitration Association
New York No-Fault Arbitration Tribunal

In the Matter of the Arbitration between:

| | | |
|---|---|---|
| Eclipse Medical Imaging PC / Martina Tiaxcantitla<br>(Applicant) | AAA Case No. | 17-22-1279-9141 |
| | Applicant's File No. | 170.274 |
| - and - | Insurer's Claim File No. | 32-26J7-05H |
| State Farm Mutual Automobile Insurance Company<br>(Respondent) | NAIC No. | 25178 |

### ARBITRATION AWARD

I, Matthew Brew, the undersigned arbitrator, designated by the American Arbitration Association pursuant to the Rules for New York State No-Fault Arbitration, adopted pursuant to regulations promulgated by the Superintendent of Insurance, having been duly sworn, and having heard the proofs and allegations of the parties make the following **AWARD:**

Injured Person(s) hereinafter referred to as: injured party or IP

1. Hearing(s) held on                              08/07/2023
   Declared closed by the arbitrator on      08/07/2023

   Allen Tsirelman, Esq. from Tsirelman Law Firm PLLC participated virtually for the **Applicant**

   Ann Henriksen, Esq. from Goldberg, Miller and Rubin, P.C. participated virtually for **the Respondent**

2. The amount claimed in the Arbitration Request, **$3,662.05**, was NOT AMENDED at the oral hearing.
   Stipulations WERE made by the parties regarding the issues to be determined.

   **The parties stipulated to Applicant's prima facie case and to the timeliness of Respondent's denial.**

   **The parties further stipulated that should Applicant prevail, interest would accrue from the filing date of December 23, 2022.**

3. Summary of Issues in Dispute

Applicants' assignor, hereinafter referred to as the Injured Party or "IP", is described as a then 38-yr-old female passenger of a motor vehicle involved in an accident on October 25, 2021. Subsequent to the loss, the IP sought various treatments in regard to injuries claimed to have resulted from the underlying MVA.

In this case, Applicant is seeking reimbursement in the amount of $3662.05 in regard to its bills for a left shoulder MRI ($966.54) performed on November 8, 2021, right shoulder MRI on November 16, 2021 ($966.54), and lumbar ($1003.20) and cervical ($725.77) MRIs performed on November 29, 2021.

Respondent maintains the time to pay or deny same was tolled pending its request for verification. The claims were ultimately denied on October 5, 2022 based on Applicant's purported failure to provide the requested verification within 120 days.

Applicant argues that it did timely and properly respond to Respondent's verification request. At a minimum, counsel argues that Applicant's response constituted "substantial compliance" thereby rendering Respondent's denial invalid.

I note that Respondent did not submit any substantive evidence in support of any specific fee schedule argument. Nor did Respondent raise any fee issues during the hearing.

***Thus, the issue to be decided in this case is whether Respondent established and sustained its defensed based on Applicant's purported failure to provide a complete and proper response to its verification request within 120 days?***

4.  Findings, Conclusions, and Basis Therefor

Upon comparing all the relevant evidence submitted by the parties as contained in the electronic file maintained by the American Arbitration Association, and in consideration of the oral arguments presented by each party, ***I find in favor of Applicant and its claim for reimbursement in the amount of $3662.05 is granted in its entirety.***

The parties stipulated Applicant's prima facie case and to the timeliness of Respondent's denial. Thus, the burden shifted to Respondent to rebut the presumption of medical necessity that attached to Applicant's claim and to establish its stated defense(s).

11 NYCRR 65-3.5 (b) provides that, subsequent to the receipt of one or more of the completed verification forms, any additional verification required by the insurer to establish proof of claim shall be requested within 15 business days of receipt of the prescribed verification forms.

Further, 11 NYCRR §65-3.6 (b) provides that, at a minimum, if any requested verification has not been supplied to the insurer 30 calendar days after the original request, the insurer shall, within ten calendar days, follow-up with the party from whom

the verification was originally requested, either by a telephone call, properly documented in the file, or by mail. At the same time the insurer shall inform the Applicant and such person's attorney of the reason(s) why the claim is delayed by identifying in writing the missing verification and the party from whom it was requested.

Moreover, 11 NYCRR §65-3.5(o) provides that, "An applicant from whom verification is requested shall, within 120 calendar days from the date of the initial request for verification, submit all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply. The insurer shall advise the applicant in the verification request that the insurer may deny the claim if the applicant does not provide within 120 calendar days from the date of the initial request either all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply".

Finally, 11 NYCRR § 65-3.8 (b) (3) provides a warning that "An insurer may issue a denial if, more than 120 calendar days after the initial request for verification, the applicant has not submitted all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply, provided that the verification request so advised the applicant as required in section 65-3.5(o) of this Subpart".

**Background**

The present case involves what appears to be an ongoing dispute between the parties pertaining to Respondent's request for "post-EUO verification".

Respondent sets forth its basis as to why it believes Applicant is or may not be eligible to receive no fault reimbursement. In part, Respondent maintains that there are questions as to whether the purported owner (Dr. Baldassare) actually owns Eclipse Medical. Respondent argues that it appears that "lay persons" are the de facto owners which would be improper under New York no fault law.

Dr. Baldassare appeared and testified at an examination under oath on May 26, 2022. Subsequent to his appearance, he submitted corrections to his prior testimony in affidavit form.

Respondent claims that Dr. Baldassare failed to bring certain documentation to the EUO as demanded in the notice. Respondent further maintains that Dr. Baldassare's testimony and subsequent corrections raise additional concerns regarding the legitimacy and proper ownership of Applicant.

Thus, State Farm sent correspondence seeking further verification following Dr. Baldassare's EUO. The documents are dated June 2, July 5, September 19, September 27, October 19 and November 11, 2022. Respondent further submits affidavits, a written brief, and other documentary evidence in support of its demand for same.

Applicant provided responses while also raising several objections as to the relevancy of the demanded verification and Respondent's entitlement to same. Applicant further argues that at a minimum its responses constitute "substantial compliance" with State Farm's post-EUO requests.

Notably, several prior arbitration awards have been rendered in favor of Applicant in regard to the very issues presented in the present claim.

