UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, STATE FARM INDEMNITY COMPANY,
STATE FARM GUARANTY INSURANCE COMPANY,
and STATE FARM FIRE AND CASUALTY COMPANY

                Plaintiffs,

     -against-

ECLIPSE MEDICAL IMAGING, P.C.

                Defendant.
------------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
1:23-CV-3124 (OEM) (RML)

**ORELIA E. MERCHANT, United States District Judge:**

Plaintiffs State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company, State Farm Guaranty, Insurance Company, and State Farm Fire and Casualty Company (collectively, "Plaintiffs" or "State Farm") seek a declaratory judgment that defendant Eclipse Medical Imaging, P.C. ("Defendant "or "Eclipse") has no right to receive payment for any of the claims submitted to State Farm for services billed pursuant to N.Y. Ins. Law § 5101 *et seq.* (hereinafter New York's "No-Fault" insurance laws). *See* Complaint ("Compl."), ECF 1, ¶¶ 51-52.

Before the Court is Eclipse's motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all claims against Eclipse or, in the alternative, compel arbitration of State Farm's claims. *See* Defendant's Notice of Motion to Dismiss, ECF 29. Eclipse opposes this motion. *See* Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss ("Opp."), ECF 31. For the reasons that follow, Eclipse's motion to compel arbitration is **GRANTED.**

1

## BACKGROUND[1]

The Court has previously set out the full factual background regarding New York's No-Fault insurance scheme in its order granting State Farm a preliminary injunction ("Injunction Order"). *State Farm Mut. Auto. Ins. Co. v. Eclipse Med. Imaging, P.C.*, 1:23-CV-3124 (OEM) (RML), 2023 WL 7222827, at *1-4 (E.D.N.Y. Nov. 2, 2023). The Court sets out only those facts as required to resolve the instant motion.

### A. State Farm's Allegations Against Eclipse

In this action, State Farm seeks a declaratory judgment under 28 U.S.C. § 2201 and the New York state law equivalent declaring, "Eclipse has no right to receive payment for the claims submitted to" State Farm, because Eclipse "failed and/or refused to verify its claims, and therefore, breached a condition of coverage and violated its obligations under the No-Fault Laws." Compl. ¶¶ 46-48; 50-52; *see also id.* ¶ 1 ("Because Eclipse failed to provide necessary information to properly verify the claims it submitted, Eclipse failed to meet a condition precedent to coverage under the insurance contracts and violated its obligations under the No-Fault Laws, and therefore, the claims are not compensable.").

State Farm's underlying basis for seeking further verification and the gravamen of its Complaint is that Eclipse's owner, Jack Baldassare, M.D. ("Baldassare"), is only nominally the owner of Eclipse. *See* Compl. ¶¶ 10-15, 24. State Farm alleges that it is actually Robert Maksumov ("Maks"), an unlicensed layperson and former office manager of the subject radiology practice, who controls and operates Eclipse. *See* Compl. ¶¶ 25, 29-32, 35. State Farm asserts that Baldassare is merely a "physician straw owner[]" and Eclipse is actually "secretly own[ed] and

---

[1] The following background is taken from State Farm's complaint, and other submissions made in connection with the instant motion and are taken as true for the purposes of this motion only.

controll[ed]" by Maks to "engage in th[e] practice [of] bill[ing] for unnecessary and fraudulent services[.]" Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction ("Plaintiffs' PI Memo"), ECF 13 at 5.

In support of these allegations, State Farm alleges further that: (1) State Farm—prior to seeking additional verification from Eclipse—conducted its own "investigation into the claims submitted by Eclipse" which included "a survey of the records of numerous patients and investigating the appropriateness and legitimacy of the billed for services";[2] (2) Baldassare and Eclipse have been sued previously by both GEICO and Allstate insurers, and the complaints in those actions reference Maks as an alleged fraudulent "straw owner" of radiological operations;[3] (3) Baldassare has only "limited involvement in operating" the business, which amounts to reading radiographical studies from home in New Jersey;[4] (4) Eclipse is a "mere continuation" of a prior radiological practice, Kensington Radiology Group, P.C. ("Kensington"), which itself was alleged to be a front operated by Maks, who is also as a named defendant alleged the GEICO Action;[5] (5) Baldassare's testified at his examination under oath ("EUO") in the present action that Maks "informed him there was an empty radiology business" (which was in fact Kensington) and Maks presented Kensington to him as "a turnkey operation with equipment and staff";[6] (6) Baldassare