---

***Based upon a <u>thorough review</u> of the submitted record, and in contemplation of the arguments presented by both sides during the hearing, I ultimately found that Respondent failed to sustain its 120 day defense in the present case.***

In support of its position, Respondent relies in part upon the EUO materials (including scheduling letters and the transcript), post-EUO verification requests, responses received from Applicant, an "affidavit of merit" from Project Specialist/SIU Investigator Valerie Williams of State Farm outlining Respondent's basis for its requests, an affidavit from Dr. Arkam Rehman, MD, counsel's written brief which in part references the use of forensic accounting in State Farm's investigation, and the arguments of counsel.

In support of its position, Applicant relies on several prior arbitration awards, copies of said responses, and the arguments of its counsel.

No issues were raised as to the timeliness of any of the specific requests, the scheduling letters themselves or the ultimate denials. Rather, the parties articulated that the only issue in this case is whether Respondent's 120 day denial should be sustained.

Reference is initially made to the decision from Arbitrator Maureen Callahan *In the Matter of the Arbitration between Eclipse Medical Imaging PC and State Farm Mutual Automobile Insurance Company, 17-22-1279-6694.* In that case, Arbitrator Callahan held in part that:

> *Post EUO verification requests were dispatched. They 6/2/22 request letter was sent by respondent. This letter requested things such as: copies of all records evidencing your ownership of MRI machines, CT scanners/ machines, and x-rays; copies of payments used for the maintenance, calibration, and inspection of MRI machines, CT scanners/ machines, and x-rays, copies of all lease agreements from January 2017 to the present; copies of all rent payments from January 2019 to the present; - copies of all agreements with Kensington Realty; copies of all payments to Kensington Realty; copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through the present, including but not limited to quick book records and records reflecting receipts and disbursements; copies of all bank records, including but not limited to cancelled checks and statements from January 1, 2019 through the present; Copies of payments to car service providers and/or copies of payments for patient transportation to and from the facility; copies of all payments to Robert Maks*

*from January 1, 2019 to the present; Copies of all payments to Yelena Maks from January 1, 2019 to the present copies of transcripts of Eclipse for EUOs taken by GEICO, Allstate and Liberty Mutual; copies of all records reflecting compensation, including salary and bonuses, paid to Dr. Baldassare; and Tax returns for tax year 2018, 2019, 2020 and 2021. On 7/5/22 a second verification request was dispatched by respondent asking for the same things.*

*Applicant asserts they responded at page 152/195 of applicant's submission, applicant's response letter of 8/27/22. Same is arguably responsive. Respondent argues that certain items were still outstanding such as ownership of radiology equipment, bookkeeping records, etc. Inquiry was made as to why these items were necessary to process this claim for the shoulder MRI. Respondent advises that they were looking into a fraudulent scheme. Applicant argues that Dr. Rehman had nothing to do with the Eclipse, that this is a fishing expedition. He argues that to other arbitrators, arbitrators Sweeney and Kogel in 17 - 22 - 1279 - 2345 and 17 - 22 - 1279 - 8187 respectively, have already addressed this. In these decisions, applicant argues that the arbitrators have found that there was substantial compliance to complete the verification process and everything was provided except for irrelevant material. Applicant argues that "the No-Fault Law and its regulations should be interpreted to promote the expeditious handling of verification requests and prompt claim resolution". The applicant is correct in asserting this proposition. Infinity Health Products, Ltd. v. Eveready Ins. Co., 67 A.D.3d 862, 890 N.Y.S.2d 545 (2d Dept. 2009).*

*I have listened to the arguments and evaluated the evidence. The respondent's handling of this case, namely the EUO scheduling letters, were initially improper for the logic stated above regarding same. Nonetheless, this claim was denied on 10/5/22 for failure to provide post EUO verification. I find that there has been substantial compliance. This claim ought be paid. Respondent's arguments to the contrary are not persuasive.*

Further references is made to *several other cases* uploaded by Applicant's counsel rendered in favor of the provider on the relevant issues.

I also note recent decisions from Arbitrators Wendy Bishop (17-22-1279-7932), Pamela Hirshorn (17-22-1279-1819 and 17-22-1279-6294), Josh Youngman (17-22-1279-5018 and 17-22-1279-7787) and Stacy Presser (17-22-1279-8144). All of these cases involved the same parties and same 120 day denial/verification issues (although some also stand for the proposition that post-EUO verification requests are not subject to the 120 day rule).

As detailed in Arbitrator Youngman's decisions (see specifically 17-22-1279-5018), there has been much communication between the parties in regard to the verification responses that were provided. In part, Arbitrator Youngman noted that:

*In the instant matter, the evidence shows the respondent conducted an EUO of the listed owner of the applicant, Dr. Baldassare, on May 26, 2022. The evidence*

*further shows the respondent requested post-EUO verification of the claim per letters dated April 29, 2022 and June 2, 2022.*

*The April 29, 2022 and June 2, 2022 letters request numerous documents from the applicant, such as:*
   *Copies of records showing ownership of the MRI machines*
   *Copies of lease agreements from January 2017 to present*
   *Copies of payments for maintenance/calibration/inspection of the MRI machines, CT scanners and X-rays*
   *Copies of rent payments Copies of agreements with Kensington Realty*
   *Copies of payments to Kensington Realty*
   *Copies of the "general ledger and/or bookkeeping records from January 2019 through the present"*
   *Copies of all bank records from January 2019 to present*
   *Copies of payments to car services Copies of payments to two individuals from January 1, 2019 to present*
   *Copies of all records reflecting compensation paid to Dr. Baldassare Tax returns for 2018, 2019, 2020 and 2021*

*Further, the letters state the aforementioned documents are required for the following reason:*

*The requested documents and information are necessary for numerous reasons, including but not limited to, (i) to evaluate the corporate structure of Eclipse and to verify that Eclipse is properly owned and controlled by a licensed physician; (ii) to verify the necessity and appropriateness of the services billed for including whether the testing services were staggered in a manner to overbill, and (iii) to evaluate whether there were kickbacks, fee splitting and/or financial considerations that influenced patient care...*