---

[2] Compl. ¶¶ 23-24.
[3] Compl. ¶¶ 25-26; Plaintiffs' PI Memo at 6. *See Gov't Emps. Ins. Co., et al. v. Eclipse Med. Imaging, P.C. et al.*, 1:21-CV-1074 (BMC) (E.D.N.Y. Mar. 1, 2021) (the "*GEICO Action*"), ECF 1 ¶¶ 86-106; *Allstate Ins. Co., et al. v. Salehin, et al.*, 1:21-CV-00420 (LDH) (VMS) (E.D.N.Y. Jan. 26, 2021) (the "*Allstate Action*"), ECF 1 ¶¶ 3, 442-48, 564-77. These complaints were also appended to State Farm's motion. *See also Toiny LLC v. Gill*, 18-CV-40 (NGG) (VMS), 2022 WL 4118520, at *2 n.2 (E.D.N.Y. Sept. 9, 2022) ("A court may take judicial notice of the status of other lawsuits in other courts and the substance of court filings.").
[4] State Farm alleges that while Baldassare is indeed, on paper, the owner of Eclipse and interprets radiology studies from his home in New Jersey, he in fact "does not have any involvement in generating business, and at best, has had limited involvement in operating the business." Compl ¶¶ 3, 31-32; Plaintiffs' PI Memo at 8. Further, "Baldassare does not appear involved in supervising employees, dealing with day-to-day operations of the business, dealing with marketing and referral sources, billing, revenue, accounts receivable, collections, or hiring collections counsel." Plaintiffs' PI Memo at 8.
[5] Compl. ¶ 29; *see GEICO Action*, ECF 1 ¶¶ 86-106.
[6] Compl. ¶ 29, 31.

further feigned ignorance at the EUO that Eclipse was taking over the Kensington practice as he had admitted to previously working for Kensington;[7] (7) Baldassare paid no start-up costs to begin Eclipse;[8] and (8) Baldassare gave inconsistent answers between the EUO and later representations as to whether he signed a lease on behalf of Eclipse.[9]

Additionally, State Farm alleges that Eclipse submitted claims and bills to State Farm "for highly questionable magnetic resonance imaging test ('MRIs'), computerized tomography tests ('CTs'), X-rays, and other testing services that were purportedly administered to individuals who were involved in motor vehicle accidents." Compl. ¶¶ 3, 27 ("[T]here are also serious questions regarding whether all the testing billed by Eclipse was actually ordered by a physician and whether the testing was medical necessary.").

State Farm explains that the foregoing information raised enough "red flags" to justify State Farm's further requests for verification, namely the production of a variety of documentary evidence that is "relevant and necessary" to determine whether Eclipse is actually owned and controlled by a licensed physician, to wit Baldassare.[10]  Compl. ¶¶ 34-38.  Further, State Farm alleges that it timely requested additional documentation, which Eclipse failed to produce. Thus, State Farm denied all the claims that are subject to this litigation. Compl. ¶¶ 39-44; *see* Ex. A to Compl., ECF 1-4 (listing all claims submitted that State Farm believes should not be paid); Ex. 1 to Affidavit of Valerie Williams in Support of Plaintiffs' Motion for Preliminary Injunction, ECF 12-1 (spreadsheet of all pending arbitrations).

---

[7] Compl. ¶¶ 29-30.
[8] Compl. ¶ 31.
[9] Compl. ¶ 33.
[10] Specifically, State Farm sought five categories of documents from Eclipse: (i) copies of lease agreements, in their entirety, from January 2017 to present; (ii) copies of the general ledger(s) and/or bookkeeping records from January 1, 2019 through present; (iii) copies of all payments to Robert and Yelena Maks from January 1, 2019 to present; (iv) tax returns for tax years 2018 and 2021, and (v) copies of all recordings reflecting compensation, including salary and bonuses, paid to Baldassare. Compl. ¶ 37.