*Further, in their August 27, 2022 response, the applicant provides numerous documents in response, including:*
   *Checks for payments for the maintenance of the radiological equipment from June 2020 - May 2022*
   *The lease*
   *Monthly rent checks from May 2020 - June 2022*
   *All checks that could be located showing payment to Kensington Realty*
   *Checks and logs for patient transportation from June 2020 - June 2022*
   *W-2's for the two (2) individuals that the respondent requested copies of payments for W-2 Wage and Tax Statements for 2019, 2020 and 2021*
   *Tax returns from 2019 and 2020, stating the 2021 return was on extension.*

*Further, in their August 27, 2022 response, the applicant also objected to the respondent's remaining demands*

Arbitrator Youngman continued by quoting Arbitrator Richard Kokel's decision *In the Matter of the Arbitration between Eclipse Medical Imaging PC and State Farm Mutual*

*Automobile Ins. Co., 17-22-1279-8187.* In that case, Arbitrator Kokel provided in part that:

> The Applicant, on August 27, 2022 responded to the Respondent's requests. They provided a large number of documents that included: W-2 wage information; tax returns (2019 & 2020 & and a notation that 2021 return was not yet filed); checks regarding rent, maintenance payments, patient transportation; and, the lease for the Applicant's premises. The Applicant also informed the Respondent that some of the requested information did not exist or could not be found. They also objected to some requests as being onerous and/or improper. The Applicant also argued, notwithstanding their response, that the verification requests were untimely as per the requirements of 11 NYCRR 65-3.5.

> The Respondent, on September 19, 2022, responded to the Applicant's August 27th response. They stated that the Applicant's partial response was insufficient and that the ongoing requests were reasonable and necessary to assess whether Eclipse is controlled by Dr. Baldassare.

> My review of the Respondent's September 19 letter reveals that many of the requests were for information that the Applicant said did not exist or was unable to be located. The Respondent, essentially, is arguing with the Applicant, i.e., disputing the veracity of their response. The other point was that the Applicant refused to provide transcripts of the Examination under Oath taken by Liberty Mutual. This, to the undersigned, appears to be an improper request for a legal document that involves a party (Liberty Mutual) that is not a party to the within arbitration. And in my view, the only reason for obtaining this other transcript, would be for the Respondent to compare Dr. Baldassare's answers line by line with the Examination taken on May 26, 2022. Apparently, the Respondent was investigating the Applicant due to their suspicion that they (the Applicant facility) were controlled by a layperson, i.e., not a medical doctor charged with overseeing patient care and the medical staff as required by New York State law.

> I find that the Applicant substantially complied with the Respondent's verification requests. All requests were responded to, but for those that were deemed unnecessary, irrelevant or unduly burdensome. It appears, to the undersigned, that the Respondent was seeking materials that might lead to a 'founded belief' that the Applicant facility was fraudulently incorporated (see State Farm Mutual Auto Ins Co., v. Mallela, et al. (Mallela III), 4 NY 3d 313, 321, 794 N.Y.S. 2d 700 (2005). The record is bereft of any evidence to support such a belief, other than the Respondent's supposition.

> Based on the foregoing, the Respondent's defense has not been sustained. The Applicant's claim is thereby awarded.

Reference is further made to Arbitrator Ionnis Gloumis' decision *In the Matter of the Arbitration between Eclipse Medical Imaging PC and State Farm Mutual Automobile Ins. Co., 17-22-1279-6757* as cited by Arbitrator Youngman. In that case, Arbitrator Gloumis maintained that:

> *Respondent presented an arbitration brief with a summary of the post-EUO verification sought at the time of the denials and the summary of Respondent's investigation, the EUO transcript dated March 26, 2022, the affidavit of Jack Baldassare, M.D. dated October 17, 2022, the affidavit of Arkam Rehman, M.D. dated November 17, 2021, and the affidavit of Project Specialist and SIU Investigator Valerie Williams dated March 1, 2023. SIU Investigator Williams attested that Applicant failed to provide (i) copies of lease agreements, in their entirety, from January 2017 to present; (ii) copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through present; (iii) copies of all payments to Robert and Yelena Maks from January 1, 2019 to present; (iv) tax returns for tax years 2018 and 2021, and (v) copies of all recordings reflecting compensation, including salary and bonuses, paid to Dr. Baldassare. Project Specialist Williams explained Respondent's basis for the verification requests.*

> *Applicant provided written correspondence from Raymond Zuppa, Esq., the attorney that represented Applicant during the EUO and the post-EUO verification requests. The correspondence includes a list of the documents that were provided by Applicant and Applicant's objections to the remaining requests.*

> .....

> *The issue of whether Respondent was entitled to the documentation and information that remained in dispute which was requested as part of the post-EUO verification requests has already been decided in favor of Applicant in AAA Case Numbers 17-22-1279-8187 and 17-22-1279-7940. The very same issues have already been decided in the prior arbitrations. The awards issued in the prior arbitrations are decisive in the present arbitration, and both parties had had a full and fair opportunity to contest the issues in the prior arbitrations that are now controlling. The parties represented that the prior arbitrations involved the same issues and included the same evidence. Based upon the arbitration awards issued in AAA Case Numbers 17-22-1279-8187 and 17-22-1279-7940, the doctrines of Collateral Estoppel and Res Judicata preclude Respondent from proceeding to arbitration on the very same issues.*

---

During oral argument, counsel for Respondent argued that the responses provided by Applicant failed to demonstrate "substantial compliance". Counsel maintained that the information Applicant refuses to provided is necessary because Respondent is

questioning the true ownership of the provider. Therefore, "materials such as the general ledger and book- keeping records as well as who actually owns the equipment used to perform the diagnostic testing is crucial in terms of establishing ownership".

Applicant's counsel maintained that these arguments were already deemed insufficient by several arbitrators as set forth above. Counsel reiterated several of the salient points of the prior awards including Applicant's timely and proper objections to the information it provides the Respondent is not entitled to receive.

While I am not bound by the decisions of my colleagues, I found the reasoning contained within those awards to be persuasive in regard to the relevant issues in the present case. This is especially true for Arbitrator Gloumis' discussion of Res Judicata and Collateral Estoppel in his award.