4

These denials spurred Eclipse to initiate arbitrations as permitted under New York's No-Fault scheme, as well as a single state court collection action to recoup their reimbursements.

State Farm brought this declaratory action on April 25, 2023, *see* Compl., and filed their motion for a stay and preliminary injunction on August 3, 2023. ECF 10. On November 2, 2023, the Court granted State Farm's motion for preliminary injunction and to stay all pending arbitrations. *See* Injunction Order.

On February 2, 2024, Eclipse filed the instant motion to dismiss or compel arbitration, ECF 29, and accompanying memorandum of law ("Def's Memo"), ECF 29-2. Eclipse attached to its motion eleven arbitration awards in collection actions between the parties in which the arbitrator found State Farm could not sustain its verification defense and found in Eclipse's favor. *See* Declaration of Nicholas Bowers ("Bowers Decl."), ECF 29-1; Ex. 1 to Bowers Decl. ("Arbitration Awards"), ECF 29-3. Also on February 2, 2024, State Farm filed a memorandum in opposition ("Opp."), ECF 31, and Eclipse filed its reply ("Reply"), ECF 30. The motion is now ripe for adjudication.

## STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, the Court construes the complaint "in the light most favorable to the plaintiff, accepting the complaint's allegations as true." *Todd v. Exxon Corp.*, 275 F.3d 191, 197 (2d Cir. 2001). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). A complaint will survive a motion to dismiss only if its factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**DISCUSSION**

Eclipse argues that this action must be compelled to arbitration under the Federal Arbitration Act ("FAA") or, excepting that statute, because New York's No-Fault laws and public policy demand it. Def's Memo at 7-10. Alternatively, Eclipse contends that State Farm's claim for declaratory injunction is barred by the doctrines of issue and claim preclusion, requiring dismissal. *Id.* at 10-14. State Farm opposes both motions. *See* Opp. at 11-20. Because the Court finds that the claims must be compelled to arbitration, the Court does not address State Farm's argument that the claims otherwise should be dismissed.

### A. The FAA Does Not Apply to No-Fault Arbitrations

The Court denies Defendant's motion to arbitrate under the FAA because, as numerous other courts in this district have repeatedly concluded, the "FAA does not apply to no-fault insurance collections arbitrations." *See, e.g.*, *Gov't Emps. Ins. Co. v. Moshe*, 1:20-CV-1098 (FB) (RER), 2020 WL 3503176, at *1 n.2 (E.D.N.Y. June 29, 2020) (collecting cases). The FAA "requires courts to enforce privately *negotiated* agreements to arbitrate. . . ." *UBS Fin. Servs., Inc. v. West Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 649 (2d Cir. 2011) (emphasis added). This is because, "unlike a bargained-for arbitration clause, the parties here are not permitted to choose where the arbitrations take place, who will serve as the arbitrators, or any other procedural components of the arbitration." *Gov't Emps. Ins. Co. v. Mayzenberg*, 17-CV-2802, 2018 WL 6031156, at *3 (E.D.N.Y. Nov. 16, 2018) (citing N.Y. COMP. CODES R. & REGS. ("NYCRR") tit. 11, § 65-4.5) (holding that the court was empowered to enjoin defendants' No-Fault collection arbitrations because the arbitration clause in the parties' insurance policy was "mandated by statute and not by voluntary agreement"). Thus, the FAA "is inapplicable and [the Court] has the authority to enjoin no-fault arbitration proceedings." *Gov't Emps. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp.

3d 482, 493, 495 (E.D.N.Y. 2021) (adopting "the reasoning in *Mayzenberg* – and numerous other courts in this district" that the FAA "does not apply to Plaintiffs' no-fault insurance policies"); *see also Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 456 (E.D.N.Y. 2020) (holding that the FAA does not bar courts' "authority to enjoin pending and future arbitrations, or future state law collection suits").

### B. New York's No-Fault Scheme Requires Arbitration of the Unpaid Claims

As a general principle, the "inapplicability of the FAA does not mean that arbitration agreements in" other types of "contracts are altogether unenforceable, but only that the particular enforcement mechanisms of the FAA are not available, such that the contract is to be read as if the FAA had never been enacted." *Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 357–58 (S.D.N.Y. 2021) (citation and internal quotation marks omitted) (discussing employment contracts). Eclipse insists that the statutory and regulatory arbitration provisions in New York's No-Fault insurance scheme require this Court to remand all of the pending matters to arbitration. *See* Def's Memo at 7.