Further, based upon my own thorough review of the actual record before me, I agree that at least in the present case it appears that Applicant "substantially complied" with Respondent's post-EUO verification demands.

***Therefore, based on the foregoing, I find in favor of Applicant and its claim for reimbursement in the amount of $3662.05 is granted in its entirety.***

This decision is in full disposition of all claims for No-Fault benefits submitted before this Arbitrator. Any further issues raised in the hearing record are held to be moot and/or waived insofar as not specifically raised at the time of hearing.

5. Optional imposition of administrative costs on Applicant.
   Applicable for arbitration requests filed on and after March 1, 2002.

   I do NOT impose the administrative costs of arbitration to the applicant, in the amount established for the current calendar year by the Designated Organization.

6. **I find as follows with regard to the policy issues before me:**
   ☐ The policy was not in force on the date of the accident
   ☐ The applicant was excluded under policy conditions or exclusions
   ☐ The applicant violated policy conditions, resulting in exclusion from coverage
   ☐ The applicant was not an "eligible injured person"
   ☐ The conditions for MVAIC eligibility were not met
   ☐ The injured person was not a "qualified person" (under the MVAIC)
   ☐ The applicant's injuries didn't arise out of the "use or operation" of a motor vehicle
   ☐ The respondent is not subject to the jurisdiction of the New York No-Fault arbitration forum

Accordingly, the applicant is AWARDED the following:

A.

| Medical | | From/To | Claim Amount | Status |
|---|---|---|---|---|
| Martina Tiaxcantitla | Eclipse Medical Imaging PC | 11/29/21 - 11/29/21 | $1,728.97 | Awarded: $1,728.97 |
| Martina Tiaxcantitla | Eclipse Medical Imaging PC | 11/16/21 - 11/16/21 | $966.54 | Awarded: $966.54 |
| Martina Tiaxcantitla | Eclipse Medical Imaging PC | 11/08/21 - 11/08/21 | $966.54 | Awarded: $966.54 |
| Total | | | $3,662.05 | Awarded: $3,662.05 |

B. The insurer shall also compute and pay the applicant interest set forth below. 12/23/2022 is the date that interest shall accrue from. This is a relevant date only to the extent set forth below.

December 23, 2022 is the date that the arbitration is deemed to have been commenced.

INTEREST: Pursuant to Insurance Law § 5106 (a), interest accrues on overdue no-fault insurance claims at a rate of 2% per month. A claim is overdue when it is not paid within 30 days after a proper demand is made for its payment (Insurance Law § 5106 [a]; 11 NYCRR 65.15 [g]). The Superintendent's regulation tolls the accumulation of interest if the claimant "does not request arbitration or institute a lawsuit within 30 days after receipt of a denial of claim form or payment of benefits calculated pursuant to Insurance Department regulations" (11 NYCRR 65-3.9 [c]). The Superintendent has interpreted this provision to mandate that the accrual of interest is tolled, regardless of whether the particular denial at issue was timely. That interpretation was upheld by the Court of Appeals in LMK Psychological Servs, P.C. v. State Farm Mut. Auto. Ins. Co., 2009 NY Slip Op 02481 (April 2, 2009). Where no denial of claim is issued in response to a proper demand for payment, the insurer does not benefit from the tolling provision and interest will accrue from the date 30 days after the proper demand for payment is made. Interest that accrues when a denial of claim is not issued within 30 days after the proper demand for payment is made will be tolled upon the issuance of a denial of claim, although such denial is untimely, and the failure to request arbitration or institute a lawsuit within 30 days after receipt of that denial of claim form.

C. Attorney's Fees

The insurer shall also pay the applicant for attorney's fees as set forth below

For cases filed after February 4, 2015, the attorney's fee is subject to the provisions promulgated by the Department of Financial Services in the Sixth Amendment to 11 NYCRR 65-4. The attorney's fee shall be limited as follows: 20% of the total amount of first-party benefits and any addition first-party benefits, plus interest thereon, for each applicant per arbitration or court proceeding, subject to a maximum fee of $1,360. If the nature of the dispute results in an attorney's fee that could be computed in accordance with the limitations prescribed in both subdivision (c) and this subdivision, the higher attorney's fee shall be payable.

D.  The respondent shall also pay the applicant forty dollars ($40) to reimburse the applicant for the fee paid to the Designated Organization, unless the fee was previously returned pursuant to an earlier award.

This award is in full settlement of all no-fault benefit claims submitted to this arbitrator.

State of FL
SS :
County of Hillsborough

I, Matthew Brew, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my award.

09/06/2023
(Dated)

Matthew Brew

**IMPORTANT NOTICE**

*This award is payable within 30 calendar days of the date of transmittal of award to parties.*

*This award is final and binding unless modified or vacated by a master arbitrator. Insurance Department Regulation No. 68 (11 NYCRR 65-4.10) contains time limits and grounds upon which this award may be appealed to a master arbitrator. An appeal to a master arbitrator must be made within 21 days after the mailing of this award. All insurers have copies of the regulation. Applicants may obtain a copy from the Insurance Department.*

**ELECTRONIC SIGNATURE**

**Document Name:** Final Award Form
**Unique Modria Document ID:**
8a51e2c5d35bbc3a712b23d8aa33daf3

**Electronically Signed**

Your name: Matthew Brew
Signed on: 09/06/2023 1:50:18 PM

American Arbitration Association
New York No-Fault Arbitration Tribunal

In the Matter of the Arbitration between:

| | | |
|---|---|---|
| Eclipse Medical Imaging PC / Tarik Michel (Applicant) | AAA Case No. | 17-22-1279-6402 |
| | Applicant's File No. | 170.172 |
| - and - | Insurer's Claim File No. | 52-31N8-73V |
| State Farm Mutual Automobile Insurance Company (Respondent) | NAIC No. | 25178 |

## ARBITRATION AWARD

I, John Hyland, the undersigned arbitrator, designated by the American Arbitration Association pursuant to the Rules for New York State No-Fault Arbitration, adopted pursuant to regulations promulgated by the Superintendent of Insurance, having been duly sworn, and having heard the proofs and allegations of the parties make the following **AWARD:**

Injured Person(s) hereinafter referred to as: TM

1. Hearing(s) held on                              10/03/2023
   Declared closed by the arbitrator on     10/03/2023

   George Malonoukas, Esq. from Tsirelman Law Firm PLLC participated virtually for the **Applicant**

   Barbara Litcher-Butler, Esq. from Bruno Gerbino & Soriano LLP participated virtually for the **Respondent**

2. The amount claimed in the Arbitration Request, **$1,728.97**, was NOT AMENDED at the oral hearing.
   Stipulations WERE NOT made by the parties regarding the issues to be determined.