N.Y. Ins. Law § 5106(b) provides:

> Every insurer shall provide a claimant with the option of submitting *any dispute involving the insurer's liability to pay first party benefits,* or additional first party benefits, the amount thereof *or any other matter which may arise pursuant to subsection (a) of this section to arbitration pursuant to simplified procedures* to be promulgated or approved by the superintendent. Such simplified procedures shall include an expedited eligibility hearing option, when required, to designate the insurer for first party benefits . . . .

N.Y. INS. LAW § 5106(b) (emphases added).

Similarly, Section 11 N.Y.C.R.R. 65-1.1 of the New York Insurance Regulations provides as follows:

> Arbitration. In the event any person making a claim for first-party benefits and [plaintiff] do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to arbitration pursuant to procedures promulgated or approved by the Superintendent of Financial Services.

7

*Id.*

"First party benefits" are defined as "payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle. . . ." N.Y. INS. LAW § 5102(b).

The scope of "§ 5106(b) appears broad." *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 98 (2d Cir. 2014). "It provides a right to arbitrate '*any* dispute involving the insurer's liability to pay first party benefits.'" *Id.* (quoting N.Y. INS. LAW § 5106(b)) (emphasis in original opinion); *see also Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 262 (E.D.N.Y. 2012) ("On its face, New York's No-Fault Insurance Law grants the claimant a broad right to proceed through arbitration rather than litigation[.]").

The Second Circuit's decision in *Mun* is instructive and forecloses State Farm's declaratory judgment action here. *Mun* addressed a "medical provider's liability to [an] insurer, under a fraud theory, for what the provider *already recovered* in the claims process." *Mun*, 751 F.3d at 98 (emphasis added). The Second Circuit held that the No-Fault laws and regulations and insurance policies incorporating them do not provide a right to arbitration for insurance fraud claims that have *already* been paid out. *Id.* at 95. In so holding, the court clarified that "[s]ection 5106(b)'s arbitration right therefore applies only to disputes arising from the insurer's non-payment during the initial 30–day claims process, not to insurer fraud suits brought later." *Id.* at 99. In reaching this conclusion, the court pointed out that "had [the insurer] disputed those claims *without paying them promptly*, disputes contemplated by the statute would have arisen" and recited "the consensus view in the United States District Court for the Eastern District of New York that medical providers have a right to arbitrate as-yet unpaid claims, but not claims that were timely paid." *Id.* at 96, 98 (citing *Allstate Ins. Co. v. Mun*, 12-CV-3791 (CBA) (RLM), 2013 WL 1405939, at *1–2 (E.D.N.Y. Apr. 8, 2013)) (collecting cases at n.1) (emphasis added).

8

The posture in which State Farm's action arises here is entirely distinguishable from *Mun* and is in line with previous cases compelling the parties arbitration where claims have not yet been paid. *See, e.g.*, *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 377 (E.D.N.Y. 2012) ("I find that the scope of the arbitration clause under § 5106(b) and the individual contracts does not reach any of the claims before me except those that Allstate has not yet paid. I therefore deny the motion to compel arbitration as to all claims but those still pending before Allstate."); *Liberty Mut. Ins. Co.*, 879 F. Supp. 2d at 264 ("To the extent that defendants have not yet sued on any unpaid claims, they may compel arbitration of those claims.").

Here, State Farm has not paid out any first party benefits to Eclipse under the policies at issue,[11] but rather timely denied all of Eclipse's claims for reimbursement. *See* Compl. ¶ 43-44. Further, unlike in *Mun*, the Complaint does not allege any common law fraud or RICO claims against Eclipse or Baldassare. *See generally id.* As stated in its Complaint, State Farm's ground for denying Eclipse's claims was Eclipse's failure to supply State Farm with further "reasonable and necessary" verification information, *see supra* note 10 (describing the further information demanded), to State Farm, which it contends breached a condition precedent to payment of the claims under the No-Fault scheme. Compl. ¶¶ 36-44; *see* Opp. at 11 (citing Compl. ¶¶ 34-38); 11 N.Y.C.R.R. § 65-1.1 (2023) (making a condition precedent to suit that an assignee claimant shall "provide any other pertinent information that may assist the Company in determining the amount due and payable").