3. Summary of Issues in Dispute

   The Assignor TM, a 23-year-old male, was injured as a driver of a motor vehicle involved in an accident that occurred on February 18, 2022. TM suffered injuries to his neck and back, which resulted in his seeking treatment. In dispute is Applicant's claim for MRIs of the cervical spine and lumbar spine provided to the Assignor on April 4, 2022. Respondent delayed the case for additional verification, and then ultimately denied the claim after 120 days for failing to provide said verification. The issue at this hearing is whether the 120-day defense can be sustained or whether Applicant substantially complied with Respondent's verification requests.

4. Findings, Conclusions, and Basis Therefor

This case was decided based upon the submissions of the Parties as contained in the electronic file maintained by the American Arbitration Association, and the oral arguments of the parties' representatives. There were no witnesses. I reviewed the documents contained in MODRIA for both parties and make my decision in reliance thereon.

Pursuant to Insurance Law §5106(a) and 11 NYCRR §65-3.8, No-Fault benefits are overdue if not paid or denied within 30 calendar days after the insurer receives proof of claim, which shall include verification of all of the relevant information requested.

An Applicant establishes a prima facie showing of entitlement to No-Fault benefits under Article 51 of the Insurance Law by "submitting evidence that payment of no-fault benefits are overdue, and proof of its claim, using the statutory billing form, was mailed to and received by the defendant insurer." Viviane Etienne Med. Care, P.C. v. Country-Wide Ins. Co., 25 N.Y.3d 498, 14 N.Y.S. 3d 283 (Court of Appeals, 2015).

Once Applicant establishes its prima facie case, the burden of proof shifts to Respondent to come forward with admissible evidence demonstrating the existence of a material issue of fact. Amaze Medical Supply Inc. v. Eagle Ins. Co., 2 Misc.3d 128(A), 2003 N.Y. Slip Op. 51701(U)(App. Term, 2nd Dept, 2nd & 11th Jud Dists., 2003).

If an insurer asserts that the claim(s) are premature due to outstanding verification, the insurer must demonstrate that the verification request and follow-up verification request were timely issued, and that no response was received. Compas Med., P.C. v. Praetorian, 49 Misc 3d 129(A), 2015 NY Slip Op 51403(U)(App Term, 2nd , 11th and 13th Jud. Dists. 2015).

As required by 11 NYCRR §65-3.5(b), the initial request for verification is to be made within 15 business days of receipt of the claim. A request that is sent beyond the 15 business days is still valid so long as it is issued within 30 days from receipt of the claim; such a deviation will simply reduce the insurer's time to pay or deny by the same number of days. 11 NYCRR §65-3.8(l). See Nyack Hosp. v. General Motors Acceptance Corp., 8 NY3d 294, 2007 NY Slip Op 02439 (Court of Appeals, 2007). On the other hand, if the initial request for verification is made beyond 30 days from receipt of the claim, the request will be deemed a nullity and the time to pay or deny will have expired. Compas Med., P.C. v. Farm Family Cas. Ins. Co., 2015 NY Slip Op 51631(U) (App. Term 2nd, 11th and 13th Jud. Dists. 2015).

Additionally, after 30 calendar days from the original request, the insurer has a regulatory duty to issue a second verification request within the following 10 calendar days. 11 NYCRR §65-3.6(b).

The obligation to pay or deny a claim is not triggered until the insurer has received all of the relevant information that was requested. Hospital for Joint Diseases v. State Farm Mut. Auto. Ins. Co., 8 AD3d 533, 2004 NY Slip Op 05413 (App. Div., 2nd Dept., 2004).

If the insurer can demonstrate that the initial verification request and follow-up verification request were timely issued, and that no response was received, the matter will be deemed premature and not ripe for adjudication. See Mount Sinai Hosp. v. Chubb Group of Ins. Co., 43 AD3d 889, 2007 NY Slip Op 06650 (App. Div., 2nd Dept., 2007).

Furthermore, pursuant to 11 NYCRR §65-3.8(b)(3), "an insurer may issue a denial if, more than 120 calendar days after the initial request for verification, the applicant has not submitted all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply…"

In this case, I find that Applicant has established its prima facie case, thereby shifting the burden to Respondent.

Notice is taken that Dr. Jack Baldassare, M.D., owner of Applicant, attended an Examination Under Oath ("EUO") on May 26, 2022. Respondent argues that following the EUOs, it issued verification requests to Applicant which remained outstanding. Specifically, Respondent alleges that despite receiving some of the items that were initially requested as verification, items which still remain outstanding are: documents relating to income and expenses, tax returns, and an EUO transcript from another legal proceeding involving a different insurance carrier. A denial was then issued for the subject bill based on the 120-day rule.

Applicant argues that Respondent's verification requests were overbroad, burdensome and unreasonable, and that such demands exceeded the bounds of permissible requests under the Regulations. Nevertheless, Applicant asserts that voluminous responses have been previously provided. Applicant also argues that the remaining items have been objected to as improper. Applicant further argues that Respondent has breached the tenets of 11 NYCRR 65.15(d)(1), which state that in obtaining all necessary items of verification, an insurer is obligated to act in good faith in connection with its claim practices as follows: (1) Have as your basic goal the prompt and fair payment to all automobile accident victims; (2) Assist the applicant in the processing of a claim. Do not treat the applicant as an adversary; (3) Do not demand verification of facts unless there are good reasons to do so. When verification of facts is necessary, it should be done as

expeditiously as possible; and (4) Clearly inform the applicant of the insurer's position regarding any disputed matter. [See, 11 NYCRR 65.15].