---

[11] In the instant case no examples of the insurance policies at issue, nor the arbitration clauses within them, have been put before the Court. Nonetheless, as noted in *Mun*, "even if an insurance contract omits the required wording, the contract is 'construed as if such provisions were embodied therein.'" *Mun*, 751 F.3d at 97 (quoting N.Y. Ins. Law § 5103(h)). "Defendants therefore may elect arbitration if *either* the [insurer's] policy provision *or* § 5106(b) provides them that right." *Id.*

State Farm's position is that without the additional requested information it cannot determine or verify "whether Baldassare truly owns and controls Eclipse[.]" Compl. ¶ 36. If Eclipse was indeed fraudulently incorporated, then State Farm would not be liable for reimbursing Eclipse's claims for first party benefits. *See* Opp. at 2-5 (citing *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 320-21 (2005)).

However, Eclipse *did* provide some verification to prove the propriety of its claims, including proffering Dr. Baldassare for an examination under oath as provided under 11 N.Y.C.R.R. § 65-1.1. *See* Compl. ¶¶ 17, 28-33. Baldassare answered questions at the EOU and later submitted another affidavit, which State Farm contends contains conflicting information. Compl. ¶ 33. State Farm complains that this quantum of proof is not enough to quell their "objective concerns" as to whether Eclipse's is fraudulently incorporated "medical mill"[12] or whether the claims billed were medically necessary and demands more. Compl. ¶¶ 33-36.

Eclipse objected to these further demands and did not produce the requested verification information, Compl. ¶ 34, which the No-Fault regulations permit them to do so long as it provides "reasonable justification for [their] failure to comply." 11 N.Y.C.R.R. § 65-3.5(o).

At bottom, the central issue in this case boils down to questions of the proper scope and amount of verification information a claimant must provide to an insurer under the No-Fault scheme to be considered compliant such that insurer must promptly pay out a No-Fault reimbursement claim. Whether the information State Farm currently possesses amounts to its entitlement to "to receive all items necessary to verify the claim directly from the parties from whom such verification was requested," 11 N.Y.C.R.R. § 65-3.5(c), is an issue for the expedited

---

[12] *See United States v. Pierre*, 22-CR-19 (PGG), 2023 WL 4493511, at *6 (S.D.N.Y. July 12, 2023) (citing *Mallela*, 4 N.Y.3d at 319-20) (explaining the New York Court of Appeals has held that insurers may withhold reimbursement from a fraudulently incorporated medical clinic).

and simplified No-Fault arbitration and not this Court because it is a "matter which may arise pursuant to" Eclipse supplying "proof of the fact" that first party benefits were "incurred." N.Y. INS. LAW § 5106(a)-(b).

Put another way, the Court concludes that the issue of whether Eclipse properly complied with State Farm's verification requests under the No-Fault statutes and regulations falls under the No-Fault scheme's broad arbitration provision, which allows a party to elect arbitration for issues regarding both "liability" and "any other matter" related to "first party benefits" which necessarily encompasses verification of the "amount of loss sustained." N.Y. INS LAW § 5106(a)-(b).  This is both confirmed by the language of the statute and its accompanying regulations just discussed.

### C. Arbitrability of Declaratory Judgment Actions

Even though the No-Fault scheme's broad arbitration provision covers the central issue in this dispute – compliance with verification procedures – State Farm nonetheless contends that it may maintain its declaratory judgment action and that public policy and considerations of judicial economy favor maintaining the action in this Court.  *See* Opp. at 11-17.  In support, State Farm cites to several state trial court decisions, none of which change the outcome.  *See id.* at 14 (citing *Kemper Indep. Ins. Co. v Aron Rovner M.D., PLLC*, 2017 N.Y. Slip Op 31945(U), 2017 WL 4037434 (Sup. Ct. N.Y. Cnty. Sept. 13, 2017); *Nationwide Affinity Ins. Co. of Am. v. Jamaica Wellness Med., P.C.*, 2017 N.Y. Slip Op 32943(U), 2017 WL 10648166 (Sup. Ct. Onondaga Cnty. June 7, 2017), *rev'd*, 89 N.Y.S.3d 498 (N.Y. App. Div. 2018); *GEICO Ins. Co. v. Williams*, 2011 N.Y. Slip Op. 30326(U), 2011 WL 567958 (Sup. Ct. Nassau Cnty. Jan. 27, 2011)).  Further, none of them are factually apposite to the case here.[13]