"The regulations do not give the insurer the right to ask an assignee to produce documents relating to the corporate structure or finances of a medical provider. Upon receipt of the completed verification form, the insurer can request additional verification. The regulations only permit the insurer to obtain written information to verify a claim." See Dynamic Medical Imaging, P.C. v. State Farm Mut. Auto. Ins. Co., 2010 Slip Op 20285 (Dist. Ct. Nassau Co. July 15, 2010); See also, Brownsville Advance Medical, P.C. v. Country-Wide Ins. Co., 33 Misc. 3d 1236(A), 941 N.Y.S.2d 536, 2011 N.Y. Slip Op. 52255(U) at 3 (Dist. Ct. Nassau Co. 2011) ("The demand for information relating to a Mallela defense is not obtainable through verification."); Island Chiropractic Testing, P.C. v. Nationwide Ins. Co., 35 Misc. 3d 1235(A), 953 N.Y.S.2d 550 (Dist. Ct. Suffolk Co., C. 2012)("Permitting an insurer to obtain written documents such as tax returns, incorporation agreements or leases regarding a potential fraudulent incorporation 'Malella' defense as part of the verification process defeats the stated policy and purpose of the no-fault law and carries with it the potential for abuse.")

Based upon the records submitted, it is clear that Applicant did not ignore Respondent's communications. Applicant has responded on numerous occasions to the requests of Respondent providing the verification materials requested and asserting legitimate legal objections. Further, Applicant submits the awards of other Arbitrators on the AAA panel who have determined that Applicant substantially complied with the various requests.

I too find that Applicant has demonstrated "substantial compliance" with Respondent's verification requests in good faith. Applicant has produced numerous documents which have been requested and has also testified at an EUO. In addition, I find that the Respondent has not sufficiently justified its need for any outstanding documentation. As such, Respondent's 120 rule defense cannot be sustained.

Therefore, having failed to sustain its burden of proof as to this claim, Applicant is entitled to a balance totaling $1,728.97 as billed.

Any further issues raised in the hearing record are held to be moot and/or waived insofar as not raised at the time of the hearing.


5.  Optional imposition of administrative costs on Applicant.
    Applicable for arbitration requests filed on and after March 1, 2002.

    I do NOT impose the administrative costs of arbitration to the applicant, in the amount established for the current calendar year by the Designated Organization.

6. **I find as follows with regard to the policy issues before me:**
   ☐ The policy was not in force on the date of the accident
   ☐ The applicant was excluded under policy conditions or exclusions
   ☐ The applicant violated policy conditions, resulting in exclusion from coverage
   ☐ The applicant was not an "eligible injured person"
   ☐ The conditions for MVAIC eligibility were not met
   ☐ The injured person was not a "qualified person" (under the MVAIC)
   ☐ The applicant's injuries didn't arise out of the "use or operation" of a motor vehicle
   ☐ The respondent is not subject to the jurisdiction of the New York No-Fault arbitration forum

Accordingly, the applicant is AWARDED the following:

A.

| Medical | | From/To | Claim Amount | Status |
|---|---|---|---|---|
| Tarik Michel | Eclipse Medical Imaging PC | 04/04/22 - 04/04/22 | $1,728.97 | Awarded: $1,728.97 |
| Total | | | $1,728.97 | Awarded: $1,728.97 |

B. The insurer shall also compute and pay the applicant interest set forth below. 12/21/2022 is the date that interest shall accrue from. This is a relevant date only to the extent set forth below.

   Applicant is awarded interest pursuant to the no-fault regulations. See generally, 11 NYCRR §65-3.9. Interest shall be calculated "at a rate of two percent per month, calculated on a pro rata basis using a 30-day month." 11 NYCRR §65-3.9(a).

C. Attorney's Fees

   The insurer shall also pay the applicant for attorney's fees as set forth below

   The insurer shall pay Applicant an attorney's fee pursuant to the provisions promulgated by the Department of Financial Services in the Sixth Amendment to 11 NYCRR 65-4 (Insurance Regulation 68-D). In accordance with newly promulgated 11 NYCRR 65-4.6(d). "If the claim is resolved by the designated organization at any time prior to transmittal to an arbitrator and it was initially denied by the insurer or overdue, the

payment of the applicant's attorney's fee by the insurer shall be limited to 20 percent of the total amount of first-party benefits and any additional first-party benefits, plus interest thereon, for each applicant with whom the respective parties have agreed and resolved dispute, subject to a maximum fee of $1,360.

D.  The respondent shall also pay the applicant forty dollars ($40) to reimburse the applicant for the fee paid to the Designated Organization, unless the fee was previously returned pursuant to an earlier award.

This award is in full settlement of all no-fault benefit claims submitted to this arbitrator.

State of NY
SS :
County of Westchester

I, John Hyland, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my award.

11/01/2023
(Dated)

*John T. Hyland*

John Hyland

## IMPORTANT NOTICE

*This award is payable within 30 calendar days of the date of transmittal of award to parties.*

*This award is final and binding unless modified or vacated by a master arbitrator. Insurance Department Regulation No. 68 (11 NYCRR 65-4.10) contains time limits and grounds upon which this award may be appealed to a master arbitrator. An appeal to a master arbitrator must be made within 21 days after the mailing of this award. All insurers have copies of the regulation. Applicants may obtain a copy from the Insurance Department.*

**ELECTRONIC SIGNATURE**

**Document Name:** Final Award Form
**Unique Modria Document ID:**
cc093cf0d544d77954ce5e20525b42d4

**Electronically Signed**

Your name: John Hyland
Signed on: 11/01/2023 11:15:55 AM

American Arbitration Association
New York No-Fault Arbitration Tribunal

In the Matter of the Arbitration between:

| | | |
|---|---|---|
| Eclipse Medical Imaging PC / Crystal Rogers (Applicant) | AAA Case No. | 17-22-1279-8680 |
| | Applicant's File No. | 170.265 |
| - and - | Insurer's Claim File No. | 5231N873V |
| | NAIC No. | 25178 |
| State Farm Mutual Automobile Insurance Company (Respondent) | | |