---

[13] *Kemper Indep. Ins. Co.* involved multiple medical provider defendants, several of which failed to appear for EUOs. 2017 WL 4037434, at *1-2.  One defendant untimely moved to compel arbitration, over 30 days late.  *Id.* at *1.  The court reasoned that a declaratory judgment could provide "greater relief" than would be "available to plaintiff in an arbitration because the arbitrator's determination would only relate to [one defendant's] claims, and would leave open

11

Indeed, these non-binding cases generally explain that the No-Fault scheme "does not preclude plaintiff from commencing a declaratory judgment action seeking a declaration that it has no duty to provide first-party no-fault benefits." *Kemper Indep. Ins. Co.*, 2017 WL 4037434, at *2. That is exactly what State Farm did. However, it does not necessarily follow that it is proper to maintain a federal court action after the Court has concluded that the issue before it is subject to arbitrability under the No-Fault Scheme. Rather, these cases only indicate that declaratory judgment actions "*may* be an appropriate vehicle for settling justiciable disputes as to contract rights and obligations." *Jamaica Wellness Med., P.C.*, 2017 WL 10648166, at *3. Ultimately, "[u]nder the [Declaratory Judgment Act], the Court has discretion whether to entertain a request for declaratory relief." *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 16- CV -6370 (SJF) (AYS), 2017 WL 6729854, at *13 (E.D.N.Y. Oct. 31, 2017), *aff'd*, 736 F. App'x 274 (2d Cir. 2018); *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("[T]he Declaratory Judgment Act ... confer[s] on federal courts a unique and substantial discretion in deciding whether to declare the rights of litigants.").

The Second Circuit evaluates five factors in determining whether to entertain a declaratory judgment action:

> (i) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) whether a judgment would finalize the controversy and offer relief from uncertainty; (iii) whether the proposed remedy is being used

---

the claims of the other medical providers." *Id.* at *2. In contrast, here, there is only one defendant, Eclipse, whose arbitration with State Farm would provide no lesser relief to State Farm than a declaratory judgment would. *Jamaica Wellness Med., P.C.* involved a medical provider defendant, owned by Brij Mittall, M.D., who was previously found guilty of Medicare insurance fraud conspiracy and illegal kickbacks. 2017 WL 10648166, at *1. The court found that by refusing and failing to appear for EUOs, Mittall breached a condition precedent to coverage. *Id.* at *2. Whereas here, Baldassare appeared for an EUO on behalf of Eclipse and thus did not so clearly breach a condition precedent to coverage. *See* Compl. ¶ 28. In *GEICO Ins. Co.*, the plaintiffs alleged that thirty-three medical provider defendants acted in concert to set up "twenty-five staged accidents" in "a scheme of an ongoing ring of fraudulent activity[.]" 2011 WL 567958. The Court granted plaintiffs' request to stay pending and future proceedings, in part because "litigating each alleged fraudulent claim separately would create an undue burden for the Plaintiffs and could result in significantly varying outcomes." *Id.* In contrast, here, Eclipse is the only defendant, State Farm does not allege such a "scheme of ongoing" fraudulent activity, and the instant motion, unlike the motion in *GEICO Ins. Co.*, presents a dispositive procedural question for the court.

> merely for 'procedural fencing' or a 'race to res judicata'; (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (v) whether there is a better or more effective remedy.

*N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) (quoting *Dow Jones & Co., Inc. v. Harrods Ltd.,* 346 F.3d 357, 359-60 (2d Cir. 2003)) (internal quotation marks omitted).