## ARBITRATION AWARD

I, John Hyland, the undersigned arbitrator, designated by the American Arbitration Association pursuant to the Rules for New York State No-Fault Arbitration, adopted pursuant to regulations promulgated by the Superintendent of Insurance, having been duly sworn, and having heard the proofs and allegations of the parties make the following **AWARD:**

Injured Person(s) hereinafter referred to as: CR

1. Hearing(s) held on 10/03/2023
   Declared closed by the arbitrator on 10/03/2023

   George Malonoukas, Esq. from Tsirelman Law Firm PLLC participated virtually for the **Applicant**

   Barbara Litcher-Butler, Esq. from Bruno Gerbino & Soriano LLP participated virtually for the **Respondent**

2. The amount claimed in the Arbitration Request, **$1,692.61**, was NOT AMENDED at the oral hearing.
   Stipulations WERE NOT made by the parties regarding the issues to be determined.

3. Summary of Issues in Dispute

   The Assignor CR, a 22-year-old female, was injured as a passenger of a motor vehicle involved in an accident that occurred on February 18, 2022. CR suffered injuries to her neck and back, which resulted in her seeking treatment. In dispute is Applicant's claim for MRIs of the cervical spine and right knee provided to the Assignor on March 23, 2022. Respondent delayed the case for additional verification, and then ultimately denied the claim after 120 days for failing to provide said verification. The issue at this hearing is whether the 120-day defense can be sustained or whether Applicant substantially complied with Respondent's verification requests.

4. Findings, Conclusions, and Basis Therefor

This case was decided based upon the submissions of the Parties as contained in the electronic file maintained by the American Arbitration Association, and the oral arguments of the parties' representatives. There were no witnesses. I reviewed the documents contained in MODRIA for both parties and make my decision in reliance thereon.

Pursuant to Insurance Law §5106(a) and 11 NYCRR §65-3.8, No-Fault benefits are overdue if not paid or denied within 30 calendar days after the insurer receives proof of claim, which shall include verification of all of the relevant information requested.

An Applicant establishes a prima facie showing of entitlement to No-Fault benefits under Article 51 of the Insurance Law by "submitting evidence that payment of no-fault benefits are overdue, and proof of its claim, using the statutory billing form, was mailed to and received by the defendant insurer." Viviane Etienne Med. Care, P.C. v. Country-Wide Ins. Co., 25 N.Y.3d 498, 14 N.Y.S. 3d 283 (Court of Appeals, 2015).

Once Applicant establishes its prima facie case, the burden of proof shifts to Respondent to come forward with admissible evidence demonstrating the existence of a material issue of fact. Amaze Medical Supply Inc. v. Eagle Ins. Co., 2 Misc.3d 128(A), 2003 N.Y. Slip Op. 51701(U)(App. Term, 2nd Dept, 2nd & 11th Jud Dists., 2003).

If an insurer asserts that the claim(s) are premature due to outstanding verification, the insurer must demonstrate that the verification request and follow-up verification request were timely issued, and that no response was received. Compas Med., P.C. v. Praetorian, 49 Misc 3d 129(A), 2015 NY Slip Op 51403(U)(App Term, 2nd , 11th and 13th Jud. Dists. 2015).

As required by 11 NYCRR §65-3.5(b), the initial request for verification is to be made within 15 business days of receipt of the claim. A request that is sent beyond the 15 business days is still valid so long as it is issued within 30 days from receipt of the claim; such a deviation will simply reduce the insurer's time to pay or deny by the same number of days. 11 NYCRR §65-3.8(l). See Nyack Hosp. v. General Motors Acceptance Corp., 8 NY3d 294, 2007 NY Slip Op 02439 (Court of Appeals, 2007). On the other hand, if the initial request for verification is made beyond 30 days from receipt of the claim, the request will be deemed a nullity and the time to pay or deny will have expired. Compas Med., P.C. v. Farm Family Cas. Ins. Co., 2015 NY Slip Op 51631(U) (App. Term 2nd, 11th and 13th Jud. Dists. 2015).

Additionally, after 30 calendar days from the original request, the insurer has a regulatory duty to issue a second verification request within the following 10 calendar days. 11 NYCRR §65-3.6(b).

The obligation to pay or deny a claim is not triggered until the insurer has received all of the relevant information that was requested. Hospital for Joint Diseases v. State Farm Mut. Auto. Ins. Co., 8 AD3d 533, 2004 NY Slip Op 05413 (App. Div., 2nd Dept., 2004).

If the insurer can demonstrate that the initial verification request and follow-up verification request were timely issued, and that no response was received, the matter will be deemed premature and not ripe for adjudication. See Mount Sinai Hosp. v. Chubb Group of Ins. Co., 43 AD3d 889, 2007 NY Slip Op 06650 (App. Div., 2nd Dept., 2007).

Furthermore, pursuant to 11 NYCRR §65-3.8(b)(3), "an insurer may issue a denial if, more than 120 calendar days after the initial request for verification, the applicant has not submitted all such verification under the applicant's control or possession or written proof providing reasonable justification for the failure to comply…"

In this case, I find that Applicant has established its prima facie case, thereby shifting the burden to Respondent.

Notice is taken that Dr. Jack Baldassare, M.D., owner of Applicant, attended an Examination Under Oath ("EUO") on May 26, 2022. Respondent argues that following the EUOs, it issued verification requests to Applicant which remained outstanding. Specifically, Respondent alleges that despite receiving some of the items that were initially requested as verification, items which still remain outstanding are: documents relating to income and expenses, tax returns, and an EUO transcript from another legal proceeding involving a different insurance carrier. A denial was then issued for the subject bill based on the 120-day rule.