While the parties have not addressed whether the declaratory action should be entertained under these factors, the Court's own review indicates that it should not.  The legal issue of verification is already clarified, and while perhaps a declaratory action might settle the issue of verification, this is not the only one State Farm advances in this action.  In fact, it is not even the primary one.  The central issue of importance to State Farm is whether Eclipse was fraudulently incorporated, which would give it justified denial of reimbursement, and so it is to this issue they focus on and, further, seek to gain discovery.  *See* Opp. at 15-17 ("This venue is a much more appropriate venue to litigate *this* issue, which may include amending the counts/claims depending upon what is revealed once discovery is received, including the depositions of Mr. and Ms. Maks, which is not possible in an arbitration action.") (emphasis added).  Indeed, State Farm spends a good portion of its opposition laying out the case that Eclipse was likely fraudulently incorporated and that it would be "clearly more efficient to litigate the *issues* in this lawsuit than in a piecemeal fashion" – that is, not only the issue of verification but of fraudulent incorporation.  *Id.* at 2-5, 7-10, 14-17 ("There is compelling evidence that indicates that Eclipse is not truly owned and controlled by Dr. Baldassare.  This venue is a much more appropriate venue to litigate this issue[.]") (emphasis added).

However, the Court will not allow the shoehorning of an unpled claim – of which State Farm has had ample time to seek leave to amend – into a declaratory action that only presents the issue of verification for which there is an established and adequate state law remedy electable by

13

Eclipse.  "[C]ourts have deemed '[a] cause of action for a declaratory judgment [a]s unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action[.]'" *Zam & Zam Super Mkt.*, 2017 WL 6729854, at *11 (quoting *J.C. Penney Corp. v. Carousel Ctr. Co., L.P.*, 635 F. Supp. 2d 126, 135 (N.D.N.Y. 2008)).  Here, New York has established and ratified "a simple, efficient system that … provide[s] prompt compensation to accident victims without regard to fault, and in that way reduce[s] costs for both courts and insureds." S*tate Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 502 (2d Cir.2004)).  That the arbitration process is expedited is "a feature, not a bug." *Mun*, 751 F.3d at 99.  To allow this action to continue here would unnecessarily cause "friction" between New York and the federal system and "improperly encroach" on the No-Fault scheme that was struck as a bargain between insurers and the insureds in New York.  *Gonzales*, 459 F.3d at 167.

"The purpose of N.Y. Ins. Law § 5106 and its implementing regulation is simply to provide for the prompt payment of covered No–Fault expenses due a claimant. . . . The New York No–Fault reparations law . . . is in no way intended and should not serve as a bar to *subsequent actions* by an insurer for the recovery of fraudulently obtained benefits from a claimant, where such action is authorized under the auspices of any other statute or under common law." *Mun*, 751 F.3d at 99.  If State Farm believes the Eclipse was indeed committing insurance fraud, it is free to initiate a separate suit properly alleging such a claim.  Such a suit would not be barred from a declaratory action.  But, at this juncture, and with the sole issue before the Court being Eclipse's compliance with the No-Fault verification procedures, the Court is compelled to send these actions to arbitration pursuant to the No-Fault scheme. *See Liberty Mut. Ins.*, 879 F. Supp. 2d at 262 ("When this [arbitration] option is exercised, arbitration is compulsory." (citing *Furstenberg v.*

14

*Allstate Ins. Co.,* 49 N.Y.2d 757 (N.Y. 1980) (stating that an insurer "was obliged under the statute to accept the arbitral forum for the resolution of the claim against it"))).

## CONCLUSION

For the foregoing reasons, Eclipse's motion to compel arbitration is **GRANTED**. The preliminary injunction is hereby **DISSOLVED** and the stayed arbitrations subject to the Injunction Order are compelled to arbitration.[14]

**SO ORDERED**.

/s/ Orelia E. Merchant
ORELIA E. MERCHANT
United States District Judge

Dated: August 9, 2024,
      Brooklyn, New York

---

[14] *See Gov't Emps. Ins. Co. v. Five Boro Psych. Servs., P.C.*, 939 F. Supp. 2d 208, 219 (E.D.N.Y. 2013) ("To the extent that the Defendants seek arbitration of the declaratory judgment with respect to pending and unpaid claims that are *not* presently the subject of state court litigation, the motion to compel arbitration is granted, unless of course the Defendants choose to litigate these either in state court or in the context of this case.")

15