Applicant argues that Respondent's verification requests were overbroad, burdensome and unreasonable, and that such demands exceeded the bounds of permissible requests under the Regulations. Nevertheless, Applicant asserts that voluminous responses have been previously provided. Applicant also argues that the remaining items have been objected to as improper. Applicant further argues that Respondent has breached the tenets of 11 NYCRR 65.15(d)(1), which state that in obtaining all necessary items of verification, an insurer is obligated to act in good faith in connection with its claim practices as follows: (1) Have as your basic goal the prompt and fair payment to all automobile accident victims; (2) Assist the applicant in the processing of a claim. Do not treat the applicant as an adversary; (3) Do not demand verification of facts unless there are good reasons to do so. When verification of facts is necessary, it should be done as

expeditiously as possible; and (4) Clearly inform the applicant of the insurer's position regarding any disputed matter. [See, 11 NYCRR 65.15].

"The regulations do not give the insurer the right to ask an assignee to produce documents relating to the corporate structure or finances of a medical provider. Upon receipt of the completed verification form, the insurer can request additional verification. The regulations only permit the insurer to obtain written information to verify a claim." See Dynamic Medical Imaging, P.C. v. State Farm Mut. Auto. Ins. Co., 2010 Slip Op 20285 (Dist. Ct. Nassau Co. July 15, 2010); See also, Brownsville Advance Medical, P.C. v. Country-Wide Ins. Co., 33 Misc. 3d 1236(A), 941 N.Y.S.2d 536, 2011 N.Y. Slip Op. 52255(U) at 3 (Dist. Ct. Nassau Co. 2011) ("The demand for information relating to a Mallela defense is not obtainable through verification."); Island Chiropractic Testing, P.C. v. Nationwide Ins. Co., 35 Misc. 3d 1235(A), 953 N.Y.S.2d 550 (Dist. Ct. Suffolk Co., C. 2012)("Permitting an insurer to obtain written documents such as tax returns, incorporation agreements or leases regarding a potential fraudulent incorporation 'Malella' defense as part of the verification process defeats the stated policy and purpose of the no-fault law and carries with it the potential for abuse.")

Based upon the records submitted, it is clear that Applicant did not ignore Respondent's communications. Applicant has responded on numerous occasions to the requests of Respondent providing the verification materials requested and asserting legitimate legal objections. Further, Applicant submits the awards of other Arbitrators on the AAA panel who have determined that Applicant substantially complied with the various requests.

I too find that Applicant has demonstrated "substantial compliance" with Respondent's verification requests in good faith. Applicant has produced numerous documents which have been requested and has also testified at an EUO. In addition, I find that the Respondent has not sufficiently justified its need for any outstanding documentation. As such, Respondent's 120 rule defense cannot be sustained.

Therefore, having failed to sustain its burden of proof as to this claim, Applicant is entitled to a balance totaling $1,692.61 as billed.

Any further issues raised in the hearing record are held to be moot and/or waived insofar as not raised at the time of the hearing.

5. Optional imposition of administrative costs on Applicant.
   Applicable for arbitration requests filed on and after March 1, 2002.

   I do NOT impose the administrative costs of arbitration to the applicant, in the amount established for the current calendar year by the Designated Organization.

6. **I find as follows with regard to the policy issues before me:**
☐ The policy was not in force on the date of the accident
☐ The applicant was excluded under policy conditions or exclusions
☐ The applicant violated policy conditions, resulting in exclusion from coverage
☐ The applicant was not an "eligible injured person"
☐ The conditions for MVAIC eligibility were not met
☐ The injured person was not a "qualified person" (under the MVAIC)
☐ The applicant's injuries didn't arise out of the "use or operation" of a motor vehicle
☐ The respondent is not subject to the jurisdiction of the New York No-Fault arbitration forum

Accordingly, the applicant is AWARDED the following:

A.

| Medical | | From/To | Claim Amount | Status |
|---|---|---|---|---|
| Crystal Rogers | Eclipse Medical Imaging PC | 03/23/22 - 03/23/22 | $1,692.61 | Awarded: $1,692.61 |
| Total | | | $1,692.61 | Awarded: $1,692.61 |

B. The insurer shall also compute and pay the applicant interest set forth below. 12/23/2022 is the date that interest shall accrue from. This is a relevant date only to the extent set forth below.

Applicant is awarded interest pursuant to the no-fault regulations. See generally, 11 NYCRR §65-3.9. Interest shall be calculated "at a rate of two percent per month, calculated on a pro rata basis using a 30-day month." 11 NYCRR §65-3.9(a).

C. Attorney's Fees

The insurer shall also pay the applicant for attorney's fees as set forth below

The insurer shall pay Applicant an attorney's fee pursuant to the provisions promulgated by the Department of Financial Services in the Sixth Amendment to 11 NYCRR 65-4 (Insurance Regulation 68-D). In accordance with newly promulgated 11 NYCRR 65-4.6(d). "If the claim is resolved by the designated organization at any time prior to transmittal to an arbitrator and it was initially denied by the insurer or overdue, the

payment of the applicant's attorney's fee by the insurer shall be limited to 20 percent of the total amount of first-party benefits and any additional first-party benefits, plus interest thereon, for each applicant with whom the respective parties have agreed and resolved dispute, subject to a maximum fee of $1,360.

D.  The respondent shall also pay the applicant forty dollars ($40) to reimburse the applicant for the fee paid to the Designated Organization, unless the fee was previously returned pursuant to an earlier award.

This award is in full settlement of all no-fault benefit claims submitted to this arbitrator.

State of NY
SS :
County of Westchester

I, John Hyland, do hereby affirm upon my oath as arbitrator that I am the individual described in and who executed this instrument, which is my award.

11/01/2023
(Dated)

John Hyland

## IMPORTANT NOTICE

*This award is payable within 30 calendar days of the date of transmittal of award to parties.*

*This award is final and binding unless modified or vacated by a master arbitrator. Insurance Department Regulation No. 68 (11 NYCRR 65-4.10) contains time limits and grounds upon which this award may be appealed to a master arbitrator. An appeal to a master arbitrator must be made within 21 days after the mailing of this award. All insurers have copies of the regulation. Applicants may obtain a copy from the Insurance Department.*

**ELECTRONIC SIGNATURE**

**Document Name:** Final Award Form
**Unique Modria Document ID:**
087c4e1e45ecf50e719253c3ffedfa79

**Electronically Signed**

Your name: John Hyland
Signed on: 11/01/2023 11:06:54 AM